SPERTUS, LANDES & UMHOFER LLP
Matthew Donald Umhofer (SBN 206607)
Elizabeth A. Mitchell (SBN 251139)
1990 S. Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone:  (310) 826-4700
Facsimile:  (310) 826-4711
matthew@spertuslaw.com
emitchell@spertuslaw.com

WILLIAMS & CONNOLLY LLP
Bruce R. Genderson (*pro hac vice*)
Thomas H.L. Selby (*pro hac vice*)
Daniel P. Shanahan (*pro hac vice*)
Edward C. Reddington (*pro hac vice*)
Joseph Q. Wood (*pro hac vice*)
Michelle L. Hood (*pro hac vice*)
William B. Wood (*pro hac vice*)
Miranda R. Petersen (*pro hac vice*)
725 Twelfth Street, N.W.
Washington, DC  20005
Telephone:  (202) 434-5000
Facsimile:  (202) 434-5029
bgenderson@wc.com
tselby@wc.com
dshanahan@wc.com
ereddington@wc.com
jwood@wc.com
mhood@wc.com
wsnyderwine@wc.com
mpetersen@wc.com

*Attorneys for SPS Technologies, LLC*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SPS TECHNOLOGIES, LLC d/b/a/ PB FASTENERS,<br><br>Plaintiff,<br><br>v.<br><br>BRILES AEROSPACE, INC., MICHAEL BRILES, and ROBERT BRILES,<br><br>Defendants. | Case No. 2:18-cv-09536-MWF-AS<br><br>**PLAINTIFF SPS TECHNOLOGIES, LLC'S NOTICE OF MOTION AND MOTION TO MODIFY SCHEDULING ORDER AND FOR LEAVE TO FILE SECOND AMENDED COMPLAINT, AND MEMORANDUM OF POINTS AND AUTHORITIES.**<br><br>**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**<br><br>**First Amended Complaint Filed:** December 17, 2018<br><br>**Hearing:**<br><br>**Date:    August 12, 2019**<br>**Time:    10:00 a.m.**<br>**Place:   Courtroom 5A**<br>**Before:  Hon. Michael W. Fitzgerald** |

1   PLEASE TAKE NOTICE that on August 12, 2019 at 10:00 a.m., or as soon as
2   the matter may be heard, in the courtroom of the Honorable Michael W. Fitzgerald at
3   the United States District Court for the Central District of California, 350 W. First
4   Street, Los Angeles, California, Plaintiff SPS Technologies, LLC d/b/a PB Fasteners
5   ("PB Fasteners" or "Plaintiff") will and hereby does move the Court pursuant to Federal
6   Rules of Civil Procedure 15(a) and 16(b) and Local Rules 15-1 and 15-3 for an order
7   (1) modifying the scheduling order to allow for amendment of the First Amended
8   Complaint and (2) granting leave to file the Second Amended Complaint.

9   This Motion is based on this notice of motion and supporting memorandum of
10  points of authorities, the proposed Second Amended Complaint (attached hereto as
11  Exhibit 1), the Declaration of Joseph Wood (and Exhibits 2–19 attached thereto), the
12  Declaration of Scott Cooper, the Declaration of Joshua Crowe, and other written or oral
13  argument that Plaintiff may present to the Court.  A proposed order is filed herewith.

### **Local Rule 7-3 Certification**

14
15  This Motion is made following the conference of counsel pursuant to Local Rule
16  7-3, which took place on July 8 and July 9, 2019.

17
18  Dated: July 15, 2019

19  */s/ Matthew Donald Umhofer*
     SPERTUS, LANDES & UMHOFER, LLP
20  Matthew Donald Umhofer (SBN 206607)

21
22  *Attorney for SPS Technologies, LLC*

23

24

25

26

27

28

ii

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................1

I.    GOOD CAUSE EXISTS TO MODIFY THE SCHEDULING ORDER TO
      ALLOW AMENDMENT. ...................................................................................4

II.   LEAVE TO AMEND SHOULD BE GRANTED UNDER RULE 15............14

      A.   Leave Should Be Granted to Assert Claims for Trade Secret
           Misappropriation Against Space-Lok, Montgomery Machine, and
           Lisi Aerospace (SAC Causes of Action Nos. 14–19). ..............................14

      B.   Leave Should be Granted to Assert a Claim for Breach of Contract
           Against Robert Briles (SAC Cause of Action No. 11). ............................19

      C.   Leave Should be Granted to Assert Claims for Intentional
           Misrepresentation and Concealment Against Robert Briles (as an
           individual and as a trustee) and Richard Briles (as an individual and
           as a trustee) (SAC Causes of Action Nos. 11–12)...................................22

CONCLUSION .........................................................................................................25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF AUTHORITIES**

## **CASES**

*Acad. of Country Music v. ACM Records, Inc.*, No. 13-cv-02448-DDP, 2014 WL 2586859 (C.D. Cal. June 10, 2014) ............................................................. 5

*Adobe Sys. Inc. v. Chukoula LLC*, No. 17-cv-1808-MWF, 2017 WL 10338210 (C.D. Cal. Sept. 12, 2017) ....................................................... 4, 7, 8, 14

*Anderson v. City of Rialto*, 2017 WL 10562684 (C.D. Cal. March 2, 2017) .................................................................................................. 17, 18

*Cole v. CRST, Inc.*, 317 F.R.D. 141 (C.D. Cal. 2016) ........................................ 19, 25

*Coleman v. Quaker Oats Co.*, 232 F.3d 1271 (9th Cir. 2000) .................................... 4

*DCD Programs, LTd. v. Leighton*, 833 F.2d 183 (9th Cir. 1987) ...................... passim

*Eichler v. Tilton*, 2008 WL 109340 (E.D. Cal. Jan. 8, 2008), *aff'd*, 2008 WL 3889738 (E.D. Cal. Aug. 20, 2008) ................................................................. 18

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) .................... 14

*Erhart v. Bofl Holding, Inc.*, 2017 WL 588390 (S.D. Cal. February 14, 2017) ........................................................................................................... 21

*Fields v. QSP, Inc.*, 2012 WL 2049528 (C.D. Cal. June 4, 2012) ............................. 22

*Fru-Con Const. Corp. v. Sacramento Mun. Utility Dist.*, 2006 WL 3733815 (E.D. Cal. Dec. 15, 2006) .............................................................. 17, 18

*Genentech, Inc. v. Abbott Laboratories*, 127 F.R.D. 529 (N.D. Cal. 1989) ................. 18

*Golden v. California Emergency Physicians Med. Grp.*, 782 F.3d 1083 1091 (9th Cir. 2015) ....................................................................................... 22

*Golden v. California Emergency Physicians Med. Grp.*, 896 F.3d 1018 (9th Cir. 2018) .................................................................................................. 21

*Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877 (9th Cir. 1999) ...................... 14, 15, 20

*Howey v. United States*, 481 F.2d 1187 (9th Cir. 1973) ....................................... 15, 22

*Hurn v. Retirement Fund Trust of Plumbing*, 648 F.2d 1252 (9th Cir.1981) ............................................................................................ 20

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ......................................... 24

*Kline v. Turner*, 105 Cal. Rptr. 2d 699 (Cal. Ct. App. 2001) ..................................... 24

*Moore v. Kayport Package Express*, 885 F.2d 531 (9th Cir.1989) ............................. 21

*Moran v. Bromma*, 2013 WL 4780772 (E.D. Cal. Sept. 5, 2013) ............................... 24

*Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074 (9th Cir.1990) ................ 16

