1   SPERTUS, LANDES & UMHOFER LLP
    Matthew Donald Umhofer (SBN 206607)
2   Elizabeth A. Mitchell (SBN 251139)
    1990 S. Bundy Drive, Suite 705
3   Los Angeles, CA 90025
    Telephone:  (310) 826-4700
4   Facsimile:  (310) 826-4711
    matthew@spertuslaw.com
5   emitchell@spertuslaw.com

WILLIAMS & CONNOLLY LLP
Bruce R. Genderson (*pro hac vice*)
Thomas H.L. Selby (*pro hac vice*)
Daniel P. Shanahan (*pro hac vice*)
Edward C. Reddington (*pro hac vice*)
Joseph Q. Wood (*pro hac vice*)
Michelle L. Hood (*pro hac vice*)
William B. Snyderwine (*pro hac vice*)
Miranda R. Petersen (*pro hac vice*)
725 Twelfth Street, N.W.
Washington, DC  20005
Telephone:  (202) 434-5000
Facsimile:  (202) 434-5029
bgenderson@wc.com
tselby@wc.com
dshanahan@wc.com
ereddington@wc.com
jwood@wc.com
mhood@wc.com
wsnyderwine@wc.com
mpetersen@wc.com

*Attorneys for SPS Technologies, LLC*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| SPS TECHNOLOGIES, LLC d/b/a/ PB FASTENERS, <br><br> Plaintiff, <br><br> v. <br><br> BRILES AEROSPACE, INC., MICHAEL BRILES, and ROBERT BRILES, <br><br> Defendants. | Case No. 2:18-cv-09536-MWF-AS <br><br> **PLAINTIFF SPS TECHNOLOGIES, LLC'S REPLY IN SUPPORT OF MOTION TO MODIFY SCHEDULING ORDER AND FOR LEAVE TO FILE SECOND AMENDED COMPLAINT** <br><br> **REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL** <br><br> **First Amended Complaint Filed:** December 17, 2018 <br><br> **Hearing:** <br><br> **Date:   August 12, 2019** <br> **Time:   10:00 a.m.** <br> **Place:   Courtroom 5A** <br> **Before:  Hon. Michael W. Fitzgerald** |

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................1

ARGUMENT.......................................................................................................3

I.     PLAINTIFF HAS SHOWN GOOD CAUSE UNDER RULE 16....................3

    A.   Good Cause Exists for the Breach of Contract Claim. .............................3

    B.   Good Cause Exists for the Fraud Claims. ....................................................6

II.    THE INTERESTS OF JUSTICE STRONGLY FAVOR AMENDMENT...10

    A.   Robert Briles Argues the Wrong Legal Standard. ...................................10

    B.   Leave to Add Claims Against Robert Briles Should Be Granted. .........12

        1.   Leave to Add the Breach of Contract Claim Should Be Granted. 12

        2.   Leave to Add the Fraud Claims Should Be Granted. ....................17

III.   DISCOVERY SHOULD NOT BE LIMITED IN THE ABSTRACT............24

CONCLUSION .................................................................................................25

ii

Case No. 2:18-cv-09536
REPLY IN SUPPORT OF MOTION TO MODIFY SCHEDULING ORDER AND FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

1

## <u>TABLE OF AUTHORITIES</u>

2

### CASES

3    *Abba Rubber Co. v. Seaquist*, 235 Cal. App. 3d 1 (1991)........................................ 8, 21

4    *Acad. of Country Music v. ACM Records, Inc.*, 2014 WL 2586859 (C.D.

5        Cal. June 10, 2014) ................................................................................................ 4, 10

6    *Adobe Sys. Inc. v. Chukoula LLC*, 2017 WL 10338210 (C.D. Cal. Sept.

7        12, 2017) .................................................................................................................. 3, 5

8    *Advanced Transit Dynamics, Inc. v. Ridge Corp.*, 2016 WL 6804918

9        (C.D. Cal. Feb. 1, 2016) ........................................................................................ 12, 13

10   *Bamberger v. Marsh USA, Inc.*, 2015 WL 11257577 (C.D. Cal. 2015) ...................... 20

11   *Banc of California, Inc. v. Farmers & Merchants Bank of Long Beach*,

12       2017 WL 2972338 (C.D. Cal. Apr. 19, 2017)................................................... 11, 13

13   *Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122 (9th Cir. 2018) ............................. 11

14   *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725 (9th

15       Cir. 1999)................................................................................................................... 18

16   *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183 (9th Cir. 1987) .........................passim

17   *Discus Dental LLC v. Uluru, Inc.*, 2014 WL 10987002 (C.D. Cal. Oct. 7,

18       2014) ....................................................................................................................... 5, 11

19   *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) .................... 11

20   *Fru-Con Const. Corp. v. Sacramento Mun. Util. Dist.*, 2006 WL 3733815

21       (E.D. Cal. Dec. 15, 2006) ......................................................................................... 23

22   *Gallinger v. Becerra*, 898 F.3d 1012 (9th Cir. 2018)....................................... 11, 18, 20

23   *Genentech, Inc. v. Abbott Laboratories*, 127 F.R.D. 529 (N.D. Cal. 1989)................ 15

24   *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086 (C.D.

25       Cal. 1999) ................................................................................................................... 19

26   *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877 (9th Cir. 1999) ................... 11, 18, 22, 24

27   *Guerrero v. Wharton*, 2017 WL 7314240 (D. Nev. Mar. 30, 2017) ........................... 25

28   *Lundstrom v. Young*, 2019 WL 2341374 (S.D. Cal. June 3, 2019).............................. 11

iii

*Munchkin, Inc. v. Luv N' Care Ltd.*, 2014 WL 12560778 (C.D. Cal. Oct. 1, 2014) ................................................................................ 15, 16, 23

*Nissan Motor Co., Ltd. v. Nissan Computer Corp.*, 204 F.R.D. 460 (C.D. Cal. 2001) ........................................................................... 11

*Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708 (9th Cir. 2001) ....... 10, 15, 23

*Prairie Capital III, LP v. Double E Holding Corp.*, 132 A.3d 35 (Del. Ch. 2015) ................................................................................. 18

*Ringgold Corp. v. Worrall*, 880 F.2d 1138 (9th Cir. 1989) ........................................ 20

*Rivas v. Physician Laboratories, Inc.*, 2018 WL 6133722 (C.D. Cal. 2018) ................................................................................. 18

*SAES Getters S.p.A. v. Aeronex, Inc.*, 219 F. Supp. 2d 1081 (S.D. Cal. 2002) ............................................................................. 15, 24

*Sanford v. MemberWorks, Inc.*, 625 F.3d 550 (9th Cir. 2010) .................................... 20

*Scott v. Gino Moreno Enterprises, LLC*, 888 F.3d 1101 (9th Cir. 2018) ..................... 16

*Shuey v. County of Ventura*, 2016 WL 4367224 (C.D. Cal. Aug. 11, 2016) ................................................................................. 5

*Smith v. Allstate Ins. Co.*, 160 F. Supp. 2d 1150 (S.D. Cal. 2001) .............................. 19

*Sommer v. United States*, 2011 WL 4433631 (S.D. Cal. Sept. 22, 2011) .................... 25

*Swafford v. Int'l Bus. Machines Corp.*, 2019 WL 1676213 (N.D. Cal. Apr. 17, 2019) ......................................................................... 17

*Talwar v. Creative Labs, Inc.*, 2007 WL 1723609 (C.D. Cal. June 14, 2007) ........................................................................... 15, 23

*Thomas v. Anchorage Equal Rights Commission*, 220 F.3d 1134 (9th Cir. 2000) (en banc) ..................................................................... 25

**OTHER AUTHORITIES**

18 U.S.C. § 1839(6)(B) .......................................................................... 8, 21

Cal. Civ. Code § 3426.1(a) ...................................................................... 8, 21

California Business and Professions Code § 16600 ................................... 13

iv

Federal Rule of Civil Procedure Rule 8(d) .................................................................... 24

Federal Rule of Civil Procedure 9(b).................................................................... 19, 20

Federal Rule of Civil Procedure 12(b)(6) ............................................................ 11, 12

**INTRODUCTION**

This Motion seeks basic procedural relief based on newly discovered evidence: (1) a modification to the scheduling order to allow for amendment of the First Amended Complaint ("FAC") and (2) leave to file a Second Amended Complaint (Dkt. 201-2, Ex. 1; "SAC").   Because the Federal Rules of Civil Procedure create a strong presumption in favor of resolving disputes on the merits, motions like this one are routinely granted.   Such procedural motions are denied only in the rare circumstances in which amendment is (1) futile, (2) the result of undue delay, (3) unduly prejudicial, or (4) made in bad faith.   No such exceptional circumstances are present here.

