UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| No. | CV 18-9536 MWF (ASx) | Date | February 18, 2020 |
|---|---|---|---|
| Title | *SPS Technologies, LLC, d/b/a PB Fasteners v. Briles Aerospace, Inc., et al.* | | |

| Present: The Honorable | Alka Sagar, United States Magistrate Judge | |
|---|---|---|
| Alma Felix | | Not reported |
| Deputy Clerk | | Court Reporter / Recorder |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendant: |
| None | | None |

**Proceedings (In Chambers):** **Order DENYING Defendants' Motion to Compel (Docket Entry Nos. 390, 391, 401, 409, 410)**

On December 20, 2019, the parties filed a joint stipulation (Dkt. No. 391 ("Joint Stip.")) regarding Defendants' Motion to Compel Concerning Discovery Dispute as to Waiver of Privilege with Respect to Certain Plaintiff's Documents (Dkt. No. 390 ("Motion to Compel")). On January 3, 2020, Defendants filed a Supplemental Memorandum in Support of their Motion to Compel. (Dkt. No. 401). On January 28, 2020, after the Court had ordered further supplemental briefing (Dkt. No. 404), the parties filed additional supporting memoranda in support of their positions (Dkt. Nos. 409, 410).[1] The Court finds this discovery dispute appropriate for resolution without a hearing.[2] For the reasons discussed below, the Motion to Compel is **DENIED**.

**A. Background**

On November 9, 2018, Plaintiff initiated this lawsuit, asserting claims for, *inter alia*, trade secret misappropriation, trademark infringement, and unfair competition. (Dkt. No. 1). Plaintiff filed its First Amended Complaint on December 18, 2018, and its Second Amended Complaint ("SAC") on August

---

[1] The Court granted Defendants' requests to file certain portions of the Joint Stip. and supporting memoranda under seal. (Dkt. Nos. 384, 385, 389, 396, 397, 400).

[2] On February 13, 2020, the Court took this matter under submission and vacated the hearing on that date. (Dkt. No. 415).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| No. | CV 18-9536 MWF (ASx) | Date | February 18, 2020 |
|---|---|---|---|
| Title | *SPS Technologies, LLC, d/b/a PB Fasteners v. Briles Aerospace, Inc., et al.* | | |

27, 2019. (Dkt. Nos. 68, 231). On October 30, 2019, the Court denied Defendants' motions to dismiss portions of the Second Amended Complaint. (Dkt. No. 344).

This case arises from the alleged misappropriation of Plaintiff's trade secrets related to Plaintiff's SLEEVbolt®, an advanced-concept fastening system with critical applications in commercial and military aircraft. (Joint Stip. at 4; SAC at ¶ 1). The primary consumer of Plaintiff's SLEEVbolt® system is The Boeing Company, which has been a customer for more than 40 years. (SAC at ¶ 7). Plaintiff first learned of the alleged misappropriation in September 2018 after Boeing announced it had qualified Defendant Briles Aerospace, Inc. to make Plaintiff's product. (Joint Stip. at 4).[3]

In 2011, Plaintiff purchased the assets of Paul R. Briles, Inc. ("PRB") d/b/a PB Fasteners, which included the proprietary information and trade secrets necessary to make the SLEEVbolt®. (SAC at ¶ 8). Before the acquisition, Defendant Robert Briles was PB Fasteners' President, and Defendant Michael Briles its Director of Sales and Marketing. (SAC at ¶ 9). During the negotiations for Plaintiff's acquisition of PRB, Plaintiff alleges that Robert Briles represented that PRB owned certain trade secrets, including the processes used in the manufacture of the SLEEVbolt® system. (SAC at ¶ 70). Among other occasions, Plaintiff asserts that Robert Briles, on behalf of the directors and shareholders of PRB, made this representation during a June 7, 2011 teleconference among Plaintiff's counsel, PRB's counsel, and representatives of the Federal Trade Commission ("FTC"). (SAC at ¶ 70). Further, in the Asset Purchase Agreement ("APA") with Plaintiff, PRB represented that (i) its intellectual property rights included trade secrets, (ii) it owned such trade secrets free and clear, (iii) it was aware of no improper use of such trade secrets by others, and (iv) the assets acquired by Plaintiff included all such trade secrets. (SAC at ¶ 71). Robert Briles made these representations to Plaintiff, among other occasions, on May 4, 2011 (the date of the APA), September 27, 2011 (the date of Amendment 1 to the APA), and October 4, 2011 (the APA closing date). (SAC at ¶ 71). However, during this litigation, in Robert Briles's Responses to Plaintiff's First Set of Interrogatories, he asserted that he has no knowledge of confidential, proprietary, or trade secret information relating to the SLEEVbolt® system that was sold or transferred