*Munchkin, Inc. v. Luv N' Care Ltd.*, 2014 WL 12560778 (C.D. Cal. Oct. 1, 2014) ................................................................................................... passim

*ReadyLink Healthcare v. Cotton*, 126 Cal. App. 4th 1006, 24 Cal. Rptr. 3d 720 (2005) ..................................................................................... 21, 22

*SAES Getters S.p.A. v. Aeronex, Inc.*, 219 F. Supp. 2d 1081 (S.D. Cal. 2002) ..................................................................................................... passim

*Swafford v. Int'l Bus. Machines Corp.*, 2019 WL 1676213 (N.D. Cal. Apr. 17, 2019) ............................................................................... 24, 25

*Talwar v. Creative Labs, Inc.*, 2007 WL 1723609 (C.D. Cal. June 14, 2007) ................................................................................................. 17, 18, 24

*United States v. United Healthcare Ins. Co.*, 848 F.3d 1161 (9th Cir. 2016) ...................................................................................................... 15

*Universal City Studios Prods. LLLP v. TickBox TV LLC*, No. 17-cv-7496-MWF, 2018 WL 5276298 (C.D. Cal. July 3, 2018) .......................... 4, 7, 10

**STATUTES**

Bus. & Prof. Code § 16600 ........................................................................ 21, 22

Cal. Civ. Proc. Code § 338(d) ................................................................... 24

## MEMORANDUM OF POINTS AND AUTHORITIES

This case arises from the misappropriation of trade secrets that belong to Plaintiff SPS Technologies, LLC d/b/a PB Fasteners ("Plaintiff" or "PB Fasteners") related to the SLEEVbolt®.[1]   Plaintiff first learned that its trade secrets had been misappropriated in late September 2018 after The Boeing Company ("Boeing") announced that it had qualified two new manufacturers to make Plaintiff's product.   At that time, Plaintiff was unaware of the extent of the misappropriation.   Based on the available facts, Plaintiff filed this lawsuit against one of the new manufacturers, Defendant Briles Aerospace, Inc. (Dkt. 1.)   Plaintiff filed a second lawsuit in Canada on November 20 against what was then understood to be the only other manufacturer, Lisi Aerospace Canada Corp.

In the instant case, Plaintiff requested an accelerated schedule in the hopes of stopping the misappropriation of its trade secrets at an early date.   Plaintiff requested a trial date in October, and Defendants requested a trial date in December.   Under the scheduling order issued by the Court, (Dkt. 118), discovery commenced in March 2019, the fact discovery cut-off was set for June 28, and the trial date was set for October 29.   Plaintiff worked diligently to meet the Court's deadlines, provide discovery, and accommodate Defendants' evolving discovery demands.   These efforts included the collection of more than 1.5 million documents, the review of approximately 200,000 documents, and the production of 33,799 documents.   In addition, Plaintiff agreed to make its witnesses available for depositions starting June 12, and, when Defendants requested additional time with Plaintiff's documents, Plaintiff agreed to make its witnesses available after the June 28 cut-off.

Notwithstanding Plaintiff's diligent efforts, obtaining discovery from Defendants and third parties has at times been difficult and hard-fought.   Based on recently obtained evidence, it is now apparent that amendment of the First Amended Complaint ("FAC") is necessary for four reasons.   First, documents produced by Space-Lok, Inc. and Boeing

---

[1] To avoid repetition, record cites are reserved for the Argument Section below.

on June 11 and 12 revealed for the first time that Space-Lok and Montgomery Machine Co., Inc. ("Montgomery Machine") ███████████████████

███████████████████████████████████████████████████████

███████████████████████████████████. Plaintiff thus seeks leave to amend the FAC to add trade secret claims against Space-Lok and Montgomery Machine under the Defend Trade Secrets Act ("DTSA") and the California Uniform Trade Secrets Act ("CUTSA"). *See* Second Amended Complaint ("SAC") ¶¶ 258–91. These claims are parallel to the claims that Plaintiff has asserted against Briles Aerospace: they involve the same SLEEVbolt® product, the same trade secret dimensions, formulae, and processes, and many of the same documents and witnesses.

Second, documents first produced to Plaintiff on June 12 and 18 have provided evidence that the necessary Lisi Aerospace entities ████████████████████

███████.[2] These new documents were produced only after Plaintiff moved to compel their production in the Northern District of Illinois. California is now the only active forum where Plaintiff can pursue all of its trade secret claims against Lisi Aerospace in a single action. Accordingly, Plaintiff seeks leave to amend the FAC to add trade secret claims against Lisi Aerospace entities under the DTSA and CUTSA. *See* SAC ¶¶ 241–57. As with the claims against Briles Aerospace, Space-Lok, and Montgomery Machine, Plaintiff's claims against Lisi Aerospace derive from the same common nucleus of operative fact, are based on the same product and trade secrets, and rely on many of the same documents and witnesses.

Third, on May 29, Plaintiff found a previously undiscovered Employee Patent & Confidentiality Agreement ("Employee Agreement") between Plaintiff and Defendant Robert Briles. This Employee Agreement was executed in September 2011 when Robert Briles worked for Plaintiff. Before naming Robert Briles as a defendant in the

---

[2] The four Lisi Aerospace entities are: (1) Lisi Aerospace Canada Corp. ("Lisi Canada"), (2) Blanc Aero Industries SAS ("Lisi France"), (3) HI-SHEAR Corp., and (4) Lisi Aerospace North America, Inc. (together with HI-SHEAR Corp., "Lisi USA").

2

FAC, Plaintiff conducted a diligent search for any confidentiality agreements that he had executed with PB Fasteners, and was unable to locate an Employee Agreement. In response to Briles Aerospace's Second Motion to Compel (Dkt. 137), however, Plaintiff conducted a search for the personnel files of other unrelated employees among the approximately 50 boxes of hard copy personnel files (dating back decades) that Plaintiff maintains in storage at its facility. In conducting this search, Plaintiff uncovered a copy of Robert Briles's Employee Agreement, which had been misfiled in a box with the personnel files of other employees. Robert Briles did not produce a copy of the Employee Agreement until June 14. In the Employee Agreement, Robert Briles agreed, among other provisions, not to retain Plaintiff's confidential business records. In this litigation, Robert Briles has admitted that he did exactly that. (Dkt. 132 at 12–15.) Moreover, Mr. Briles has resisted producing discovery in this litigation relating to his retention of Plaintiff's documents based on the argument that a separate confidentiality agreement—which is the basis for the current claim for breach of contract against Robert Briles—does not prohibit him specifically from retaining such documents. The discovery of the Employee Agreement thus provides an additional basis to bring and resolve claims against Robert Briles relating to the same common nucleus of operative fact as existing claims. Accordingly, Plaintiff seeks leave to amend the FAC to add a claim that Robert Briles breached the Employee Agreement by retaining, using, and disclosing Plaintiff's confidential and proprietary information. *See* SAC ¶¶ 221–26.