This is a complex case between sophisticated litigants.   It has proceeded on an accelerated timeline.   Notwithstanding Plaintiff's diligent efforts, obtaining discovery from Defendants and third parties has been difficult and has required significant motions practice.   Defendants concede that discovery is not complete and will need to continue.   Defendants also do not dispute that good cause exists to allow amendment of the FAC to add claims against Space-Lok, Inc.; Montgomery Machine, Co., Inc.; and Lisi Aerospace Canada Corp., Blanc Aero Industries SAS, HI-SHEAR Corp., and Lisi Aerospace North America, Inc. (collectively, "Lisi Aerospace").   Nor do Defendants dispute that these new parties and claims will necessitate a new case schedule.

The only issue in dispute is whether Plaintiff should be allowed to amend the FAC to add claims against Robert Briles, including claims that he breached his Employee Patent & Confidentiality Agreement ("Employee Agreement") by retaining Plaintiff's confidential business records, and intentionally misrepresented and/or concealed material information about Paul R. Briles, Inc.'s ("PRB") ownership of trade secrets when PRB sold its trade secrets to Plaintiff SPS Technologies, LLC ("Plaintiff") in the Asset Purchase Agreement ("APA").   These claims arise from the same facts that are already at issue in this action and will rely on substantially overlapping evidence. Defendants do not dispute that Plaintiff could bring these claims in a stand-alone action.

Robert Briles also cannot dispute that leave to amend should be freely given when

justice requires and that all inferences should be drawn in favor of granting the Motion. Nor could he dispute that the test for determining the sufficiency of a proposed amendment requires that all factual allegations be accepted as true, and that amendment can be deemed as futile only if no set of facts can be proved that would constitute a valid claim. Rather than applying this standard to the proposed SAC, however, the Opposition instead argues Robert Briles's characterization of what he purportedly believes the facts will show, and then asks the Court to resolve each factual dispute in his favor.[1] This approach is not proper for a motion for leave to amend, for a motion to dismiss, or even for a motion for summary judgment.

Despite the Opposition's false aspersions and innuendo, the factual allegations underlying the SAC are straightforward and must be accepted as true. *First*, Plaintiff discovered the Employee Agreement on May 29. In that agreement, Robert Briles agreed, among other provisions, not to retain Plaintiff's confidential business records. He now admits that he did just that. As a result, the SAC alleges a straightforward breach of his Employee Agreement. (SAC ¶¶ 80–88, 221–26.) *Second*, on June 28, Robert Briles served interrogatory responses in which he asserted that he was not aware of a single trade secret owned by PRB in 2011 that related to the SLEEVbolt®. This new assertion is impossible to reconcile with his repeated representations from 2005 to 2011 that PRB did own trade secrets related to the SLEEVbolt® and that Plaintiff was acquiring all such trade secrets in the APA. Accordingly, the SAC alleges that if Robert Briles's new assertion is true, he knowingly misrepresented PRB's ownership of trade secrets or concealed material facts relating to that ownership in order to defraud Plaintiff out of ▮▮▮▮▮ under the APA. (*Id.* ¶¶ 68–75, 227–40.)

In light of the above developments, Plaintiff requested modification of the

---

[1] Defendant's Opposition contains sections entitled Procedural History and Background Facts. Notwithstanding the titles attributed to these sections, in reality they recite pure argument or contested versions of facts. Rather than offer competing versions of these sections, Plaintiff addresses Defendant's arguments and contested facts throughout this Reply to the extent necessary for purposes of this Motion.

2

Case No. 2:18-cv-09536
REPLY IN SUPPORT OF MOTION TO MODIFY SCHEDULING ORDER AND FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

scheduling order and leave to add claims for breach of contract, intentional misrepresentation, and concealment as soon as it had the necessary factual basis to assert them.  These claims are adequately pleaded under Rules 8(a)(2) and 9(b), and are not futile.  Amendment for these claims will not impose undue prejudice on Robert Briles.  And contrary to the false and unnecessary argument asserted without basis in the Opposition, they are not brought in bad faith.  Good cause exists to modify the scheduling order under Rule 16, and leave to amend should be granted consistent with the Ninth Circuit's policy of favoring such amendments with extreme liberality.

## <u>ARGUMENT</u>

## I.    PLAINTIFF HAS SHOWN GOOD CAUSE UNDER RULE 16.

Defendants do not dispute that the case schedule should be modified to allow claims against Space-Lok, Montgomery Machine, or Lisi Aerospace.  Nor do Defendants dispute that Plaintiff has shown good cause for this modification or that the remaining case deadlines will need to change accordingly.  Rather, Defendants contend that even if good cause justifies modifying the scheduling order to allow this amendment, Plaintiff must provide further good cause with respect to additional claims against Robert Briles.  Defendants cite no legal authority for the proposition that good cause must be shown on a claim-by-claim basis.  Even if Plaintiff were required to make such a showing (it is not), newly discovered evidence establishes good cause. *Adobe Sys. Inc. v. Chukoula LLC*, 2017 WL 10338210, at *3 (C.D. Cal. Sept. 12, 2017).

### A.    Good Cause Exists for the Breach of Contract Claim.

The relevant facts underlying Plaintiff's breach of contract claim are not disputed.  Before Plaintiff acquired the business of PRB d/b/a PB Fasteners in 2011, Robert Briles was the President of PRB.  Robert Briles entered into a valid and enforceable Employee Agreement in September 2011 to become an employee of Plaintiff after the acquisition. (Dkt. 212-1, Ex. B.)  In the Employee Agreement, Robert Briles agreed, among other provisions, not to retain Plaintiff's confidential business records.  (*Id.* ¶ 6.)  In this litigation, Robert Briles has admitted that he did exactly that.  (Dkt. 132 at 12–15.)

Plaintiff acted diligently in seeking amendment to add a claim for breach of contract based on these undisputed facts.  (SAC ¶¶ 80–88, 221–26.)  Before naming Robert Briles as a defendant in this action, Plaintiff conducted a thorough search for his personnel file.  Plaintiff maintains personnel files dating back decades in approximately 50 boxes at its facility.  In the regular course of business, these files are organized by year of departure and alphabetically within each year.  In searching for Robert Briles's personnel file, the human resources team "look[ed] through boxes of hard copy personnel files"—including the box where Robert Briles's file should have been located—and "search[ed] additional locations throughout PB Fasteners' facility," but was unable to find it.  (Dkt. 196-2 ¶ 9.)  Robert Briles's assertion that Plaintiff limited its search to only "one box" is false.  (Dkt. 212 at 13.)

In May 2019, Plaintiff conducted another search for personnel files, this time in response to Briles Aerospace's Second Motion to Compel (Dkt. 137), which sought the production of documents from other employees.  In conducting this search, Plaintiff discovered that Robert Briles's personnel file, including the Employee Agreement, had been misfiled in a box with the personnel files of other employees in the wrong year of departure.  (Dkt. 196-2 ¶ 12–13.)  This discovery was made on May 29.[2]  Robert Briles did not produce a copy of the Employee Agreement (in unsigned form) until June 14.  (Hood Decl. ¶ 9.)  Given this timing, Plaintiff could not reasonably have foreseen the need for amendment before the Rule 16 deadline.[3]  *See Acad. of Country Music v. ACM*

---

[2] Defendant asserts that Plaintiff "decided to 'discover'" the Employee Agreement to get around an order of the Magistrate Judge.  (Dkt. 212 at 13.)  This unsupported assertion is false and is contradicted by the sworn testimony of three declarants.  (Dkt. 171-1; Dkt. 196-2; Hood Decl.)  That Plaintiff had not located the Employee Agreement earlier is confirmed by the fact that Plaintiff asserted a claim against Michael Briles in the FAC based on Michael Briles's agreement, but did not assert a similar claim at that time against Robert Briles.  The reason is obvious—Plaintiff did not locate Robert Briles's agreement until May 29.