---

[3] Nonexpert discovery closed on June 28, 2019. (Dkt. No. 118). On August 13, 2019, the Court granted Plaintiff's motion to modify the scheduling order. (Dkt. No. 229). On September 12, 2019, the Court continued the September 13, 2019 deadline for the parties to notify the Court regarding new suggested discovery and trial dates. (Dkt. No. 276).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| No. | CV 18-9536 MWF (ASx) | Date | February 18, 2020 |
|---|---|---|---|
| Title | *SPS Technologies, LLC, d/b/a PB Fasteners v. Briles Aerospace, Inc., et al.* | | |

by PRB to Plaintiff as part of the APA. (SAC at ¶ 72). Thus, in effect, Robert Briles now asserts that prior to the APA, PRB did not own the trade secret information Plaintiff identified in this lawsuit and that such information is neither a trade secret nor proprietary. (SAC at ¶ 72). Thereafter, Plaintiff amended its complaint to include claims against Robert Briles for intentional misrepresentation and concealment. (SAC at ¶¶ 227–40).

**B.    Motion to Compel**

In support of its motion for leave to file its Second Amended Complaint, Plaintiff submitted the Declaration of Sara Gray ("Gray Decl."), Senior Corporate Counsel at Precision Castparts Corporation ("PCC"), Plaintiff's parent company. (Joint Stip., Ex. B). In 2011, Gray was an attorney at the law firm of Stoel Rives LLP, which represented PCC and Plaintiff during the acquisition of PB Fasteners from PRB. (Gray Decl. ¶ 2). In her declaration, Gray referenced documents she had prepared for the June 2011 FTC teleconference, which had been previously produced in this litigation. (Gray Decl. ¶¶ 5, 7; see Joint Stip., Exs. C ("FTC Outline"), D ("Outline of Facts")). Defendants contend that by voluntarily submitting the Gray Declaration and producing the FTC Outline and Outline of Facts, Plaintiff has waived any privilege over the subject matter contained therein. (Joint Stip. at 1–3). Accordingly, Defendants request the Court to order Plaintiff to produce certain documents identified on Plaintiff's Second Revised Privilege Log that include Gray as an author or addressee and documents that include Stoel Rives as an author. (Motion to Compel).

**C.    Applicable Law**

    **1.    Attorney-Client Privilege**

"The attorney-client privilege protects confidential disclosures made by a client to an attorney to obtain legal advice as well as an attorney's advice in response to such disclosures." <u>United States v. Chen</u>, 99 F.3d 1495, 1501 (9th Cir. 1996) (citation and alterations omitted). The purpose of the attorney-client privilege is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." <u>Upjohn Co. v. United States</u>, 449 U.S. 383, 389 (1981). "Clients must be able to consult their lawyers candidly,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| No. | CV 18-9536 MWF (ASx) | Date | February 18, 2020 |
|---|---|---|---|
| Title | *SPS Technologies, LLC, d/b/a PB Fasteners v. Briles Aerospace, Inc., et al.* | | |

and the lawyers in turn must be able to provide candid legal advice." United States v. Christensen, 828 F.3d 763, 802 (9th Cir. 2015). "The attorney-client privilege applies to communications between corporate employees and counsel, made at the direction of corporate superiors in order to secure legal advice." Chen, 99 F.3d at 1502.

"That a person is a lawyer does not, ipso facto, make all communications with that person privileged." Chen, 99 F.3d at 1501. Instead, the privilege applies only "when legal advice is sought from a professional legal advisor in his capacity as such." Id. (emphasis in original) (citation omitted). Accordingly, the attorney-client privilege has eight elements: "(1) When legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be waived." United States v. Martin, 278 F.3d 988, 999 (9th Cir. 2002), as amended on denial of reh'g (Mar. 13, 2002). Because the attorney-client privilege "impedes full and free discovery of the truth," it is "strictly construed," and the party asserting the privilege bears the burden "to establish all the elements of the privilege." Id. at 1000.