Fourth, on June 28, Robert Briles served responses to Plaintiff's First Interrogatories. In those responses, Mr. Briles asserts that he purportedly has no knowledge of any confidential, proprietary, or trade secret information relating to the SLEEVbolt® that was sold to Plaintiff in connection with the Asset Purchase Agreement ("APA") between Paul R. Briles, Inc. d/b/a PB Fasteners and Plaintiff in 2011. Robert Briles's new assertions in his interrogatory responses directly contradict representations that he made during the negotiations of the APA. At the time of the APA, Robert Briles was the President of Paul R. Briles, Inc. In that position, he made

representations about the trade secrets transferred to Plaintiff under the APA (which were made on behalf of the Directors and shareholders of Paul R. Briles, Inc., including himself as an individual and trustee, and his brother, Richard Briles, as an individual and trustee).  Robert and Richard Briles, in their personal capacities and as trustees of trusts for their benefit, received millions of dollars in connection with the APA.  If the assertions in Robert Briles's newly disclosed interrogatory responses are correct, then he and Richard Briles intentionally misrepresented and/or concealed material facts regarding the company's ownership of trade secrets in connection with the APA.  As a result, Plaintiff seeks leave to amend the FAC to add claims for intentional misrepresentation and concealment against Robert Briles (as an individual and as a trustee) and Richard Briles (as an individual and as a trustee).  *See* SAC ¶¶ 227–40.

As set forth below, good cause exists to modify the scheduling order to allow for amendment of the FAC, and all four factors considered in assessing a motion for leave to amend demonstrate that the interests of justice strongly favor amendment here.  *See* Fed. R. Civ. P. 15(a) & 16(b).  Accordingly, Plaintiff respectfully requests that the Court (1) grant its Motion, (2) modify the scheduling order to allow for amendment of the FAC, and (3) grant Plaintiff leave to file the SAC.

## **ARGUMENT**

### **I.  GOOD CAUSE EXISTS TO MODIFY THE SCHEDULING ORDER TO ALLOW AMENDMENT.**

Good cause is required to modify a scheduling order when a party seeks to amend the pleadings after the deadline for amendment.  *See Universal City Studios Prods. LLLP v. TickBox TV LLC*, No. 17-cv-7496-MWF, 2018 WL 5276298, at *1 (C.D. Cal. July 3, 2018) (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000)).  "The Rule 16 'good cause' standard 'primarily considers the diligence of the party seeking the amendment.'"  *Adobe Sys. Inc. v. Chukoula LLC*, No. 17-cv-1808-MWF, 2017 WL 10338210, at *2 (C.D. Cal. Sept. 12, 2017) (quoting *Coleman*, 232 F.3d at 1294).  Good cause exists where (1) a party is "diligent in assisting the court in creating

4

a workable Rule 16 order"; (2) "noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding [the party's] diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference"; and (3) the party is "diligent in seeking amendment of the Rule 16 order, once it became apparent that [the party] could not comply with the order." *Acad. of Country Music v. ACM Records, Inc.*, No. 13-cv-02448-DDP, 2014 WL 2586859, at *2 (C.D. Cal. June 10, 2014). There is ample good cause under each of these factors here.

**First**, Plaintiff was diligent in assisting the Court in creating a workable Rule 16 order. During the hearing on Plaintiff's Motion for a Preliminary Injunction, the Court and parties discussed trial dates in October 2019, and the Court directed the parties to meet and confer regarding a case schedule. *See* Wood Decl., Ex. 2. After meeting and conferring, the parties submitted a Joint Notice of Submission of Schedule of Pretrial and Trial Dates Worksheet (the "Joint Scheduling Notice"), with Plaintiff requesting a trial date of October 1 and Defendants requesting a trial date of December 10. (Dkt. 109.) Plaintiff requested this schedule—based on the information available to it at the time—in an effort to stop the harm caused by the ongoing misappropriation of its trade secrets as early as practicable. On March 19, the Court adopted an accelerated case schedule, setting the deadline to amend pleadings for April 29, the cut-off of fact discovery for June 28, and the trial date for October 29. (Dkt. 118.)

Before discovering that additional parties and claims were necessary to protect Plaintiff's trade secrets and redress the harm Plaintiff is suffering, Plaintiff diligently worked to meet the Court's deadlines. Defendants have sought broad and burdensome discovery, including over 175 document requests and over 50 interrogatories. Plaintiff did not request a single extension from Defendants in responding to these requests. Rather, Plaintiff accommodated Defendants' evolving discovery demands through, among other efforts, the collection of thousands of hard copy documents relating to the development, protection, and manufacturing use of Plaintiff's trade secrets; the use of

5

20 ESI custodians and dozens of search terms; and numerous targeted ESI collections for specific categories of documents. *See* Wood Decl., at ¶¶ 2–4. All told, Plaintiff has collected more than 1.5 million documents, has reviewed about 200,000 documents, and now has produced 33,799 documents, or 144,923 pages. *Id.* at ¶ 5. This collection and review of documents required substantial work, and Plaintiff's document production is now complete. *Id.* at ¶ 6. In addition, Plaintiff offered to make its witnesses available for depositions starting June 12, and, when Defendants indicated that they would not proceed with any individual deposition until 7 days after all documents from that witness had been produced, Plaintiff agreed to make its witnesses available after the June 28 discovery cut-off. *Id.* at ¶ 7. In short, Plaintiff has been diligent to ensure that this case remains on track.

**Second**, Plaintiff's need to amend the FAC is the result of recent developments that were not reasonably foreseen or anticipated when the parties submitted the Joint Scheduling Notice in February. Specifically, only after the discovery of new evidence could Plaintiff understand (i) that Space-Lok and Montgomery Machine ███████ ██████████████████████████, (ii) that the four relevant Lisi Aerospace entities ████████████████████████████, (iii) that Robert Briles's Employee Agreement with Plaintiff would be discovered, or (iv) that Robert Briles would take a position in this litigation that he has no knowledge of any trade secrets relating to the SLEEVbolt® that were sold by Paul R. Briles, Inc. d/b/a PB Fasteners to Plaintiff in the APA, squarely contradicting representations he previously made.

*Misappropriation by Space-Lok and Montgomery Machine*: Documents produced by Space-Lok and Boeing (on June 11 and 12, respectively) revealed for the first time that Space-Lok and Montgomery Machine ████████████████████████ ████████████████████████████████ Plaintiff served a document subpoena on Space-Lok on March 28, shortly after discovery commenced in this action. *See* Wood Decl., at ¶ 8. Although Space-Lok resisted producing communications with Boeing for more than two months, it ultimately agreed to do so and made its production

6

on June 11.  *Id.* at ¶¶ 9–10.  Plaintiff reviewed this production the very next day.  *Id.* at ¶ 11.  Among the documents produced by Space-Lok, Plaintiff discovered extensive evidence that ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ .

Plaintiff also served a document subpoena on Boeing on March 7, shortly after Plaintiff was allowed to pursue discovery from third parties.  *See* Wood Decl., at ¶ 17. Boeing refused to produce a single document in response to the subpoena absent judicial intervention.  Plaintiff was therefore required to file a motion to compel discovery in the Northern District of Illinois, which was granted in substantial part on June 7.  *See SPS Technologies, LLC v. The Boeing Company*, Case No. 19-cv-3365, ECF #21 (N.D. Ill., June 7, 2019) (attached as Ex. 7 to Wood Decl.).  Boeing then produced over 20,000 documents on June 8, 12, 18, and 28.  *See* Wood Decl., at ¶ 20.  Boeing's June 12 and 18 productions were the first to include documents disclosing ████████████████

████████████████████████████████████████████████████████████ .

Plaintiff knew none of this before Space-Lok's and Boeing's productions. Indeed, Space-Lok and Boeing actively prevented Plaintiff from discovering this information, notwithstanding Plaintiff's diligent efforts to obtain it from either potential source.  Accordingly, the fact that ██████████████████████████████████

███████████████████████ was not revealed until June 11 warrants a finding of good cause under Rule 16(b)(4).  *See Adobe Systems*, 2017 WL 10338210, at *3–4; *Universal Studios*, 2018 WL 5276298, at * 2.