[3] Although Robert Briles argues Plaintiff should have asserted its claim before discovering the Employee Agreement (Dkt. 212 at 12 n.5), courts reject the proposition that a party should seek amendment before developing the factual basis of a claim.  *DCD*

4

1   *Records, Inc.*, 2014 WL 2586859, at *2 (C.D. Cal. June 10, 2014).

2       Robert Briles's argument that Plaintiff was required to review every personnel file

3   at its facility to establish reasonable diligence under Rule 16 is similarly meritless. (Dkt.

4   212 at 13.)  The suggestion that a party must undertake that type of burden to establish

5   reasonable diligence in searching for a single document is inconsistent with Rule 16's

6   reasonable diligence standard.  *Shuey v. County of Ventura*, 2016 WL 4367224, at *4

7   (C.D. Cal. Aug. 11, 2016) ("[R]easonable diligence [under Rule 16] does not demand

8   perfection.").  In an unrelated discovery order issued on June 6, the Magistrate Judge

9   compelled Plaintiff to produce "all information" related to the protection of its trade

10  secrets, including "all executed agreements with employees" for the entire existence of

11  the company.  (Dkt. 138 at 3–4.)  Plaintiff has quantified the burden of this search.

12  (Hood Decl. ¶¶ 10–22.)  The June 6 order required Plaintiff to review all personnel files

13  in its possession, including more than 75,000 pages of documents.  (Hood Decl. ¶ 21.)

14  The review took more than 100 hours of work over five days. (*Id.* ¶¶ 21–22.)  Although

15  this review was necessary to comply with an unrelated order in response to a specific

16  discovery motion, such a review is not necessary or required as part of a reasonable

17  search in the normal course before bringing a complaint.  Nor was Plaintiff required to

18  have specific knowledge about the location of every document in its possession.  Just

19  in this action, Plaintiff has collected over 1.5 million documents and has reviewed about

20  200,000 of them on an expedited basis.  (Dkt. 196-1 ¶ 5.)  During the course of a

21  collection and review on that scale, it is common to discover new information, and

22  "[c]ourts generally give leave to amend the pleadings based on information obtained

23  through discovery."  *Discus Dental LLC v. Uluru, Inc.*, 2014 WL 10987002, at *5 (C.D.

24  Cal. Oct. 7, 2014) (quotation omitted).

25

26  *Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987) (holding that waiting for

27  sufficient evidence of wrongful conduct is a satisfactory explanation for delay); *Adobe*

28  *Sys.*, 2017 WL 10338210, at *3–4 (rejecting the "piecemeal and inefficient" practice of

seeking amendment before sufficient investigation).

## B.  Good Cause Exists for the Fraud Claims.

In its interrogatories, Plaintiff asked Robert Briles to describe the trade secret, confidential, or proprietary information relating to tapered sleeve bolts that PRB sold or otherwise transferred to Plaintiff pursuant to the APA.  (Dkt. 196-1, Ex. 18 at 3.)  In response, Robert Briles shockingly asserted that he purportedly has no knowledge of any such information, despite the fact that he was the President of PRB, he was directly involved in the negotiation of the deal, the trade secrets identified by Plaintiff in this action existed at PRB, and Plaintiff acquired all assets relating to the SLEEVbolt® from PRB in the APA.  (*Id.*)  Thus, Robert Briles now asserts that there were no trade secrets relating to tapered sleeve bolts in 2011 or that no such trade secrets transferred to Plaintiff.  This new assertion is irreconcilable with his prior conduct and express representations leading up to the APA.

For instance, in November 2005, PRB entered into a License Agreement for the manufacture of SLEEVbolts® with Plaintiff, which Robert Briles executed for PRB. (Hood Decl., Ex. 20.)  In this agreement, PRB expressly represented that it "possesse[d] certain trade secrets and proprietary know-how, technical information, and expertise . . . related to the [SLEEVbolt®]," and granted Plaintiff a license to use its "trade secrets, know-how, technical information, and expertise . . . in the manufacturing and/or testing of [SLEEVbolts®]."  (*Id.* at 1–2.)  Plaintiff relied on the trade secrets it obtained through the License Agreement to qualify to manufacture the SLEEVbolt® for The Boeing Company ("Boeing").   The parties then continued to operate under that License Agreement for several years.  (SAC ¶¶ 66–67.)  In 2011, PRB and Plaintiff negotiated Plaintiff's acquisition of PRB's business through an asset sale.  Given the prior dealings between PRB and Plaintiff, both parties understood that the primary motivation for the deal was Plaintiff's desire to acquire, and PRB's desire to sell, the SLEEVbolt® and the trade secrets necessary to manufacture it.  (Gray Decl. ¶ 11; Johnson Decl. ¶ 23.)

In addition, PRB and Plaintiff needed approval from the Federal Trade Commission ("FTC") for the deal to move forward.  In connection with that approval, Robert Briles

6

1  represented that PRB owned trade secrets relating to the SLEEVbolt®.  (Gray Decl.

2  ¶ 6.)  For example, during a teleconference on June 7, 2011 with counsel for Plaintiff,

3  counsel for PRB, and representatives of the FTC, Robert Briles stated that PRB

4  previously had licensed "trade secrets, know-how and technical information" to

5  Plaintiff, including specifically "manufacturing methods, tooling, design, [and]

6  drawings," but that ownership of this trade secret and technical information had stayed

7  with PRB.[4]  (Dkt. 212-1, Ex. D at 12.)  During a follow-up call with Robert Briles's

8  counsel and representatives of the FTC, Plaintiff confirmed that it was licensing the

9  trade secrets at issue in this action from PRB, including the ██████████████

10 ██████████  and the ████████████████████████████  (*Id.* at 16, 18.)

11    Neither Robert Briles nor Plaintiff ever said that PRB did not own trade secrets

12 relating to the SLEEVbolt® during the FTC proceedings.  (Gray Decl. ¶ 8.)  ████████

13 ████████████████████████████████████████████████████████████████

14 ████████████████████████████████████████████  (Dkt. 212-1, Ex. D

15 at 11.)  Against this backdrop, Robert Briles reiterated that PRB owned the trade secrets

16 for manufacturing SLEEVbolts® and that Plaintiff was licensing them.  (*Id.* at 12.)

17 ████████████████████████████████████████████████████████████████

18 ███████████  those statements were not inconsistent with PRB's ownership of trade

19 secrets.  ██████████████████████████████████████████████████████

20 ██████████████████████████████████  Information can be a trade secret under

21

---

22 [4] Disregarding the standards applied to this Motion, Robert Briles argues there is
23 insufficient evidence to attribute this statement to him.  (Dkt. 212 at 15.)  This argument
   is both wrong and premature.  The SAC alleges that Robert Briles made the statement
24 (SAC ¶ 70), the contemporaneous notes reflect that the statement was made in response
25 to a question to him (Dkt. 212-1, Ex. D at 11–12), and the attorney who took the notes
   confirms that Robert Briles made the statement (Gray Decl. ¶¶ 6–7).  His argument that
26 the notes are deficient because they do not list the trade secrets also fails.  (Dkt. 212 at
27 15.)  Robert Briles represented to Plaintiff in the License Agreement and on the June 7
   call that PRB owned trade secrets related to the SLEEVbolt®, including specifically its
28 manufacturing processes.  (Dkt. 196-1, ¶¶ 47–48; Dkt. 212-1, Ex. D at 12.)

7

Case No. 2:18-cv-09536
REPLY IN SUPPORT OF MOTION TO MODIFY SCHEDULING ORDER AND FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

the CUTSA even though it is readily ascertainable, *Abba Rubber Co. v. Seaquist*, 235

Cal. App. 3d 1, 21 (1991), and reverse-engineering is a defense to misappropriation, not

an element of trade secret protection in the first instance.  18 U.S.C. § 1839(6)(B); Cal.