**2.  Work-Product Doctrine**

The attorney work-product doctrine protects "documents and tangible things that are prepared in anticipation of litigation or for trial." Fed. R. Civ. P. 26(b)(3). "The primary purpose of the work product rule is to prevent exploitation of a party's efforts in preparing for litigation." Holmgren v. State Farm Mut. Auto. Ins. Co., 976 F.2d 573, 576 (9th Cir. 1992) (citation omitted). Work-product protection, however, "is guarded against discovery only if prepared in anticipation of trial; mental impressions of an attorney in service to other objectives, such as negotiation of a transaction, are not protected by the doctrine." 8 Fed. Prac. & Proc. Civ. § 2026 (3d ed.) (footnote omitted). "To qualify for work-product protection, documents must: (1) be prepared in anticipation of litigation or for trial and (2) be prepared by or for another party or by or for that other party's representative. United States v. Richey, 632 F.3d 559, 567 (9th Cir. 2011) (citation omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| No. | CV 18-9536 MWF (ASx) | Date | February 18, 2020 |
|---|---|---|---|
| Title | *SPS Technologies, LLC, d/b/a PB Fasteners v. Briles Aerospace, Inc., et al.* | | |

Even if a document qualifies as work product, an exception applies when the counsel's own activities are at issue. See Holmgren, 976 F.2d at 577 (Rule 26(b)(3) "permits discovery when mental impressions are the pivotal issue in the current litigation and the need for the material is compelling."); Handgards, Inc. v. Johnson & Johnson, 413 F. Supp. 926, 931 (N.D. Cal. 1976) ("The principal issue in the case at bar is the good faith of the defendants in instituting and maintaining the prior patent litigation against plaintiff. . . .  Since the lawyers who managed and supervised the former litigation for the defendants are being called as witnesses to express their opinions as to the merits of the prior suits and the validity of the underlying patents, plaintiff has a particularized and compelling need for the production of the relevant work product of these attorneys."); Charlotte Motor Speedway, Inc. v. Int'l Ins. Co., 125 F.R.D. 127, 130 (M.D.N.C. 1989) ("Many courts faced with the issue of the production of opinion work product have recognized an exception to Rule 26(b)(3) protection for work product which concerns activities of counsel that are directly in issue.").

   3.   **Waiver**

Waiver of the attorney-client privilege or work-product doctrine may be express or implied.  "An express waiver occurs when a party discloses privileged information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege by making the information public."  Bittaker v. Woodford, 331 F.3d 715, 719 (9th Cir. 2003).  Thus, "once documents have been turned over to another party voluntarily, the privilege is gone, and the litigant may not thereafter reassert it to block discovery of the information and related communications by his adversaries."  Id. at 720.  "When the disclosure is made in a federal proceeding," waiver by "voluntary disclosure . . . generally results in a waiver only of the communication or information disclosed."  Fed. R. Evid. 502(a) & advisory committee's note.  A "subject matter waiver"—*i.e.*, a waiver of "related, protected information"—is "reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary."  Fed. R. Evid. 502(a) advisory committee's note.  Thus, subject matter waiver is limited to situations where "(1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together."  Fed. R. Evid. 502(a).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| No. | CV 18-9536 MWF (ASx) | Date | February 18, 2020 |
|---|---|---|---|
| Title | *SPS Technologies, LLC, d/b/a PB Fasteners v. Briles Aerospace, Inc., et al.* | | |

An implied waiver occurs when "a litigant . . . put[s] the lawyer's performance at issue during the course of litigation." Bittaker, 331 F.3d at 718. As the Ninth Circuit explained, "[t]he principle is often expressed in terms of preventing a party from using the privilege as both a shield and a sword. In practical terms, this means that parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials." Id. at 719 (citations omitted). In such situations, the scope of any waiver depends upon the "fairness principle," requiring courts to "closely tailor[ ] the scope of the waiver to the needs of the opposing party in litigating the claim in question." Id. at 720.