7

*Personal Jurisdiction over Lisi Aerospace*:  Similarly, Boeing's document production on June 12 and 18 were the first to provide evidence that all relevant Lisi Aerospace entities ████████████████████████████████.  On September 21, 2018, Boeing disclosed that Lisi Aerospace Canada Corp. ("Lisi Canada"), an entity headquartered near Montreal, had qualified to manufacture "protruding head" tapered sleeve bolts.  *See* Wood Decl., ¶ 25 & Ex. 10.  Because Plaintiff understood that personal jurisdiction over Lisi Canada was uncertain in California and that time was of the essence to stop the irreparable harm caused by the ongoing misappropriation, Plaintiff filed suit in Montreal Superior Court shortly after it filed the complaint in this action. *Id.* at ¶¶ 26–27.  On March 4, 2019, Plaintiff learned that Blanc Aero Industries SAS ("Lisi France"), another Lisi Aerospace entity headquartered in Paris, had qualified to manufacture "flush head" tapered sleeve bolts for Boeing.  *See* Wood Decl., ¶ 28 & Ex. 11, at 9.  Plaintiff undertook an investigation and, based on the information available to it at the time, was unable to identify sufficient facts to allege personal jurisdiction over Lisi France in either Canada or California.  *Id.* at ¶ 29; Crowe Decl., at ¶ 4.  Thus, although Plaintiff understood there were at least two Lisi Aerospace entities involved in the manufacture of tapered sleeve bolts by March 2019, Plaintiff was unaware of the facts necessary to support personal jurisdiction over both Lisi Aerospace entities in any one forum, and Plaintiff did not have the jurisdictional facts necessary to bring Lisi France into either ongoing litigation.  *See Adobe Systems*, 2017 WL 10338210, at *3–4 (rejecting the "piecemeal and inefficient" practice of filing motions to amend before sufficient investigation, including "the opportunity to obtain and review intra-party and third-party discovery"); *cf. also DCD Programs, LTd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987) (holding that waiting for sufficient evidence of wrongful conduct is a satisfactory explanation for delay).

On June 12 and 18, however, Boeing produced documents that revealed sufficient evidence to establish personal jurisdiction over all relevant Lisi Aerospace entities in California. ████████████████████████████████████████████████

1

2

3

4

5

6

7

8

9

10 ▮. Both Lisi Aerospace North America

11 and HI-SHEAR are headquartered in California. As another example, ▮

12

13

14

15

16

17 Indeed, California

18 is the only active forum where Plaintiff can pursue all of its trade secret claims against

19

20 3

21

22

23

24

25

26 4

27

28

the Lisi Aerospace entities in a single action, as Plaintiff remains unable to identify sufficient facts to allege personal jurisdiction over Lisi France in Canada.

Plaintiff has been diligent in seeking discovery relating to Lisi Aerospace in this action.  Plaintiff specifically requested documents relating to Lisi Aerospace in its March 7 subpoena to Boeing, but, as noted above, Boeing refused to produce any such documents until ordered to do so on June 7.  *See* Wood Decl., at ¶ 18.  Plaintiff also served a subpoena on Lisi Aerospace North America, the principal Lisi Aerospace entity within the subpoena power of the Court.  *See* Wood Decl., at ¶ 31.  Lisi Aerospace North America has asserted that no responsive documents exist.  *Id*.; *but see id.*, Exs. 12–16.  Thus, despite Plaintiff's diligent efforts to obtain discovery relating to Lisi Aerospace, Plaintiff could not reasonably have foreseen the development of facts establishing personal jurisdiction over all four Lisi Aerospace entities in California.  Given Plaintiff's diligence in seeking discovery relating to Lisi Aerospace and the significant overlap between Plaintiff's claims against Lisi Aerospace and those already at issue in the case, "it makes much more sense to join [Lisi Aerospace] in this lawsuit rather than forc[e] Plaintiff[] to file a separate lawsuit against them."  *Universal Studios*, 2018 WL 5276298, at * 2.

*Discovery of Robert Briles's Employee Agreement*:  Plaintiff acquired the assets of Paul R. Briles, Inc. d/b/a PB Fasteners in 2011.  Before the acquisition, Robert Briles was the President of Paul R. Briles, Inc.  As part of his employment by Plaintiff after the asset acquisition, Robert Briles entered into a valid and enforceable Employee Agreement in September 2011.  Before naming Robert Briles as a defendant in the FAC, the General Manager of PB Fasteners directed a diligent search for any confidentiality agreements that Robert Briles had executed with PB Fasteners, and was unable to locate an Employee Agreement.  PB Fasteners maintains hard copy personnel files of former employees dating back decades in approximately 50 boxes at its facility.  Cooper Decl., at ¶ 4.  In the regular course of business, those files are organized alphabetically and by year of departure.  *Id*. at ¶ 5.  When counsel for Plaintiff requested Robert Briles's

personnel file, Plaintiff was unable to locate it in the box where it should have been kept in the ordinary course of business or elsewhere in the facility. *Id.* at ¶¶ 6–9.

In response to Briles Aerospace's Second Motion to Compel (Dkt. 137), the General Manager of PB Fasteners organized a search for the personnel files of other employees who were alleged to have relevant documents by Briles Aerospace. *Id.* at ¶ 10. In conducting that search, Plaintiff discovered that Robert Briles's personnel file, including his Employee Agreement, had been misfiled in a box with the personnel files of other employees. *Id.* at ¶¶ 11–12. Specifically, Robert Briles's personnel file was located in the wrong year of departure. *Id.* at ¶ 13. This discovery was made on May 29. *Id.* at ¶ 14. Robert Briles did not produce a copy of the Employee Agreement until June 14. Wood Decl. ¶ 49 & Ex. 19. That Plaintiff would uncover Robert Briles's Employee Agreement in a box containing other employees' files was not reasonably foreseeable when the parties submitted the Joint Scheduling Notice on February 28. Nor was Plaintiff required to conduct a burdensome manual search through all of the dozens of boxes of former employee personnel files to confirm that Robert Briles's personnel file was in fact missing in order to establish its diligence. This is particularly true in this case where Robert Briles concedes that he retained a large volume of documents from PB Fasteners after he left the company, including specifically employee personnel files. (Dkt. 132 at 13–15.)

*Assertion of Fraud by Robert Briles*: In interrogatory responses served on June 28, 2019, Robert Briles asserted that he has no knowledge of confidential, proprietary, and/or trade secret information relating to the SLEEVbolt® that was sold or transferred by Paul R. Briles, Inc. d/b/a PB Fasteners to Plaintiff. Wood Decl., Ex. 18 at 3. Thus, in effect, Robert Briles now asserts that, before the APA, Paul R. Briles, Inc. did not own the trade secret dimensions, formulae, and processes that Plaintiff has identified in this lawsuit and/or that such dimensions, formulae, and processes are not trade secret or proprietary information.