Civ. Code § 3426.1(a).  Accordingly, Robert Briles's argument that he and Plaintiff

disclaimed the existence of trade secrets is baseless.[5]

Robert Briles's representations to Plaintiff in connection with the FTC proceedings

were consistent with his representations to Plaintiff during the negotiation of the asset

sale and in the APA itself.  (Gray Decl. ¶ 9; Johnson Decl. ¶¶ 24–34.)  For example, in

the APA, Robert Briles represented (i) that PRB's intellectual property rights included

trade secrets (Dkt. 87-15 at 4), (ii) that PRB owned such trade secrets free and clear (*id.*

§ 4.8.1), (iii) that PRB was aware of no improper use of such trade secrets by others (*id.*

§ 4.8.3), and (iv) that the assets acquired by Plaintiff included all such trade secrets (*id.*

§ 2.1.5).  SAC ¶ 70.  Robert Briles argues now that these representations were merely

"catch-all" terms.  (Dkt. 212 at 16).  This misinterpretation is refuted by the plain terms

of the APA, which state that PRB agreed to sell all proprietary rights, "including trade

secrets."   (Dkt. 87-15, § 2.1.5; Johnson Decl. ¶¶ 24–34.)   Robert Briles's new

misinterpretation of the APA cannot be reconciled with (1) the License Agreement

between PRB and Plaintiff (which stated that PRB owned trade secrets), (Hood Decl.,

Ex. 20 at 1–2); (2) the primary justification for the deal (which was the acquisition of

---

[5] Robert Briles's contention that the trade secrets at issue were readily ascertainable also mischaracterizes the record.   Only two manufacturers had qualified to produce SLEEVbolts® for Boeing at the time: PRB and Plaintiff.  Despite having a license for PRB's trade secrets, Plaintiff needed about 18 months to qualify with Boeing; and even then, Plaintiff could not consistently manufacture the sleeve component on its own. (SAC ¶ 66–67.)   During the FTC proceedings, Robert Briles and Plaintiff made predictions (based on evolving assumptions) about how long it would take to reverse-engineer the product.  Those predictions ranged from 6 to 18 months, and were premised on the core assumption that the new manufacturer would have equal, if not better, expertise and far more resources than PRB.  (Dkt. 212-1, Ex. D at 9; Dkt. 212-1, Ex. E at 5; Dkt. 104-1 ¶ 10.)  Such estimates do not establish that the trade secrets at issue are readily ascertainable as a matter of law, much less that they are not trade secrets.

the SLEEVbolt® and its essential trade secrets), (Gray Decl. ¶ 11; Johnson Decl. ¶ 23); (3) the ███████ purchase price (which could not be justified by the value of PRB's non-trade secret assets or non-SLEEVbolt® sales), (SAC ¶ 75; Johnson Decl. ¶ 15); (4) Robert Briles's representations during the FTC proceedings, (Dkt. 212-1, Ex. D at 12); and (5) the standard practice for documenting the transfer of trade secrets, (Johnson Decl. ¶¶ 16, 25).

Robert Briles's argument that a specific list of PRB's trade secrets should have been included in the APA's schedule of "Business Intellectual Property Rights" (Schedule 4.8 to the APA) fares no better. (Dkt. 212 at 7.) As the clear terms of the APA explain, Schedule 4.8 was limited to Business Intellectual Property Rights that were (1) "evidenced by a document issued by a governmental agency"; (2) "evidenced by a license or other written agreement"; or (3) based on "common law rights in trade or service marks." (Dkt. 87-15 § 4.8.3; Johnson Decl. ¶¶ 28–32.) Categories 1 and 3 are not related to trade secrets. Category 2 is limited to licenses or other written agreements. The standard practice in the industry is to not schedule a list of specific trade secrets in an asset purchase because, unlike other forms of intellectual property rights, trade secrets are not typically evidenced by formal documentation. (Johnson Decl. ¶ 30.)

Plaintiff was diligent in seeking to add these claims as soon as it became apparent that amendment was needed. Robert Briles served his interrogatory responses on June 28. Until that date, Plaintiff was not aware of any representations by Robert Briles that no trade secrets relating to the SLEEVbolt® existed in 2011. If Robert Briles's new assertion in his interrogatory responses is true, then the Directors and shareholders of PRB intentionally misrepresented and/or concealed material facts regarding PRB's ownership of trade secrets in the APA. It is impossible to reconcile Robert Briles's new assertion regarding his purported knowledge of the asset acquisition in 2011 with his conduct and representations to Plaintiff at the time.

Robert Briles's argument that Plaintiff should have anticipated the need for amendment earlier should be rejected. *First*, the FTC proceedings did not disclose the

9

Case No. 2:18-cv-09536
REPLY IN SUPPORT OF MOTION TO MODIFY SCHEDULING ORDER AND FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

factual basis for Plaintiff's fraud claims.  Neither Robert Briles nor Plaintiff disclaimed the existence of trade secrets during those proceedings.  As explained above, although the parties ██████████████████████████████████████████████████████████ ██████, those statements were not inconsistent with PRB's ownership of trade secrets.  *Second*, the APA did not disclose the factual basis for Plaintiff's fraud claims.  Plaintiff acquired all of the assets of PRB under the APA, including trade secrets, and specific trade secrets are not required to be listed in Schedule 4.8.  *Third*, Robert Briles's Answer in this action did not disclose the factual basis for Plaintiff's fraud claims.  None of the statements on which he relies says anything about PRB's ownership of trade secrets in 2011.  For example, the Fourth Affirmative Defense states that the trade secrets are readily ascertainable and the Fifth Affirmative Defense states that Plaintiff did not take reasonable precautions to preserve their secrecy.  (Dkt. 83 at 18.)  Neither potential affirmative defense disputes PRB's ownership of trade secrets relating to the SLEEvbolt® in 2011.  (*Cf. id.* ¶¶ 36–37, 111, 121 (failing to address PRB's ownership of trade secrets in 2011).)  In short, none of the arguments on which Robert Briles relies are inconsistent with his representations in 2011 that PRB owned trade secrets relating to the SLEEvbolt®.  Plaintiff was not required to anticipate that Robert Briles would disclaim representations he made in connection with the FTC proceedings and the APA.  He did so in his interrogatory responses on June 28.  As a result, there is good cause to allow amendment of the FAC.  *Acad. of Country Music*, 2014 WL 2586859, at *3.

## II.    THE INTERESTS OF JUSTICE STRONGLY FAVOR AMENDMENT.

### A.    Robert Briles Argues the Wrong Legal Standard.

Under Rule 15(a), courts should "freely give leave [to amend] when justice so requires."  In the Ninth Circuit, this "policy of favoring amendments to pleadings should be applied with extreme liberality."  *DCD Programs, Ltd.*, 833 F.2d at 186.  "In determining whether leave to amend is appropriate, the district court considers 'the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility.'"  *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir.

10

2001) (quoting *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999)). "Absent prejudice, or a strong showing of any of the remaining [ ] factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). In evaluating these factors, "all inferences" should be drawn "in favor of granting the motion." *Griggs*, 170 F.3d at 880. The non-moving party has the burden to show futility, undue delay, undue prejudice, or bad faith. *DCD Programs, Ltd.*, 833 F.2d at 187.

"The proper test to be applied when determining the legal sufficiency of a proposed amendment is identical to the one used when considering the sufficiency of a pleading challenged under Federal Rule of Civil Procedure 12(b)(6)." *Nissan Motor Co., Ltd. v. Nissan Computer Corp.*, 204 F.R.D. 460, 463 n.5 (C.D. Cal. 2001). Accordingly, a proposed amendment is futile "only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1134 (9th Cir. 2018). In making this assessment, all factual allegations must be taken as true, *Gallinger v. Becerra*, 898 F.3d 1012, 1016 (9th Cir. 2018), and all inferences should be drawn in the moving party's favor, *Griggs*, 170 F.3d at 880. "[R]esolving factual disputes and evaluating the merits of the proposed claim is generally inappropriate when considering motion for leave to amend." *Banc of California, Inc. v. Farmers & Merchants Bank of Long Beach*, 2017 WL 2972338, at *1 (C.D. Cal. Apr. 19, 2017); *Discus Dental LLC*, 2014 WL 10987002, at *5 (factual disputes preclude finding of futility). Indeed, "[c]ourts typically defer consideration on the merits until after an amended pleading has been filed." *Lundstrom v. Young*, 2019 WL 2341374, at *2 (S.D. Cal. June 3, 2019).