**D.     Discussion**

   **1.     Gray Declaration**

The Gray Declaration describes certain circumstances surrounding the June 2011 FTC teleconference. (Gray Decl. ¶¶ 5–14). Gray recalled that during the teleconference, Robert Briles stated that PBR had licensed the trade secrets, know-how, and technical information related to the SLEEVbolt® process to Plaintiff and had conveyed proprietary information related to the SLEEVbolt® process to PCC. (Gray Decl. ¶ 6). Gray asserted that Robert Briles's representations to the FTC were consistent with the representations made to PCC during negotiation of the APA and were consistent with PCC's understanding of the license agreement between PRB and Plaintiff entered into in 2005. (Gray Decl. ¶¶ 9–10). She averred that PCC purchased the assets of PRB to acquire the SLEEVbolt® product, including the facilities, employees, and trade secrets to manufacture it, and that it was understood by the parties that the purchase price was driven by the SLEEVbolt® product and the trade secrets necessary to manufacture it. (Gray Decl. ¶¶ 11, 14). Indeed, PCC negotiated for the inclusion in the APA of confidentiality and noncompete provisions that applied to Robert Briles consistent with Plaintiff's understanding that the purchase of PRB's assets involved the acquisition of valuable information and trade secrets. (Gray Decl. ¶ 12).

The Gray Declaration does not include any privileged information. It does not reveal any confidential attorney-client communications between Gray and her client. The Declaration largely references statements made by Robert Briles—a representative of PRB who had no affiliation with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| No. | CV 18-9536 MWF (ASx) | Date | February 18, 2020 |
|---|---|---|---|
| Title | *SPS Technologies, LLC, d/b/a PB Fasteners v. Briles Aerospace, Inc., et al.* | | |

Gray's client, PCC—during the nonprivileged June 2011 phone call. See Church & Dwight Co. v. Mayer Labs., Inc., No. C11-3288, 2011 WL 5827222, at *2 (N.D. Cal. Nov. 18, 2011) (voluntary disclosures to FTC are not privileged); see generally Wadler v. Bio-Rad Labs., Inc., 212 F. Supp. 3d 829, 851 (N.D. Cal. 2016) ("by disclosing [the document] to the SEC and DOJ there is no doubt that Bio–Rad waived any privilege it might have claimed as to the document itself"). In this regard, Gray is a fact witness to Robert Briles's representations that PRB owned certain trade secrets, including the processes used in the manufacture of the SLEEVbolt® system.

     Gray also references communications she had with her client to confirm PCC's factual understanding of the license agreement and trade secrets it was acquiring with the APA. Defendants contend that "[t]he only way Ms. Gray, as outside counsel for PCC, could have learned of PCC's beliefs, understandings, and its main reason for acquiring the assets of PRB would be through communications with her client, PCC." (Dkt. No. 401 at 1). But there is no indication that such communications were for the purpose of seeking legal advice from Gray. See United States v. ChevronTexaco Corp., 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002) (attorney-client privilege does not protect mere business transactions); Dolby Labs. Licensing Corp. v. Adobe Inc., 402 F. Supp. 3d 855, 868 (N.D. Cal. 2019) (attorney-client privilege does not extend to factual or technical information). Moreover, the communications between Gray and her client were to prepare for the nonprivileged June 2011 phone call with the FTC. Thus, Plaintiff knew that the information would likely be conveyed to the FTC and would not remain in confidence. See Griffith v. Davis, 161 F.R.D. 687, 694 (C.D. Cal. 1995) ("One of the essential elements of the attorney-client privilege is the intent that the communication be kept confidential.") (emphasis added) (citing United States v. Miller, 874 F.2d 1255 (9th Cir. 1989)); see also id. ("whether or not a given communication is 'confidential' within the meaning of the privilege is determined from the perspective of the client"). Accordingly, the Gray Declaration does not include any information protected by the attorney-client privilege. See id. ("[C]ourts have consistently refused to apply the privilege to information that the client intends or understands may be conveyed to others.") (collecting cases). Further, it is not that Plaintiff has waived privilege; instead, the attorney-client privilege never attached to the communications at all. See id. ("This refusal is not based upon a finding

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| No. | CV 18-9536 MWF (ASx) | Date | February 18, 2020 |
|---|---|---|---|
| Title | *SPS Technologies, LLC, d/b/a PB Fasteners v. Briles Aerospace, Inc., et al.* | | |

of waiver of the privilege due to disclosure to third parties. Rather, courts find that the privilege never attached to the communications at all.").[4]