This new assertion squarely contradicts representations that Robert Briles made to Plaintiff in connection with the sale of Paul R. Briles, Inc.'s assets in 2011.  As one example, during a teleconference with counsel for Plaintiff, counsel for Paul R. Briles, Inc., and representatives of the Federal Trade Commission on June 7, 2011, Robert Briles represented that Paul R. Briles, Inc. owned trade secrets, including specifically the processes used in the manufacture of the SLEEVbolt®.  Wood Decl., at ¶¶ 45–46.  As another example, in the APA itself, Robert Briles represented (i) that Paul R. Briles, Inc.'s intellectual property rights included trade secrets, (ii) that Paul R. Briles, Inc. owned such trade secrets free and clear, (iii) that Paul R. Briles, Inc. was aware of no improper use of such trade secrets by others, and (iv) that the assets acquired by Plaintiff included all such trade secrets.  SAC ¶ 70.  Robert Briles made these representations on behalf of, and as authorized by, the Directors and shareholders of Paul R. Briles, Inc., including Robert Briles (as an individual and trustee) and Richard Briles (as an individual and trustee).  Id. ¶ 69.  Robert Briles's new assertion also squarely contradicts the contemporaneous conduct of the parties to the APA.  As one example, before the APA, Paul R. Briles, Inc. licensed its trade secrets relating to the SLEEVbolt® to Plaintiff and received significant royalties in return.  Wood Decl., at ¶¶ 47–48.  Robert Briles signed that license agreement on behalf of Paul R. Briles, Inc.  Id.  As another example, the parties to the APA negotiated a purchase price of ████████ for the assets of Paul R. Briles, Inc., which could not be justified by the value of Paul R. Briles, Inc.'s non-trade secret assets or its non-SLEEVbolt® sales at the time.  SAC ¶ 74.

If the new assertion made in Robert Briles's interrogatory responses is true, then the Directors and shareholders of Paul R. Briles, Inc. intentionally misrepresented and/or concealed material facts regarding Paul R. Briles, Inc.'s ownership of trade secrets.  Before Robert Briles served his interrogatory responses, Plaintiff was unaware of a factual basis for such claims.  Because it could not have been reasonably anticipated that Robert Briles would disclaim the representations he made in connection with the APA, there is good cause to allow amendment of the FAC in this action.

**Third**, Plaintiff acted diligently in seeking modification of the scheduling order when it became apparent that amendment of the FAC was necessary.   Space-Lok produced documents disclosing ██████████████████████████████ ███████████████████████ on June 11.  Wood Decl., at ¶ 10.  Boeing produced documents providing ████████████████████████████████████████████████ ███████████ on June 12 and 18.  *Id.* at ¶ 21.  Shortly thereafter, on June 18, counsel for Plaintiff informed counsel for Defendants that Plaintiff planned to seek leave to amend the FAC to add new parties and claims, and provided counsel for Defendants with documents reflecting the basis of such claims against Space-Lok and Montgomery Machine.  *Id.* at ¶ 40.   Plaintiff also informed the Court on June 18 that recently produced documents would require modification of the scheduling order and amendment of the FAC.  (Dkt. 154 at 4.)  On June 24, Plaintiff filed its Request for a Status Conference to adjust case deadlines and set a briefing schedule on this Motion.  (Dkt. 162.)  Thus, despite needing to review over 20,000 recently produced documents to investigate new claims, Plaintiff alerted both Defendants and the Court of the need for amendment in a few days.  Wood Decl., at ¶¶ 21, 40.

In addition, Plaintiff acted diligently with respect to its claims against Robert Briles.  Plaintiff discovered a copy of Robert Briles's Employee Agreement on May 29, and Robert Briles revealed the facts supporting claims for intentional misrepresentation and concealment in his interrogatory responses on June 28.  *Id.*, Ex. 18.  Plaintiff informed Defendants of the discovery of the Employee Agreement on June 18, *id.* at ¶ 41, and described that discovery for the Court on June 26 in Plaintiff's Motion for Partial Reconsideration, (Dkt. 171).  During meet-and-confer calls with counsel for Defendants on July 8 and 9, counsel for Plaintiff provided the detailed factual basis for all three of its additional claims against Robert Briles and cited specific documents in support of each new claim.  Wood Decl., at ¶ 42. Following the meet-and-confer process, Plaintiff promptly filed the instant Motion.  This exercise of diligence after the

13

discovery of changed circumstances fully supports a finding of good cause under Rule 16(b)(4). *See Adobe Systems*, 2017 WL 10338210, at *3.

## II. LEAVE TO AMEND SHOULD BE GRANTED UNDER RULE 15.

Under Rule 15(a), courts should "freely give leave [to amend] when justice so requires." Fed. Rule of Civ. Proc. 15(a). The "policy of favoring amendments to pleadings should be applied with extreme liberality." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (citation and internal quotation marks omitted); *see also Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999) (noting that "all inferences" should be drawn "in favor of granting the motion."). Courts permit the amendment of pleadings unless the opposing party makes a showing of undue delay, bad faith, undue prejudice, or futility of the amendment on the part of the moving party. *See DCD Programs*, 833 F.2d at 186; *see also Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("Absent prejudice, or a strong showing of any of the remaining . . . factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend."). Under each of these factors, Plaintiff's Motion should be granted.

### A. Leave Should Be Granted to Assert Claims for Trade Secret Misappropriation Against Space-Lok, Montgomery Machine, and Lisi Aerospace (SAC Causes of Action Nos. 14–19).

Plaintiff seeks leave to amend the FAC to add claims for trade secret misappropriation against Space-Lok, Montgomery Machine, and Lisi Aerospace under the DTSA and the CUTSA. Because this request is not the result of undue delay or bad faith, will not cause undue prejudice, and is not futile, the request should be granted.

Discovery in this action commenced in March 2019 after the preliminary injunction phase of the case. Since that time, Plaintiff has worked diligently in conducting discovery, including from Boeing, Space-Lok, and Lisi Aerospace, although those entities have resisted producing responsive documents. Wood Decl., at ¶¶ 9, 18, & 31. Space-Lok's June 11 production was the first to disclose ███████████
████████████████████████████████████████████ *Id.*, at ¶ 12. Boeing's

1   June 12 and 18 productions were the first to provide ███████████

2   ████████████████████████████████████ *Id.*, at ¶ 30.  By

3   June 18, Plaintiff had informed Defendants and the Court that newly produced

4   documents would require modification of the scheduling order and amendment of the

5   FAC, (Dkt. 154 at 4.), and, on June 24, Plaintiff followed up with a Request for a Status

6   Conference to adjust case deadlines and set a briefing schedule for this Motion, (Dkt.

7   162.).  Thus, despite needing to review over 20,000 documents produced after June 11

8   to investigate new claims against new parties, Plaintiff alerted both Defendants and the

9   Court of the need for amendment in a few days.

10      Where, as here, a party offers a reasonable explanation for the timing of its

11   amendment, courts allow the amendment to proceed.  *DCD Programs, Ltd.*, 833 F.2d

12   at 186 (holding that waiting for sufficient evidence of wrongful conduct is a satisfactory

13   explanation for delay); *SAES Getters S.p.A. v. Aeronex, Inc.*, 219 F. Supp. 2d 1081,

14   1086 (S.D. Cal. 2002) ("[C]ourts will permit amendment provided the moving party has

15   a reasonable explanation for the delay.").  Because Plaintiff sought leave as soon as it

16   became apparent that amendment of the FAC was necessary, there was no undue delay

17   in bringing this Motion.  Indeed, courts routinely allow amendment in cases that are far

18   more advanced than this one.  *See, e.g.*, *DCD Programs, Ltd.*, 833 F.2d at 186 (no undue

19   delay where party moved to amend fourteen months after initial complaint filed);

20   *Howey v. United States*, 481 F.2d 1187, 1990 (9th Cir. 1973) (reversing denial of leave

21   to amend after unjustified five-year delay).  And in any event, "[u]ndue delay by itself

22   is insufficient to justify denying leave to amend."  *United States v. United Healthcare*

23   *Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016).