Robert Briles does not dispute these controlling legal standards. But rather than apply them, he asks the Court not only to resolve disputed facts, but to resolve all disputes in his favor. As one example, Plaintiff alleges that Robert Briles represented during the FTC proceedings that PRB owned trade secrets related to the SLEEVbolt®. (SAC ¶ 70.) Robert Briles argues there is insufficient evidence that he made this

11

representation, and asks the Court to resolve that factual dispute in his favor to find that the fraud claims would be futile. (Dkt. 212 at 15.) As another example, Plaintiff alleges that it reasonably relied on Robert Briles's representations regarding PRB's ownership of trade secrets. (SAC ¶¶ 73–74.) Robert Briles contends there could not be reasonable reliance because he and Plaintiff made representations about the ability of other manufacturers to make the SLEEVbolt®, and asks the Court to resolve that factual dispute too in his favor. (Dkt. 212 at 20.) Such arguments, which permeate Robert Briles's brief, are not proper for a motion for leave to amend. Nor would they be proper or persuasive on a motion to dismiss under Rule 12(b)(6) or even at summary judgment. Applying the correct legal standards, Robert Briles's factual arguments are irrelevant.

### B. Leave to Add Claims Against Robert Briles Should Be Granted.

Robert Briles concedes that amendment is proper to add claims against Space-Lok, Montgomery Machine, and Lisi Aerospace, and that the case schedule will thus need to be modified. The only remaining question is whether the interests of justice and efficiency also favor adding three claims against Robert Briles. As set forth below, Plaintiff's Motion should be granted.

#### 1. Leave to Add the Breach of Contract Claim Should Be Granted.

Plaintiff seeks leave to amend to add a claim for breach of the Employee Agreement. Robert Briles has failed to show that this claim is futile, the result of undue delay, unduly prejudicial, or made in bad faith

***The Breach of Contract Claim Is Not Futile***. Plaintiff has adequately pleaded each element of a breach of contract claim. The SAC alleges that Plaintiff and Robert Briles entered into a valid and enforceable Employee Agreement, Plaintiff performed all material terms of the agreement, Robert Briles breached the terms the agreement, and this breach caused Plaintiff damages. (SAC ¶¶ 80–88, 221–26); *Advanced Transit Dynamics, Inc. v. Ridge Corp.*, 2016 WL 6804918, at *6 & n.7 (C.D. Cal. Feb. 1, 2016). Plaintiff alleges two forms of breach. *First*, Robert Briles breached the Employee Agreement by retaining documents relating to confidential matters of Plaintiff and its

12

business in violation of Paragraph 6 of the contract.  (SAC ¶¶ 82, 86.)  Robert Briles has admitted that he retained many such documents relating to the manufacture and sale of the SLEEVbolts®, including Plaintiff's technical documents, personnel files, and contracts with vendors and suppliers.  (Dkt. 132, at 12–15.)  *Second*, Robert Briles breached the Employee Agreement by using and disclosing Plaintiff's confidential information to Michael Briles and Briles Aerospace in violation of Paragraph 5 of the contract.  (SAC ¶¶ 81, 87.)  Plaintiff has significant reason to believe that Robert Briles has misused its confidential information in this way: (1) Robert Briles concedes that he is a principal financier of Briles Aerospace's efforts to misappropriate the SLEEVbolt® and thus has a direct financial stake in the success of the project, (*id.* ¶ 9); (2) he concedes that he retained confidential technical documents and that the retention of such documents is evidence of their misuse, (Dkt. 212 at 22:4); (3) he does not dispute that ███████████████████████████████████████████████████████████ ████████████████████████████████████████, (Hood Decl., Ex. 21.), and (4) Briles Aerospace lacked the engineering expertise to re-create the SLEEVbolt® on its own (SAC ¶ 99.)  Robert Briles is yet-to-be deposed, and these allegations of breach easily surpass the futility threshold.  *Advanced Transit*, 2016 WL 6804918, at *6 & n.7.

Furthermore, Robert Briles does not dispute that the Employee Agreement is valid and enforceable under California Business and Professions Code § 16600.  Rather, he argues that a breach of contract claim is frivolous and/or duplicative of Plaintiff's claim for breach of the APA.  (Dkt. 212 at 21–22.)  These arguments mischaracterize the record and ask the Court to resolve factual disputes in his favor.  Such arguments should be rejected on a motion for leave to amend.  *Banc of California, Inc.*, 2017 WL 2972338, at *1; *Advanced Transit*, 2016 WL 6804918, at *6 n.7.

*First*, Robert Briles contends that the breach of contract claim is frivolous because (1) the Employee Agreement supposedly applies only to information that he acquired after 2011, and (2) the only confidential information at issue in this action was created before 2011.  Both contentions are wrong and disputed.  The Employee Agreement

13

Case No. 2:18-cv-09536
REPLY IN SUPPORT OF MOTION TO MODIFY SCHEDULING ORDER AND FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

contains no general limitation in timeframe.  Paragraph 6 forbids the retention of documents relating to confidential matters of Plaintiff and its business regardless of when such documents were obtained.  (Dkt. 212-1, Ex. B at ¶ 6.)  Plaintiff acquired all records relating to the design manufacture, machining, marketing, and selling of aerospace fasteners worldwide "whether held by the [PRB] or by others on its behalf" in Section 2.1.11 of the APA.  (Dkt. 87-15 § 2.1.11.)  Thus, the documents at issue belonged to Plaintiff, related to confidential matters of Plaintiff and/or its business, and could not be retained, regardless of when they came into Robert Briles's possession.  Moreover, the confidential information at issue in this action is broader than just the trade secrets that existed in 2011.  As one example, Plaintiff alleges that Briles Aerospace misappropriated its trade secret dimensions, including the dimensions for its large-diameter SLEEVbolts®.  (SAC ¶¶ 142, 146.)  The development of these trade secret dimensions did not begin until 2013.  (*Id.* ¶ 6.)  The Employee Agreement also prohibits the disclosure of other confidential and proprietary information such as vendor information, customer lists, and procurement and sales strategies.  (Dkt. 212-1, Ex. B at, ¶¶ 5, 8.)  The disclosure of any such information would constitute breach of the Employee Agreement.

*Second*, Robert Briles maintains that the breach of contract claim is duplicative of Plaintiff's claim that Robert Briles breached the APA by disclosing Plaintiff's confidential information.  The claims are not duplicative.  Among other things, the Employee Agreement protects Plaintiff from the disclosure of confidential information that it disclosed to Robert Briles after the APA closed; the APA would cover only information that existed at the time of the APA.  Robert Briles also claims that the APA did not prohibit him from retaining confidential documents (Dkt. 132 at 12), but he concedes that the Employee Agreement includes such a provision (Dkt. 212-1, Ex. B at ¶ 6).  Robert Briles also is incorrect that breach of the Employee Agreement would not yield unique damages.  Such damages will include, at a minimum, (1) damages resulting from Robert Briles's retention of confidential documents (including those created after

14

the acquisition), (2) damages resulting from the disclosure of confidential information relating to the development of large-diameter SLEEVbolts® in 2013, and (3) damages resulting from the disclosure of other confidential information acquired after the APA, including vendor information, customer lists, and procurement and sales strategies.

**The Breach of Contract Claim is Not the Result of Undue Delay**.  For the same reasons there is good cause to assert claims under Rule 16, there also was no undue delay under Rule 15.  Plaintiff did not learn that it had a sufficient factual basis for this claim until the Employee Agreement was uncovered on May 29.  Plaintiff's proposed amendment should therefore be granted.  *See DCD Programs*, 833 F.2d at 186; *Owens*, 244 F.3d at 712.