Nor does the Gray Declaration reveal any information protected by the work-product doctrine. Defendants argue that the Gray Declaration "contains Ms. Gray's thoughts and mental impressions on the beliefs and understandings of the parties to the APA, including Robert Briles, and PCC." (Joint Stip. at 7; see also Dkt. No. 401 at 1, 3–4). But not all mental impressions of counsel are protected by the work-product doctrine. Portions of the declaration discuss the business decisions made by Gray's client when entering into the APA. (See, e.g., Gray Decl. ¶¶ 10–11, 14). "The work product doctrine does not protect materials assembled in the ordinary course of business." Griffith, 161 F.R.D. at 698. Instead, "work product protection applies only to material that would not have been generated but for the pendency or imminence of litigation." Id. at 699 (citation and emphasis omitted). Indeed, to the extent that Gray's mental impressions were merely related to drafting her declaration in support of Plaintiff's motion to amend the complaint, they cannot be protected by the work-product doctrine. See In re San Juan Dupont Plaza Hotel Fire Litig., 859 F.2d 1007, 1016 (1st Cir. 1988) ("Because [legal documents] are drawn with the realization that they will be served upon the other parties to the case, it has never been seriously suggested that [legal documents] could be hidden from view under the work product rubric."). While Defendants contend that Gray "relied on her notes to refresh her recollection" in order to prepare the declaration (Joint Stip. at 12–13) (emphasis added), Gray clearly averred that her notes merely "confirmed" her recollection (Gray Decl. ¶ 7). Moreover, even if portions of Gray's Declaration include her mental impressions at the time of the FTC teleconference, there is no indication that her mental impressions of the license agreement between Plaintiff and PRB were intended to be confidential. See In re San Juan Dupont Plaza Hotel Fire Litig., 859 F.2d at 1015–16 (1st Cir. 1988) ("Some materials do not merit heightened protection because, despite the revelations they contain as to an attorney's thought processes, the lawyer has had no justifiable expectation that the mental impressions revealed by the

---

[4] Defendant argues that Plaintiff implicitly waived any claim of privilege by submitting the Gray Declaration, which directly placed "certain representations . . . made to the FTC regarding the existence and ownership of trade secrets" in controversy. (Joint Stip. at 12) (emphasis added). But, as noted above, communications with the FTC are not privileged.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| No. | CV 18-9536 MWF (ASx) | Date | February 18, 2020 |
|---|---|---|---|
| Title | *SPS Technologies, LLC, d/b/a PB Fasteners v. Briles Aerospace, Inc., et al.* | | |

materials will remain private."). Instead, Gray understood at the time that her impressions would likely be shared with the FTC. (Joint Stip., Ex. F ("Gray Joint. Stip. Decl.") at ¶ 7).

### 2. FTC Outline and Outline of Facts

In response to Defendants' request to produce nonprivileged documents relating to the FTC proceedings, Plaintiff voluntarily produced the FTC Outline and Outline of Facts in January 2019 as part of its discovery obligations in this action.[5] (Joint Stip. at 4). The FTC Outline is "a long factual outline of the acquisition for the FTC proceedings," and the Outline of Facts is "a short factual outline for the same purpose."[6] (Id.; see id. Exs. C, D). Neither document includes information protected by the attorney-client privilege. They do not reveal any confidential communications between PCC and its lawyers, let alone any communications with Gray's client for the purpose of seeking legal advice. Instead, they contain factual descriptions of the businesses involved in the APA, including the acquisition of the SLEEVbolt® product. (Joint Stip., Exs. C, D); see Dolby Labs. Licensing Corp., 402 F. Supp. 3d at 868 (attorney-client privilege does not extend to factual or technical information). The documents also include key talking points to be addressed with the FTC and a summary of the telephone calls with FTC staff in June 2011. (Id.); see Church & Dwight Co., 2011 WL 5827222, at *2 (voluntary disclosures to FTC are not privileged). Moreover, because it was "understood that the information [the FTC Outline and Outline of Facts] contained could be shared with the FTC, including in a teleconference, white paper, or other presentation" (Gray Joint Stip. Decl. ¶ 7), there could be no intent by Gray or her client that the information contained therein would be kept confidential. Thus, attorney-client privilege never attached to either the FTC Outline of the Outline of Facts. Griffith, 161 F.R.D. at 694.