24      Defendants also cannot show that Plaintiff has acted in bad faith in asserting

25   claims against Space-Lok, Montgomery Machine, or Lisi Aerospace.  Courts have

26   construed "bad faith" to mean the addition of "baseless" legal theories or the use of such

27   "sharp practice tactics" as, for example, seeking to add a defendant solely to destroy

28   diversity jurisdiction.  *Griggs*, 170 F.3d at 881; *SAES Getters*, 219 F. Supp. 2d at 1095.

It is not bad faith to amend to bring all relevant parties into the action.  Plaintiff did not know that ███████████████████████████████████████████████████ ████████████████████████████████████████████████.  In light of the recent revelations, it is far more efficient to litigate all claims in this action because (i) Plaintiff remains unable to identify sufficient facts to allege personal jurisdiction over Lisi France in Canada, (ii) the case against each manufacturer involves the same claims, the same product, the same trade secrets, the same documents, and the same witnesses, and (iii) the Court and parties are already familiar with the issues in dispute.  Amending the FAC to bring in the relevant parties ensures that justice is accomplished by permitting Plaintiff to protect its rights and recover its damages from all entities engaged in the same course of conduct.

Defendants cannot establish that they will be prejudiced by the addition of Space-Lok, Montgomery Machine, or Lisi Aerospace.  Plaintiff has asserted no new theories of trade secret misappropriation against any current Defendant.  Rather, the new claims against Space-Lok, Montgomery Machine, and Lisi Aerospace are substantially similar to the claims that Plaintiff has asserted against Briles Aerospace.  All of Plaintiff's claims involve the same product, the same engineering and manufacturing technology, and the same trade secret dimensions, formulae, and processes necessary to manufacture the SLEEVbolt®.  In addition, all of Plaintiff's trade secret claims allege that the misappropriation occurred, in part, through the same qualification process.  As a result, all of Plaintiff's trade secret claims will involve the same documents, as well as the same witnesses who have been involved in the qualification of Plaintiff, Briles Aerospace, Space-Lok, Montgomery Machine, and Lisi Aerospace to manufacture tapered sleeve bolts.  Defendants thus cannot show the requisite prejudice or negative effect because none of the new trade secret claims would require Defendants to undertake an "entirely new course of defense."  *SAES Getters*, 219 F. Supp. 2d at 1086, quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir.1990); *see also Munchkin, Inc. v. Luv N' Care Ltd.*, 2014 WL 12560778, at *2 (C.D. Cal. Oct.

16

1, 2014) (finding no undue prejudice because "both the original complaint and the proposed [complaint] concern the same accused products.").

Nor can Defendants make "any showing that the discovery to date is irrelevant to the claims in the proposed [complaint]." *Munchkin*, 2014 WL 12560778, at *2. In fact, much of the relevant discovery for the new trade secret claims already has been completed. As one example, the parties have produced their respective documents relating to the development and use of the trade secrets at issue. As another example, the parties have produced documents relating to the development, manufacture, qualification, and sale of tapered sleeve bolts to Boeing. Moreover, there is unlikely to be significant duplication in discovery or motions practice after amendment. Neither party has filed initial expert disclosures or motions for summary judgment. At least 14 depositions have yet to be taken by the parties, including the depositions of Defendant Robert Briles, Lisi Aerospace, Space-Lok, and Boeing. Defendants themselves have identified Space-Lok and Lisi Aerospace as relevant sources of discovery, but, to Plaintiff's knowledge, Defendants have been unable to obtain much of the discovery they seek. No documents have been produced by Lisi Aerospace in this litigation despite subpoenas from both Briles Aerospace and Plaintiff. And Briles Aerospace's subpoena to Space-Lok was quashed in part. (Dkt. 165.) Adding these parties to the case thus will allow Plaintiff and Defendants to complete the discovery they seek.

Furthermore, the "mere fact that more work may be involved does not constitute prejudice that can prevent amendment." *Munchkin*, 2014 WL 12560778, at *2; *see also Anderson v. City of Rialto*, 2017 WL 10562684, at *2 (C.D. Cal. March 2, 2017) (no undue prejudice despite written discovery); *Talwar v. Creative Labs, Inc.*, 2007 WL 1723609, at *5 (C.D. Cal. June 14, 2007) (no undue prejudice even though defendant "ha[d] already engaged in months of discovery," the discovery cut-off "[was] only weeks away," defendant would have to take new depositions, and experts would have to "alter their analyses"); *Fru-Con Const. Corp. v. Sacramento Mun. Utility Dist.*, 2006 WL 3733815, at *5 (E.D. Cal. Dec. 15, 2006) (no undue prejudice even though

17

defendant argued discovery would have to be extended and trial would be more complicated with new parties).  Discovery has revealed the need for parallel claims against new manufacturers based on substantially overlapping facts.  As a result, amendment is necessary for the complete adjudication of the dispute. *See Anderson*, 2017 WL 10562684, at *2; *Fru-Con Const. Corp.*, 2006 WL 3733815, at *5; *Genentech, Inc. v. Abbott Laboratories*, 127 F.R.D. 529, 531 (N.D. Cal. 1989) (no undue prejudice even though amendment would require defendant to depose "numerous witnesses across the country who have been previously questioned and would necessitate additional document searches and written discovery").

Although the parties have worked diligently to meet the Court's deadlines, they also contemplated that discovery would continue after the cut-off.  Wood Decl., at ¶ 7. It is now clear that, regardless of whether amendment is granted, the trial date will likely need to move to accommodate the remaining fact and expert discovery, as well as dispositive and pre-trial motions.  As a result, any additional discovery necessitated by the joinder of new parties can be accommodated in advance of trial.  *See Talwar*, 2007 WL 1723609, at *5 (no undue prejudice where the parties anticipate modifications to the scheduling order).

It is far more efficient to adjudicate all of Plaintiff's trade secret claims in one forum.  It is undisputed that Plaintiff can file these claims separately, and thus the "same discovery on the new claims will occur in this or another forum."  *Munchkin*, 2014 WL 12560778, at *2.  That likely would subject Defendants to duplication of discovery as third-parties to those actions.  It would also risk significant duplication of effort for a large number of witnesses, including representatives from Boeing, Briles Aerospace, Space-Lok, Montgomery Machine, and Lisi Aerospace.  For these reasons, "[j]udicial efficiency and avoidance of the risk of inconsistent judgments weighs heavily in favor of amendment."  *Munchkin*, 2014 WL 12560778, at *2; *see also Eichler v. Tilton*, 2008 WL 109340, at *2 (E.D. Cal. Jan. 8, 2008), *aff'd*, 2008 WL 3889738 (E.D. Cal. Aug.

20, 2008) ("Granting plaintiff leave to amend will include all defendants in one action, and therefore will promote the speedy resolution of the entire controversy.").

Finally, the trade secret claims against Space-Lok, Montgomery Machine, and Lisi Aerospace under the DTSA and the CUTSA are not futile. *See DCD Programs*, 833 F.2d at 188 (holding that an amendment is futile only if it would clearly be subject to dismissal); *SAES Getters*, 219 F. Supp. 2d at 1086. Plaintiff has adequately pleaded its trade secret claims against Space-Lok, Montgomery Machine, and Lisi Aerospace in the SAC. *See* SAC, at ¶¶ 241–91. Indeed, these trade secret claims are based on similar facts and legal theories as the trade secret claims alleged against Briles Aerospace, which Briles Aerospace has not moved to dismiss.