**The Breach of Contract Claim Will Not Cause Undue Prejudice**.  Robert Briles cannot establish undue prejudice.  Plaintiff already has alleged one breach of contract claim under the APA, and the new claim arises from similar facts, namely, that Robert Briles retained, used, and disclosed Plaintiff's confidential information with Michael Briles and Briles Aerospace.  Robert Briles has not yet been deposed, and much of the discovery conducted to date is relevant to the new claim.  Even if the parties were to propound new discovery requests relating to the new claim, "[t]he mere fact that more work may be involved does not constitute prejudice that can prevent amendment." *Munchkin, Inc. v. Luv N' Care Ltd.*, 2014 WL 12560778, at *2 (C.D. Cal. Oct. 1, 2014) (citation omitted).  There is no undue prejudice where a claim does not require a new course of defense.  *See SAES Getters S.p.A. v. Aeronex, Inc.*, 219 F. Supp. 2d 1081, 1086 (S.D. Cal. 2002).  Indeed, courts routinely grant leave to amend when a claim imposes significantly more work than will be required here.  *See Genentech, Inc. v. Abbott Laboratories*, 127 F.R.D. 529, 531 (N.D. Cal. 1989); *Talwar v. Creative Labs, Inc.*, 2007 WL 1723609, at *5 (C.D. Cal. June 14, 2007).  It is undisputed that Plaintiff could bring the new claim in a separate action, and thus the "same discovery on the new claim[] will occur in this or another forum." *Munchkin, Inc.*, 2014 WL 12560778, at *2.  It is far more efficient to adjudicate it here rather than subject all existing parties to

1   duplicative efforts. *Id.*

2   Robert Briles argues that the new claim would be unduly prejudicial because the

3   Magistrate Judge supposedly ruled that the Employee Agreement applies only to

4   information acquired after the acquisition in 2011. This argument is meritless. As

5   explained above, the Employee Agreement contains no general limitation in timeframe,

6   and the provision at issue, Paragraph 6, plainly forbids the retention of confidential

7   documents regardless of when they were obtained. (Dkt. 212-1, Ex. B at ¶ 6.) In ruling

8   that certain discovery was not material to the breach of the APA, the Magistrate Judge

9   relied on Robert Briles's brief in observing that it "appears" Paragraph 6 applies only

10  to information obtained after the acquisition when Robert Briles's role was "limited" (it

11  was not). (Dkt. 193 at 2.) This observation is not a holding on the merits, and Plaintiff

12  did not have the opportunity to brief the issue to the Magistrate Judge. *See Scott v. Gino*

13  *Moreno Enterprises, LLC*, 888 F.3d 1101, 1110 (9th Cir. 2018). There is no undue

14  prejudice by having this claim heard on the merits.

15  ***The Breach of Contract Claim Is Not Made in Bad Faith***. Robert Briles's claim

16  that Plaintiff is asserting this claim to circumvent the Magistrate Judge's order is false.

17  Three declarants have provided sworn testimony that Plaintiff did not discover the

18  Employee Agreement until May 29. (Dkt. 171-1; Dkt. 196-2; Hood Decl. ¶¶ 7–8.) And

19  Robert Briles does not adduce a shred of evidence to the contrary. The discovery of the

20  Employee Agreement revealed the factual basis for a valid claim, as Robert Briles has

21  admitted to retaining Plaintiff's confidential documents. That Plaintiff had been unable

22  to locate the Employee Agreement earlier is confirmed by the fact that Plaintiff asserted

23  a claim against Michael Briles in the FAC based on a similar agreement. It strains

24  credulity to suggest that Plaintiff had Robert Briles's Employee Agreement at that time

25  yet chose not to assert it, and it cannot be bad faith to assert a claim based on the

26  revelation of a breach of contract. Robert Briles's contention that the purpose of the

27  claim is solely to impose costs is also false. Plaintiff has proposed various means for

28  reducing burden on Robert Briles in discovery, and he has rejected them. The purpose

16

1  of the claim is simple: to seek redress in the civil system for harm caused by Robert
2  Briles's actions and to do so efficiently in one proceeding.

3              **2.      Leave to Add the Fraud Claims Should Be Granted.**

4       Plaintiff also seeks leave to amend to add claims for intentional misrepresentation
5  and concealment against Robert Briles (as an individual and as a trustee) and Richard
6  Briles (as an individual and trustee), who were PRB Directors and shareholders at the
7  time of the APA.  Robert Briles has failed to show that these fraud claims are futile, the
8  result of undue delay, unduly prejudicial, or made in bad faith.

9       ***The Fraud Claims Are Not Futile***.  In his interrogatory responses, Robert Briles
10  asserts that he has no knowledge of trade secrets relating to the SLEEVbolt® that were
11  sold or transferred by PRB to Plaintiff in connection with the APA.  This new assertion
12  is impossible to reconcile with Robert Briles's conduct and express representations as
13  the President of PRB in 2011, including specifically the representations he made in
14  connection with the FTC proceedings and those he made in the APA on behalf of, and
15  as authorized by, the PRB Directors and shareholders.  If Robert Briles's new assertion
16  is true, he intentionally misrepresented and/or concealed material facts available to him
17  (and, in some cases, in his exclusive possession) regarding PRB's ownership of trade
18  secrets.  Robert Briles contends in his Opposition that Plaintiff has not satisfied Rules
19  8(a)(2) or 9(b).  (Dkt. 212 at 15.)  This contention disregards the standards applied to
20  motions for leave to amend and mischaracterizes the facts.  Because Plaintiff adequately
21  pleads (1) a misrepresentation, (2) knowledge of falsity, (3) intent to defraud, (4)
22  reasonable reliance, and (5) resulting damages, its Motion should be granted.  *Swafford*
23  *v. Int'l Bus. Machines Corp.*, 2019 WL 1676213, at *6 (N.D. Cal. Apr. 17, 2019).

24       *First*, Plaintiff has alleged the Robert Briles made misrepresentations with
25  particularity.  According to the SAC, Robert Briles represented that PRB owned trade
26  secrets, including the processes used in the manufacture of the SLEEVbolt® (among
27  other occasions), on June 7, 2011 during a teleconference with counsel for Plaintiff,
28  counsel for PRB, and representatives of the FTC.  (SAC ¶ 70.)  This allegation must be

17

accepted as true, *Gallinger*, 898 F.3d at 1016, and is confirmed by contemporaneous notes and sworn testimony. (Dkt. 212-1, Ex. D at 12; Gray Decl. ¶¶ 6–7.)

In addition, the SAC alleges that Robert Briles represented in the APA (i) that PRB's intellectual property rights included trade secrets (Dkt. 87-15, at 4), (ii) that PRB owned such trade secrets free and clear (*id.* § 4.8.1), (iii) that PRB was aware of no improper use of such trade secrets by others (*id.* § 4.8.3), and (iv) that the assets acquired by Plaintiff included all such trade secrets (*id.* § 2.1.5). (SAC ¶ 71.) Although Robert Briles mischaracterizes these provisions as mere "catch-all" statements, the APA clearly states that PRB agreed to sell Plaintiff all of its proprietary rights, "including trade secrets." (Dkt. 87-15 § 2.1.5; Johnson Decl. ¶¶ 24, 27–34.) Robert Briles's misinterpretation of these provisions is thus inconsistent with the contractual terms, the prior business dealings between PRB and Plaintiff (Hood Decl., Ex. 20 at 1–2), the industry practice for documenting the transfer of trade secrets, (Johnson Decl. ¶¶ 16, 25), and the standard applied to motions for leave to amend, *Griggs,* 170 F.3d at 880 (noting that "all inferences" should be drawn "in favor of granting the motion"). Robert Briles's argument that he cannot be liable for misrepresentations in the APA because he executed certain provisions on behalf of PRB should also be rejected. The SAC alleges that Robert Briles made the misrepresentations at issue (SAC ¶ 71), and the APA confirms that he executed the contract both as a special party and as the sole representative of PRB, (Dkt. 87-15 at 55). Moreover, even if Robert Briles made the misrepresentations in his capacity as President of PRB, it is well established that a corporate officer is "personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation." *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 734 (9th Cir. 1999); *Rivas v. Physician Laboratories, Inc.*, 2018 WL 6133722, at *9 (C.D. Cal. 2018); *Prairie Capital III, LP v. Double E Holding Corp.*, 132 A.3d 35, 59 (Del. Ch. 2015).