Defendants contend that the FTC Outline and Outline of Facts contain Gray's "impressions" and "due diligence notes." (Joint Stip. at 8). Defendants emphasize Gray's statements in the FTC Outline that "[t]echnology licensed by PCC is trade secrets, know-how and technical information. Information

---

[5] Plaintiff produced these documents prior to Robert Briles's assertion in June 2019 that he has no knowledge of confidential, proprietary, or trade secret information relating to the SLEEVbolt® system that was sold or transferred by PRB to Plaintiff as part of the APA. (SAC at ¶ 72).

[6] Defendants did not assert that these documents waived attorney-client privilege or the work-product doctrine at the time they were produced.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| No. | CV 18-9536 MWF (ASx) | Date | February 18, 2020 |
|---|---|---|---|
| Title | *SPS Technologies, LLC, d/b/a PB Fasteners v. Briles Aerospace, Inc., et al.* | | |

conveyed to PCC included: manufacturing methods, tooling, design, drawings . . . ." and "FTC asked if PCC could make sleevbolt today without using PB intellectual property. [Robert Briles] replied that PCC could do it." (Joint Stip. at 8) (quoting FTC Outline at 12). But this information is a contemporaneous factual summary by Gray of statements made by Robert Briles. (FTC Outline at 11–12). In any event, to the extent that any statements in the FTC Outline or Outline of Facts contain mental impressions by Gray that "would not have been generated but for the pendency or imminence of litigation," Griffith, 161 F.R.D. at 699 (citation and emphasis omitted)—which the Court is not finding—such information would still not be protected by the work-product doctrine because of the expectation that they would be shared with the FTC (Gray Joint Stip. Dec. ¶ 7). See In re San Juan Dupont Plaza Hotel Fire Litig., 859 F.2d at 1015–16.[7]

### 3. Summary

The Court finds that the Gray Declaration, the FTC Outline, and the Outline of Facts do not contain any information that Gray or her client intended to be kept confidential. Accordingly, neither the attorney-client privilege nor the work-product doctrine attached to any information contained therein. Because privilege did not attach to any of this information, Defendants' fairness argument (Joint Stip. at 15–18) is not applicable. In sum, no waiver of privilege occurred, express or implied, and Defendants are not entitled to documents identified on Plaintiff's Second Revised Privilege Log that include Gray as an author or addressee or documents that include Stoel Rives as an author.

---

[7] While the FTC Outline and Outline of Facts are variously labeled as "Joint Defense Materials," "Confidential Attorney-Client Communication" and "Protected Attorney-Work Product," information does not become privileged merely by marking it as such. See In re Chase Bank USA, N.A. Check Loan Contract Litig., No. 09-MD-2032, 2011 WL 3268091, at *2 (N.D. Cal. July 28, 2011) ("marking a document 'confidential' or 'attorney work product' is not enough to confer privilege without analysis of the document's actual contents"). The parties disagree whether PCC, Plaintiff, PRB, and Robert Briles entered into an oral joint defense agreement with regards to the proceedings before the FTC. (Joint Stip. at 4–5, 21–23; Dkt. No. 410 at 1–3; Gray Joint Stip. Decl. ¶¶ 2–6). The Court, however, having found that the Gray Declaration, the FTC Outline, and Outline of Facts contain no information that either Gray or her client intended to be confidential, declines to address whether in fact a joint defense agreement was consummated.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| No. | CV 18-9536 MWF (ASx) | Date | February 18, 2020 |
|---|---|---|---|
| Title | *SPS Technologies, LLC, d/b/a PB Fasteners v. Briles Aerospace, Inc., et al.* | | |

**E.     Conclusion**

Defendants' Motion to Compel Concerning Discovery Dispute as to Waiver of Privilege with Respect to Certain Plaintiff's Documents [390] is **DENIED**.  The hearing set for February 13, 2020, is **VACATED**.

The parties may avail themselves of the Court's informal discovery dispute resolution process to resolve any remaining discovery issues. (See Judge Sagar's Procedures).

IT IS SO ORDERED.


cc:     Michael W. Fitzgerald
        United States District Judge

|  | 0 | : | 00 |
|---|---|---|---|
| Initials of Preparer | AF | | |