In sum, Rule 15's policy of "extreme liberality" with respect to allowing amendment weighs heavily in favor of granting Plaintiff's Motion. *DCD Programs*, 833 F.2d at 186. Defendants cannot demonstrate prejudice, nor can they carry their burden of making a "strong showing" that the remaining factors require denial of leave to amend. *See Cole v. CRST, Inc.*, 317 F.R.D. 141, 146 (C.D. Cal. 2016).

**B.   Leave Should be Granted to Assert a Claim for Breach of Contract Against Robert Briles (SAC Cause of Action No. 11).**

Plaintiff also seeks leave to amend the FAC to add a claim for breach of the Employee Agreement against Robert Briles. This request also is not the result of undue delay or bad faith, will not cause undue prejudice, and is not futile.

Plaintiff did not discover Robert Briles's Employee Agreement until May 29, 2019, when Plaintiff found that Robert Briles's personnel file, including his Employee Agreement, had been misfiled with other employees' personnel files. Plaintiff informed Defendants of the discovery of the Employee Agreement on June 18, Wood Decl., at ¶ 41, and described that discovery for the Court on June 26 in Plaintiff's Motion for Partial Reconsideration, (Dkt. 171). Because Plaintiff did not learn that it had a basis for this claim until the Employee Agreement was uncovered, Plaintiff's proposed amendment should be granted. *SAES Getters*, 219 F. Supp. 2d at 1086 ("[C]ourts will

19

1   permit amendment provided the moving party has a reasonable explanation for the
2   delay."). Moreover, to the extent Defendants oppose amendment on the basis of timing,
3   "delay, by itself, is insufficient to justify denial of leave to amend." *DCD Programs*,
4   833 F.2d at 186 (citing *U.S. v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981)) (internal
5   citations omitted); *Hurn v. Retirement Fund Trust of Plumbing*, 648 F.2d 1252, 1254
6   (9th Cir.1981)).

7        Nor can Defendants show any "wrongful motive" or bad faith on the part of
8   Plaintiff that would warrant denial of leave to amend.    *DCD Programs*, 833 F.2d at
9   187.  Plaintiff does not seek to assert "baseless" legal theories or use "sharp practice
10  tactics." *Griggs*, 170 F.3d at 881; *SAES Getters S.p.A.*, 219 F. Supp. 2d at 1095.  Rather,
11  Plaintiff merely seeks to assert a standard breach of contract claim against an existing
12  Defendant based on newly discovered evidence.

13       Defendants also cannot establish that they will be prejudiced by the addition of
14  the new breach of contract claim against Robert Briles.  This claim would not require
15  Robert Briles to "undertake[]…an entirely new course of defense." *SAES Getters*, 219
16  F. Supp. 2d at 1086 (internal citations omitted).  To the contrary, Plaintiff already has
17  alleged one breach of contract claim against Robert Briles under the APA.  The new
18  breach of contract claim under the Employee Agreement arises from the same set of
19  facts, namely, that Robert Briles retained, used, and disclosed Plaintiff's confidential
20  and proprietary information with Michael Briles and Briles Aerospace.  Much of the
21  discovery conducted to date is relevant to the proposed breach of contract claim, and
22  even if the parties were to propound new discovery requests relating to the claim for
23  breach of the Employee Agreement, "[t]he mere fact that more work may be involved
24  does not constitute prejudice that can prevent amendment." *Munchkin, Inc.*, 2014 WL
25  12560778, at *2 (citation omitted).  Thus, the addition of this claim would not cause
26  undue prejudice.

27       Nor is the claim for breach of the Employee Agreement futile, as it is not "clearly
28  subject to dismissal." *SAES Getters*, 219 F. Supp. 2d 1081, 1086 (citing *DCD*

20

*Programs, Ltd.*, 833 F.2d at 188; *Moore v. Kayport Package Express*, 885 F.2d 531, 542 (9th Cir.1989)).  The Employee Agreement is a valid and enforceable contract, which is designed to protect Plaintiff's trade secrets and other confidential and proprietary business information.  State and federal courts in California routinely enforce such agreements.  *See, e.g., Erhart v. Bofl Holding, Inc.*, 2017 WL 588390, at *8-9 (S.D. Cal. February 14, 2017); *ReadyLink Healthcare v. Cotton*, 126 Cal. App. 4th 1006, 1018, 24 Cal. Rptr. 3d 720, 728 (2005)).

Michael Briles has moved to dismiss Plaintiff's Ninth Cause of Action, which involves a similar confidentiality agreement. (Dkt. 152.)  In that motion, Michael Briles argues that the Employee Agreement is void under Bus. & Prof. Code § 16600 because its provisions function as a "*de facto*" non-competition agreement.  For the reasons set forth in Plaintiff's Opposition to that Motion (Dkt. 161), which is incorporated herein by reference, that argument is wrong for at least four reasons.

*First*, the issue of whether a confidentiality agreement is "a restraint of a substantial character" that falls within the ambit of Section 16600 is a question of fact, and thus is not proper for resolution at the pleading stage.  *Golden v. California Emergency Physicians Med. Grp.*, 896 F.3d 1018 (9th Cir. 2018).

*Second*, Defendant's Employee Agreement is not a covenant not to compete subject to Section 16600; it is a standard contract containing provisions intended to protect Plaintiff's trade secrets and other confidential and proprietary information.  Such provisions are routinely enforced in California.  *See, e.g., Erhart*, 2017 WL 588390, at *8–9 (finding that enforcement of confidentiality agreements "serves several legitimate interests," including "the longstanding established public policy in California which respects and promotes the freedom of private parties to contract," the "significant government interests promoted by legal protection of trade secrets," and "***protecting other confidential and business information that may not qualify for trade secret protection***.") (quotation marks omitted) (emphasis added)); *ReadyLink Healthcare*, 126 Cal. App. 4th at 1018.

21

*Third*, even if Section 16600 were to apply, where, as here, "a former employee uses a former employer's trade secrets or otherwise commits unfair competition, California Courts recognize a judicially created exception to section 16600 and will enforce a restrictive covenant in such a case." *ReadyLink Healthcare*, 126 Cal. App. 4th at 1022 (internal quotation marks omitted); *Fields v. QSP, Inc.*, 2012 WL 2049528, at *9 (C.D. Cal. June 4, 2012) (Section 16600 "does not invalidate an agreement between an employer and employee that seeks to maintain the confidentiality of an employer's trade secret *or other proprietary information*.").

*Fourth*, even if Section 16600 were to apply, the offending provisions can easily be severed, leaving in place the essential confidentiality terms in the Employee Agreement.  For example, the Employee Agreement prohibited Robert Briles from retaining written materials relating to "private or confidential matters of the Company and its business."  SAC ¶¶ 81–82.  It is indisputable that such a provision does not constitute "a restraint of a substantial character" on Robert Briles's ability to compete in the marketplace.  *Golden v. California Emergency Physicians Med. Grp.*, 782 F.3d 1083 1091 (9th Cir. 2015).  Moreover, Robert Briles concedes that he retained a large volume of confidential documents from PB Fasteners after he left the company, including over 3.67 terabytes of data.  (Dkt. 132 at 12–15.)  There is no legal basis to disregard such violations under Section 16600.

Because the breach of contract claim is "obviously not frivolous, or made as a dilatory maneuver in bad faith," the Court should grant Plaintiff leave to amend. *Howey*, 481 F.3d at 1190-91.