*Second*, Plaintiff's allegations that Robert Briles had knowledge of falsity are more than sufficient. Plaintiff has provided a detailed explanation of why Robert Briles's

18

misrepresentations were false.  During the FTC proceedings, Robert Briles represented that PRB owned trade secrets in 2011, including the manufacturing processes for making the SLEEVbolt®.  (SAC ¶ 70.)  In the APA, Robert Briles again represented that PRB owned trade secrets in 2011 and that Plaintiff was purchasing all such trade secrets.  (*Id.* ¶ 71.)  In Robert Briles's interrogatory responses, however, he asserts that he is not aware of a single PRB trade secret relating to the SLEEVbolt® that existed in 2011.  (*Id.* ¶ 71.)  Robert Briles cannot have it both ways.  If this new assertion is true, the representations that Robert Briles made in 2011 must be false, as the 2011 representations cannot be reconciled with the interrogatory responses.[6]  The SAC also adequately pleads Robert Briles's knowledge of this falsity by alleging (1) that Robert Briles had detailed knowledge of all of PRB's trade secrets relating to the SLEEVbolt® in 2011, (2) that Robert Briles represented to Plaintiff that PRB owned trade secrets relating to the SLEEVbolt® in 2011, (3) that Robert Briles now disclaims the existence of any trade secrets owned by PRB in 2011, and (4) that if Robert Briles's new assertion is true, he knew his representations regarding PRB's ownership of trade secrets were false when he made them based on information available to him at the time.  (SAC ¶¶ 69–74.)  Such allegations more than satisfy Rule 9(b), which requires only general allegations of mental conditions such as knowledge of falsity. Fed. R. Civ. P. 9(b);

---

[6] Defendant's reliance on *Smith v. Allstate Ins. Co.*, 160 F. Supp. 2d 1150 (S.D. Cal. 2001), and *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086 (C.D. Cal. 1999) is misplaced.  These cases do not require allegations of "inconsistent contemporaneous statements" or statements along the lines of "I knew it all along" to plead falsity.  (Dkt. 212 at 18.)  Rather, they recognize that falsity can be alleged "in a number of ways," including by reference to "information which was . . . available to the defendant," as Plaintiff does here.  *Smith*, 160 F. Supp. 2d at 1153–54.  Nor does Plaintiff's allegation of falsity depend on "fraud by hindsight." (Dkt. 212 at 18.)  Robert Briles represented that PRB owned trade secrets in 2011, but now disclaims any knowledge of PRB trade secrets that existed in 2011.  If the new assertion is true, he knew his representations in 2011 were false when he made them, as he had detailed knowledge of PRB's proprietary information at the time.  (SAC ¶¶ 69–74.)  Plaintiff alleges representations in direct conflict with information available to Defendant in 2011, not merely later statements that conflict with earlier statements.

1   *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557–58 (9th Cir. 2010).

2       *Third*, Plaintiff's allegations that Robert Briles intended to defraud Plaintiff are also

3   more than sufficient.  In the SAC, Plaintiff alleges the facts establishing Robert Briles's

4   incentive to defraud Plaintiff, *i.e.*, that PRB and Plaintiff agreed to a purchase price of

5   ██████████, that Robert Briles would receive a significant portion of that sum as a

6   PRB officer and shareholder, and that the purchase price depended on PRB's ownership

7   of trade secrets.  (SAC ¶ 75.)  The SAC also specifically alleges that Robert Briles

8   intended to defraud Plaintiff when Plaintiff entered into, amended, and closed on the

9   APA.  (*Id.* ¶¶ 73–74.)  Because Rule 9(b) requires only general allegations of mental

10  conditions like intent, these allegations are more than sufficient.  Fed. R. Civ. P. 9(b);

11  *Sanford*, 625 F.3d at 557–58.

12      *Fourth*, Plaintiff has alleged its reasonable reliance on Robert Briles's

13  misrepresentations with particularity.  The SAC alleges that the basis for the business

14  relationship between Plaintiff and PRB was the SLEEVbolt® and the trade secrets that

15  are necessary to manufacture it.  In November 2005, Plaintiff obtained a license to use

16  PRB's trade secrets related to the SLEEVbolt®.  (SAC ¶ 66.)  Plaintiff relied on these

17  trade secrets to qualify with Boeing, and the parties continued to operate under the

18  License Agreement for several years.  (*Id.* ¶¶ 66–67.)  In 2011, the parties negotiated

19  the acquisition of these same trade secret assets in the APA.  (*Id.* ¶ 68.)  During those

20  negotiations, Robert Briles represented that PRB owned trade secrets related to the

21  SLEEVbolt® and that Plaintiff was acquiring all such trade secrets.[7]  (*Id.* ¶¶ 69–71.)

22  Plaintiff alleges that Robert Briles's representations were material; that it reasonably

23

24  ---

[7] Defendant claims there are insufficient facts to show Plaintiff was aware of his
25  representations during the FTC proceedings. (Dkt. 212 at 19.)  But the SAC specifically
    alleges that he made the representations to Plaintiff (SAC ¶ 70), and this allegation must
26  be accepted as true. *Gallinger*, 898 F.3d at 1016.  The FTC notes also confirm that he
    made the representations to Plaintiff's counsel, and all such knowledge is imputed to
27  Plaintiff.  *Ringgold Corp. v. Worrall*, 880 F.2d 1138, 1141–42 (9th Cir. 1989);
28  *Bamberger v. Marsh USA, Inc.*, 2015 WL 11257577, at *12 (C.D. Cal. 2015).

20

Case No. 2:18-cv-09536
REPLY IN SUPPORT OF MOTION TO MODIFY SCHEDULING ORDER AND FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

relied on them when it entered into, amended, and closed on the APA; and that Plaintiff would not have entered into, amended, or closed on the APA if it had known that Robert Briles's representations were false.[8]  (*Id.* ¶¶ 73–74.)  Plaintiff further alleges that it paid PRB ███████ for its assets, that this purchase price could not be justified by the value of PRB's non-trade secret assets or its non-SLEEVbolt® sales, and that Robert Briles led Plaintiff to believe that PRB was transferring valuable trade secrets at that price.  (*Id.* ¶¶ 75.)  These allegations of reliance are sufficient on their own, and they are confirmed by evidence.  (Gray Decl. ¶ 11 (explaining that primary reason for the acquisition was the SLEEVbolt® and PRB's trade secrets).)

Robert Briles argues that Plaintiff did not rely on his representations during the FTC proceedings because ███████████████████████████████ ███████  As discussed, this argument is premised on a mischaracterization of the facts and applicable law.  Neither Robert Briles nor Plaintiff ever said that PRB did not own trade secrets.  (Gray Decl. ¶ 8.)  To the contrary, Robert Briles specifically said that PRB owned the trade secrets for manufacturing SLEEVbolts® and that Plaintiff was licensing them.  (Dkt. 212-1, Ex. D at 12.)  Although Plaintiff and Robert Briles made predictions (based on evolving assumptions) about how long it would take for other manufacturers to make SLEEVbolts®, these estimates related only to whether the information was readily ascertainable or subject to reverse engineering, and thus were not inconsistent with the existence of trade secrets.  *Abba Rubber Co.*, 235 Cal. App. 3d at 21 (trade secret can be readily ascertainable); 18 U.S.C. § 1839(6)(B) (reverse engineering defense to misappropriation, not element of trade secret protection in the first instance); Cal. Civ. Code § 3426.1(a) (same).  Such estimates cannot establish that a trade secret is readily ascertainable as a matter of law, which is a fact-specific analysis

---

[8] Plaintiff adequately alleges that the misrepresentations during the FTC proceedings in June 2011 were material to the APA.  Although the APA was signed in May, the parties executed a major amendment in September (including a ███████ change to the purchase price), and the APA closed in October.  (Hood Decl., Ex. 22; SAC ¶ 68.)

subject to expert opinion.  *See BladeRoom Group Ltd.*, 2018 WL 1611835, at *2; (Dkt. 91-32; Dkt. 91-33).  That analysis is not done on a motion for leave to amend.

Robert Briles also contends that reliance on the APA was impossible because he did not represent that PRB owned trade secrets in the contract.  This contention again relies on a misinterpretation of the contract.  As one example, Section 2.1.5 of the APA states that PRB agreed to sell all proprietary rights, "including trade secrets."  (Dkt. 87-15 § 2.1.5.)  Robert Briles's characterization of the APA is inconsistent with the contractual terms (Johnson Decl. ¶¶ 24–34), the prior business dealings between PRB and Plaintiff (Hood Decl., Ex. 20 at 1–2), the industry practice for documenting the transfer of trade secrets, (Johnson Decl. ¶¶ 16, 25), and the standard applied to motions for leave to amend, *Griggs,* 170 F.3d at 880.  Robert Briles's argument that the absence of trade secrets in Schedule 4.8 to the APA refutes Plaintiff's reasonable reliance fails for the same reasons.  Schedule 4.8 listed three categories of intellectual property rights, and did not require an individualized list of all specific trade secrets.  (Dkt. 87-15 § 4.8.2; Johnson Decl. ¶¶ 28, 30.)  The APA followed standard practice in the industry for documenting the transfer of trade secrets.  (Johnson Decl. ¶¶ 16, 25.)