C.     **Leave Should be Granted to Assert Claims for Intentional Misrepresentation and Concealment Against Robert Briles (as an individual and as a trustee) and Richard Briles (as an individual and as a trustee) (SAC Causes of Action Nos. 11–12).**

Plaintiff also seeks leave to amend the FAC to add claims for intentional misrepresentation and concealment against Robert Briles (as an individual and as a trustee) and Richard Briles (as an individual and as a trustee), who were Directors and

22

shareholders of Paul R. Briles, Inc. at the time of the APA.  This request also is not the result of undue delay or bad faith, will not cause undue prejudice, and is not futile.

In his interrogatory responses, Robert Briles asserted that he has no knowledge of confidential, proprietary, and/or trade secret information relating to the SLEEVbolt® that was sold or transferred by Paul R. Briles, Inc. d/b/a PB Fasteners to Plaintiff in connection with the APA.  Wood Decl., Ex. 18.  As described above, this new assertion squarely contradicts the representations that Robert Briles made on behalf of the Directors and shareholders of Paul R. Briles, Inc. to Plaintiff in connection with the APA, as well as the conduct of the parties to that agreement at the time.  Plaintiff was unaware of the factual basis for such an intentional misrepresentation or concealment claim until Robert Briles served his interrogatory responses on June 28.  The timing of Robert Briles's new assertions more than rebuts any suggestion of undue delay.  *SAES Getters*, 219 F. Supp. 2d at 1086.  Moreover, because "there is no evidence in the record which would indicate a wrongful motive, there is no cause to . . . [deny] leave to amend on the basis of bad faith."  *DCD Programs*, 833 F.2d at 187.

Defendants also cannot establish that they will be prejudiced by the addition of the intentional misrepresentation and concealment claims.  These claims arise from the same set of facts that are already at issue in this dispute, and much of the necessary discovery already has been completed.  As one example, Plaintiff has reviewed and produced APA documents relating to the trade secrets or valuation of Paul R. Briles, Inc.'s assets.  As another example, Plaintiff has reviewed and produced documents relating to contemporaneous proceedings before the Federal Trade Commission in which the asset sale and trade secrets were discussed.  Robert Briles has not yet been deposed, and even if the parties were to propound additional discovery requests relating to the new claims, "[t]he mere fact that more work may be involved does not constitute prejudice that can prevent amendment."  *Munchkin, Inc.*, 2014 WL 12560778, at *2 (citation omitted).  Regardless of whether leave to amend is granted, the current trial date will likely need to move to accommodate the remaining discovery and dispositive

motions.  As a result, any additional discovery necessitated by the joinder of Richard Briles as a Defendant can be accommodated in advance of trial.  *See Talwar*, 2007 WL 1723609, at *5.  Thus, the addition of Plaintiff's intentional misrepresentation and concealment claims would not cause undue prejudice.

Finally, Defendants cannot show that the claims for intentional misrepresentation and concealment against Robert Briles (as an individual and as a trustee) and Richard Briles (as an individual and as a trustee) are futile.  *See Munchkin*, 2014 WL 12560778, at *2.  Although fraud claims are subject to a three-year statute of limitations, the claim does not accrue "until the discovery, by the aggrieved party, of the facts constituting fraud[.]"  *Moran v. Bromma*, 2013 WL 4780772, at *4 (E.D. Cal. Sept. 5, 2013) (quoting *Kline v. Turner*, 105 Cal. Rptr. 2d 699, 702 (Cal. Ct. App. 2001)); *see also* Cal. Civ. Proc. Code § 338(d).  Because Plaintiff did not learn of the essential facts establishing a basis to believe Robert and Richard Briles had made intentional misrepresentations or concealed fraud until Robert Briles served his discovery response on June 28, Plaintiff's claims are well within the applicable limitations period.

In addition, Plaintiff has adequately pleaded claims for intentional misrepresentation and concealment.  "Under Rule 9(b), a plaintiff is required to state with particularity the circumstances of his allegations of fraud."  *Swafford v. Int'l Bus. Machines Corp.*, 2019 WL 1676213, at *6 (N.D. Cal. Apr. 17, 2019) (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124, 1126 (9th Cir. 2009) (internal citations and quotations omitted)).  "In California," those elements are: "(1) a misrepresentation; (2) made with knowledge of its falsity (scienter); (3) with the intent to defraud, i.e., to induce reliance; (4) which did induce reasonable reliance; (5) causing damages."  *Id*. Plaintiff's proposed Second Amended Complaint satisfies each of these elements.  With reference to specific statements contained in cited documents, the SAC alleges that, if Robert Briles's interrogatory responses are correct, (1) the Directors and shareholders of Paul R. Briles, Inc. misrepresented and/or concealed material facts regarding Paul R. Briles, Inc.'s ownership of trade secrets in connection with the APA on June 7, 2011,

May 4, 2011, September 27, 2011, and October 4, 2011, SAC ¶¶ 70-73; (2) the Directors and shareholders knew the representations were false when they made them, or did so recklessly and without regard for their truth, *id.* at ¶¶ 72-73; (3) the Directors and shareholders intended for Plaintiff to rely on these representations when Plaintiff entered into, amended, and closed on the APA, *id.*; (4) Plaintiff reasonably relied on the representations made by the Directors and shareholders, and would not have entered into, amended, or closed on the APA if it had been aware that the statements were false, *id.*; and (5) as a direct and proximate result of this intentional misrepresentation and Plaintiff's reasonable reliance thereon, Plaintiff has sustained and will continue to sustain significant harm and damages, *id.* at ¶74.   Allegations at this level of particularity are more than sufficient to satisfy the Rule 9(b) pleading standard.

Because all Rule 15 factors favor allowing Plaintiff to amend the FAC, Defendants cannot carry their burden to oppose amendment, and Plaintiff's Motion should be granted. *See Cole*, 317 F.R.D. at 146.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court (1) grant its Motion, (2) modify the scheduling order to allow for amendment of the First Amended Complaint, and (3) grant leave to file the Second Amended Complaint.

1    DATED: July 15, 2019

2                                              */s/ Matthew Donald Umhofer*

3    WILLIAMS & CONNOLLY LLP                  SPERTUS, LANDES & UMHOFER, LLP
     Bruce R. Genderson (*pro hac vice*)      Matthew Donald Umhofer (SBN 206607)
4    Thomas H.L. Selby (*pro hac vice*)       Elizabeth A. Mitchell (SBN 251139)
     Daniel P. Shanahan (*pro hac vice*)      1990 S. Bundy Drive, Suite 705
5    Edward C. Reddington (*pro hac vice*)    Los Angeles, CA 90025
     Joseph Q. Wood (*pro hac vice*)          Telephone:  (310) 826-4700
6    Michelle L. Hood (*pro hac vice*)        Facsimile:  (310) 826-4711
     William B. Wood (*pro hac vice*)         matthew@spertuslaw.com
7    Miranda R. Petersen (*pro hac vice*)     emitchell@spertuslaw.com
     725 Twelfth Street, N.W.
8    Washington, DC  20005                    *Attorneys for SPS Technologies, LLC*
     Telephone:  (202) 434-5000
9    Facsimile:  (202) 434-5029
     bgenderson@wc.com
10   tselby@wc.com
     dshanahan@wc.com
11   ereddington@wc.com
     jwood@wc.com
12   mhood@wc.com
     wsnyderwine@wc.com
13   mpetersen@wc.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                          26