*Fourth*, Plaintiff has alleged damages resulting from Robert Briles's misrepresentations with particularity.  The SAC states that as a direct and proximate result of Robert Briles's misrepresentations and Plaintiff's reasonable reliance thereon, Plaintiff has sustained harm and damages in an amount to be proven at trial.  (SAC ¶¶ 233, 240.)  The calculation of those damages will be based, in part, on the ███████ dollars that Robert Briles induced Plaintiff to pay for the assets of PRB.  (*Id.* ¶ 75.)

In short, Plaintiff has satisfied Rules 8(a)(2) and 9(b) for each element.  The fraud claims are not futile, and the Motion should be granted.

**The Fraud Claims Are Not the Result of Undue Delay**.  For the reasons there is good cause to add fraud claims under Rule 16, there also was no undue delay under Rule 15.  Plaintiff was not aware of the factual basis for its claims until Robert Briles served his interrogatory responses on June 28, directly contradicting the representations

22

he made previously.  Plaintiff's proposed amendment should therefore be granted. *DCD Programs*, 833 F.2d at 186; *Owens*, 244 F.3d at 712.

    ***The Fraud Claims Are Not Unduly Prejudicial***.  Robert Briles cannot establish that these claims will impose undue prejudice.  Contrary to his suggestion, the fraud claims would not create an "entirely new case."  (Dkt. 212 at 23.)  These claims arise from the same facts that are already at issue, and much of the necessary discovery has been completed.  As one example, Plaintiff has reviewed and produced APA documents relating to the trade secrets and valuation of PRB's assets.  As another example, Plaintiff has reviewed and produced documents relating to FTC proceedings in which the asset sale and trade secrets were discussed.  *See Fru-Con Const. Corp. v. Sacramento Mun. Util. Dist.*, 2006 WL 3733815, at *5 (E.D. Cal. Dec. 15, 2006).  Robert Briles has not yet been deposed, and the need for more work does not prevent amendment.  *See Munchkin, Inc.*, 2014 WL 12560778, at *2.  Because Plaintiff could bring its fraud claims in a separate action, it is far more efficient to adjudicate them with the remaining claims.  *Id.*  Although Robert Briles claims he would be prejudiced by the delay in resolution of this case, it is undisputed some modification to the existing case schedule is required, and Defendants do not oppose amendment to add other third parties. *Talwar*, 2007 WL 1723609, at *5.  The fraud claims will require no more time to adjudicate than the other new claims.[9]

    ***The Fraud Claims Are Not Made in Bad Faith***.  Robert Briles argues that Plaintiff's fraud claims are lodged in bad faith because of a purported inconsistency, namely that Plaintiff's trade secret claims assert that trade secrets exist, while the fraud claims assume that no trade secrets exist.  Any supposed "inconsistency" in these allegations is caused by the actions of Robert Briles; as a result, these claims are pled in the

---

[9]  In any event, Robert Briles originally requested a slower case schedule than he argues for now.  (Dkt. 109.)  There is nothing prejudicial or unusual about the pace this case has proceeded on given its size and complexity.  If anything, it has proceeded more expeditiously than typical.

1   alternative.   Rule 8(d) authorizes alternative or hypothetical pleading, "regardless of

2   consistency."  Fed. R. Civ. P. 8(d).  It cannot be bad faith to follow Rule 8(d).  Nor is

3   there any merit to the assertion that these claims are designed to impose costs.  As an

4   initial matter, this claim of undue burden is inconsistent with Robert Briles's document

5   production to date, which has been limited to just 431 documents.  Plaintiff also has

6   proposed various means for reducing the purported burden on Robert Briles in

7   discovery, and he has rejected them.

8       More importantly, the fact remains the parties have a genuine dispute.  Robert Briles

9   sold his business to Plaintiff for ███████████.  Plaintiff alleges that he took that money

10  and used it to finance the misappropriation of the business he had just sold.  At the time

11  of the APA, he represented to Plaintiff that he was transferring trade secrets related to

12  the SLEEVbolt®.   But when Robert Briles faced the threat of liability for disclosing

13  such confidential information to his nephew and Briles Aerospace, he reversed course

14  and claimed there were no trade secrets after all.  Plaintiff disagrees with Robert Briles's

15  new assertion, but if it is true, he intentionally misrepresented and/or concealed material

16  facts about PRB's ownership of trade secrets to induce the APA.  It is not bad faith to

17  pursue valid legal theories against an existing defendant. *Griggs*, 170 F.3d at 881; *SAES*

18  *Getters*, 219 F. Supp. 2d at 1095.

19  **III.    DISCOVERY SHOULD NOT BE LIMITED IN THE ABSTRACT.**

20      Notwithstanding the fact that discovery between the existing parties is ongoing, and

21  the fact that new claims and parties are likely to added, Defendants seek a preemptory

22  order, akin to an advisory opinion without the benefit of briefing or a factual record,

23  that discovery between the parties is complete.  (Dkt. 207 at 4; Dkt. 212 at 25.)  These

24  requests are premature and unsupported.  The Court should decline to decide in the

25  abstract that no more discovery between the existing parties is necessary or

26  permissible.[10]  It is undisputed that at least 14 depositions still need to be taken.  Plaintiff

27

28  [10] Robert Briles goes even further an apparently seeks an order barring Plaintiff from
    taking discovery from him, but allowing him to continue to take discovery from

24

1  agrees that document and written discovery between Plaintiff (one the one hand) and

2  Briles Aerospace and Michael Briles (on the other hand) is largely complete (with

3  certain exceptions that need not be addressed in this Motion), but there is no reason in

4  the context of this Motion for the Court to render "what is in effect an advisory opinion"

5  on the permissibility of "discovery that has not yet been propounded." *Guerrero v.*

6  *Wharton*, 2017 WL 7314240, at *3 (D. Nev. Mar. 30, 2017); *see also Thomas v.*

7  *Anchorage Equal Rights Commission*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc).

8  Plaintiff does not agree that document and written discovery between Plaintiff and

9  Robert Briles is complete.  Plaintiff's Motion for Review of the Magistrate Judge's June

10 4 Order is pending (Dkt. 204), and the addition of new claims against Robert Briles in

11 the SAC may necessitate additional discovery.  In addition, Plaintiff served and then

12 withdrew RFAs rather than burden the Court with a discovery motion in the midst of

13 briefing on its request for a schedule modification.  Because the addition of new parties

14 is likely to shift existing case deadlines, the new case schedule should be set when all

15 parties are before the Court.  The scope of discovery should be determined after all

16 parties are able to meet-and-confer about the case schedule and their anticipated

17 discovery needs.

## CONCLUSION

19 Plaintiff respectfully requests that the Court (1) grant its Motion, (2) modify the

20 scheduling order to allow for amendment of the First Amended Complaint, and (3) grant

21 leave to file the Second Amended Complaint in full.

27 Plaintiff.  (Dkt. 212 at 25.)  He cites no authority for the imposition of a one-sided

28 discovery bar, which should be rejected.  *Cf. Sommer v. United States*, 2011 WL 4433631, at *9 (S.D. Cal. Sept. 22, 2011).

25

1    DATED: July 29, 2019

2                                                        /s/ Matthew Donald Umhofer

3    WILLIAMS & CONNOLLY LLP                    SPERTUS, LANDES & UMHOFER, LLP
     Bruce R. Genderson (*pro hac vice*)          Matthew Donald Umhofer (SBN 206607)
4    Thomas H.L. Selby (*pro hac vice*)           Elizabeth A. Mitchell (SBN 251139)
     Daniel P. Shanahan (*pro hac vice*)          1990 S. Bundy Drive, Suite 705
5    Edward C. Reddington (*pro hac vice*)        Los Angeles, CA 90025
     Joseph Q. Wood (*pro hac vice*)              Telephone:  (310) 826-4700
6    Michelle L. Hood (*pro hac vice*)            Facsimile:  (310) 826-4711
     William B. Snyderwine (*pro hac vice*)       matthew@spertuslaw.com
7    Miranda R. Petersen (*pro hac vice*)         emitchell@spertuslaw.com
     725 Twelfth Street, N.W.
8    Washington, DC  20005                        *Attorneys for SPS Technologies, LLC*
     Telephone:  (202) 434-5000
9    Facsimile:  (202) 434-5029
     bgenderson@wc.com
10   tselby@wc.com
     dshanahan@wc.com
11   ereddington@wc.com
     jwood@wc.com
12   mhood@wc.com
     wsnyderwine@wc.com
13   mpetersen@wc.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28