SPERTUS, LANDES & UMHOFER, LLP
Matthew Donald Umhofer (SBN 206607)
Elizabeth A. Mitchell (SBN 251139)
1990 S. Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone:  (310) 826-4700
Facsimile:  (310) 826-4711
matthew@spertuslaw.com
emitchell@spertuslaw.com


WILLIAMS & CONNOLLY LLP
Bruce R. Genderson (*pro hac vice*)          bgenderson@wc.com
Thomas H.L. Selby (*pro hac vice*)           tselby@wc.com
Daniel P. Shanahan (*pro hac vice*)          dshanahan@wc.com
Edward C. Reddington (*pro hac vice*)        ereddington@wc.com
Joseph Q. Wood (*pro hac vice*)              jwood@wc.com
Michelle L. Hood (*pro hac vice*)            mhood@wc.com
William B. Snyderwine (*pro hac vice*)       wsnyderwine@wc.com
Miranda R. Petersen (*pro hac vice*)         mpetersen@wc.com
James K. Kirkpatrick (*pro hac vice*)        jkirkpatrick@wc.com
725 Twelfth Street, N.W.
Washington, DC  20005
Telephone:  (202) 434-5000
Facsimile:  (202) 434-5029

*Attorneys for SPS Technologies, LLC*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SPS TECHNOLOGIES, LLC d/b/a/ PB FASTENERS, <br><br> Plaintiff, <br><br> v. <br><br> BRILES AEROSPACE, INC., et al., <br><br> Defendants. | Case No. 2:18-cv-09536-MWF-AS <br><br> **PLAINTIFF SPS TECHNOLOGIES, LLC'S REPLY IN SUPPORT OF MOTION FOR REVIEW OF THE NOVEMBER 30, 2020 ORDER GRANTING IN PART DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD ON THE BASIS OF PRIVILEGE AND WORK PRODUCT** <br><br> **REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL** <br><br> Hearing Date: February 1, 2021 <br> Time: 10:00 a.m. <br> Place: Courtroom 5A <br> Before: Hon. Michael W. Fitzgerald |

1

## <u>TABLE OF CONTENTS</u>

2   **MEMORANDUM OF POINTS AND AUTHORITIES** ............................................1

3   **LEGAL STANDARD** ........................................................................................................2

4   **ARGUMENT**..................................................................................................................2

5   **I.**   **Defendants' Motion Was Untimely**……………………………………..2

6   **II.**   **The Attorney Notes Are Work Product**……………………………..9

7   **III.**   **Some of the Attorney Notes Are Privileged**……………………….19

8   **IV.**   **The Caplan's Emails Are Work Product**……………………………21

9   **V.**   **The Caplan Emails Are Privileged**……………………………….......24

10   **CONCLUSION** ..............................................................................................................25

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF AUTHORITIES**

*A.I.A. Holdings, S.A. v. Lehman Bros.*, 2002 WL 31385824 (S.D.N.Y. Oct. 21, 2002) ............................................................................................ 17

*Adams v. United States*, 2009 WL 804718 (D. Idaho Mar. 27, 2009) .................. 16

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp. Inc.*, 2016 WL 6821116 (C.D. Cal. June 17, 2016) ...................................................... 2

*Am. Civil Liberties Union v. Dep't of Justice*, 880 F.3d 473 (9th Cir. 2018) ......... 11

*Baker v. Gen. Motors Corp.*, 209 F.3d 1051 (8th Cir. 2000) ..................... 15, 21, 23

*Baxter Healthcare Corp. v. Fresenius Med. Care Holding, Inc.*, 2009 WL 533124 (N.D. Cal. Mar. 2, 2009) ...................................................... 19

*Big Baboon Corp. v. Dell, Inc.*, 2010 WL 11459352 (C.D. Cal. July 22, 2010) .... 20

*Bower v. Wright Med. Tech. Inc.*, 2018 WL 6330410 (C.D. Cal. Dec. 3, 2018) passim

*C&F Packing Co., Inc. v. IBP, Inc.*, 1997 WL 619848 (N.D. Ill. 1997) ................ 24

*Dewey v. Adams*, 2013 WL 8291427 (C.D. Cal. Dec. 16, 2013) .............................. 2

*Dir., Office of Thrift Supervision v. Vinson & Elkins*, LLP, 124 F.3d 1304 (D.C. Cir. 1997) .......................................................................... 17

*Eakin Enterprises, Inc. v. Specialty Sales LLC*, 2012 WL 2445151 (E.D. Cal. June 26, 2012) ........................................................................ 14

*Fisher & Payk el Healthcare Ltd. v. Flexicare Inc.*, 2020 WL 7094077 (C.D. Cal. Oct. 29, 2020) ................................................................... passim

*Hatamian v. Advanced Micro Devices, Inc.*, 2016 WL 2606830 (N.D. Cal. May 6, 2016) ............................................................................. 16

*Hickman v. Taylor*, 329 U.S. 495 (1947) .............................................................. 19

*Hodges, Grant & Kaufmann v. U.S. Gov't, Dep't of the Treasury, I.R.S.*, 768 F.2d 719 (5th Cir. 1985) ....................................................... 13

*In re Grand Jury Investigation*, 974 F.2d 1068 (9th Cir. 1992) ......................... 6, 7

*In re Grand Jury Proceedings*, 473 F.2d 840 (8th Cir. 1973) ......................... 18, 24

ii

*In re Grand Jury Subpoena (Mark Torf/Torf Env. Mgmt.)*, 357 F.3d 900 (9th Cir. 2004) ...................................................................................................passim

*In re Kidder*, 168 F.R.D. 459 (S.D.N.Y. 1996) .................................................... 11

*In re LTV Sec. Litig.*, 89 F.R.D. 595 (N.D. Tex. 1981) ............................... 13, 14, 22

*Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252 (3d Cir. 1993) .. 13, 22

*McCook Metals LLC v. Alcoa Inc.*, 192 F.R.D. 242 (N.D. Ill. 2000) .................... 19

*O'Connor v. Boeing N. Am., Inc.*, 216 F.R.D. 640 (C.D. Cal. 2003) ..................... 16

*Republic of Ecuador v. Mackay*, 742 F.3d 860 (9th Cir. 2014) ......................... 9, 10

*Rockwell Automation, Inc. v. GGSI Liquidation, Inc.*, 2003 WL 22227968 (S.D.N.Y. Sept. 25, 2003) ......................................................................................... 7

*S.E.C. v. Schroeder*, 2009 WL 1125579 (N.D. Cal. Apr. 27, 2009) ..... 18, 19, 21, 24

*SEC v. Berry*, 2011 WL 825742 (N.D. Cal. Mar. 7, 2011) ..................................... 16

*SEC v. Roberts*, 254 F.R.D. 371 (N.D. Cal. 2008) ................................................. 15

*Stern v. O'Quinn*, 253 F.R.D. 663 (S.D. Fla. 2008) ............................................... 19

*TransWeb, LLC v. 3M Innovative Properties Co.*, 2012 WL 2878076 (D.N.J. July 13, 2012) ......................................................................................................... 19

*U.S. ex rel. Bagley v. TRW, Inc.*, 212 F.R.D. 554 (C.D. Cal. 2003) ...................... 15

*U.S. v. Deloitte*, 610 F.3d 129 (D.C. Cir. 2010) ..................................................... 23

*Uniloc Luxembourg, S.A. v. eCinicalWorks, LLC*, 991 F. Supp. 2d 1097 (C.D. Cal. 2013) (Fitzgerald, J.) .......................................................................................... 2

*United State v. Chen*, 99 F.3d 1495 (9th Cir. 1996) ......................................... 21, 24

*United States v. Adlman*, 134 F.3d 1194 (2d Cir. 1998) ................................... 11, 12

*United States v. Arias*, 373 F. Supp. 2d 311 (S.D.N.Y. 2005) ............................... 15

*United States v. Paxson*, 861 F.2d 730 (D.C. Cir. 1988) ........................................ 15

*United States v. Yijun Zhou*, 838 F.3d 1007 (9th Cir. 2016) .................................... 2

*Upjohn Co. v. United States*, 449 U.S. 383 (1981) .........................................passim

iii

*Wichansky v. Zowine*, 2015 WL 5693521 (D. Ariz. Sept. 29, 2015) ...................... 19

*Yardi Sys., Inc. v. Prop. Sols. Int'l, Inc.*, 2016 WL 6662732 (C.D. Cal. Feb. 11, 2016) ........................................................................................................................... 3

Fed. R. Civ. P. 26(b)(3)(A)(ii) ............................................................................. 7, 10

Fed. R. Civ. P. 72(b) ................................................................................................... 2

6 Moore's Federal Practice – Civil § 26.70 (2020) ................................................. 17

iv

## **MEMORANDUM OF POINTS AND AUTHORITIES**

For over a year, Defendants Briles Aerospace, Inc. and Michael Briles have sought the disclosure of privileged and work product attorney notes and communications between Plaintiff SPS Technologies, LLC ("SPS Technologies" or "PBF"), Precision Castparts Corp. ("PCC"), and their outside counsel at Stoel Rives LLP.   The requested documents relate to a Federal Trade Commission ("FTC") investigation arising from Plaintiff's acquisition of the assets of Paul R. Briles, Inc. in 2011.   Sara Gray worked for Stoel Rives at the time and represented PCC and SPS Technologies in the FTC proceedings.

Notwithstanding the fact that Defendants litigated and lost a motion seeking these documents last year, Defendants filed a Joint Stipulation seeking the disclosure of the same documents based on the same arguments more than a month after the close of discovery.  Although the Magistrate Judge rightly rejected these arguments and denied Defendants' first privilege motion, her November 30, 2020 Order (the "Order"; Dkt. 613) concluded that the Stoel Rives' attorney notes, as well as confidential attorney-client communications relating to the FTC inquiry, are not privileged or work product and must be produced.  The Order is clearly erroneous and contrary to law.

The attorney notes are work product.  The Magistrate Judge adopted the wrong legal standard for anticipation of litigation, failed to apply extensive case law regarding agency inquiries (including *Upjohn Co. v. United States*, 449 U.S. 383 (1981)), and ignored overwhelming record evidence showing that Stoel Rives attorneys and their clients had a particularized anticipation of litigation with the FTC.  Defendants do not dispute that the attorney notes contain mental impressions or that the Magistrate Judge did not make the requisite finding of "extraordinary circumstances" to compel their production.   Defendants also concede that attorney notes reflecting confidential communications for the purpose of legal advice are privileged.  The unrebutted record evidence is that a subset of the attorney notes reflect such communications.

Accordingly, the Magistrate Judge's conclusion that the attorney notes are discoverable is contrary to law.

The emails involving Jeff Caplan are also work product. Defendants cannot point to any work product analysis of these emails in the Magistrate Judge's Order. Because the Order does not analyze whether the emails were prepared in anticipation of litigation or whether Defendants have made the requisite showing of "extraordinary circumstances" or "substantial need" for them, the Order is contrary to law. These emails are also privileged, as Defendants do not dispute that confidential attorney-client communications for the purpose of legal advice are privileged, even if they convey factual information. The Magistrate Judge's suggestion otherwise is contrary to law.

## LEGAL STANDARD

The Court may modify or reject factual findings in the Order that are clearly erroneous. Fed. R. Civ. P. 72(b). Legal conclusions are subject to "independent review" under the "contrary to law" standard. *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp. Inc.*, 2016 WL 6821116, at *2 (C.D. Cal. June 17, 2016). Mixed questions of law and fact—including the application of a legal standard to a particular set of facts—also require *de novo* review under the "contrary to law" standard. *United States v. Yijun Zhou*, 838 F.3d 1007, 1012 (9th Cir. 2016); *Dewey v. Adams*, 2013 WL 8291427, at *2 (C.D. Cal. Dec. 16, 2013). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Bower v. Wright Med. Tech. Inc.*, 2018 WL 6330410, at *2 (C.D. Cal. Dec. 3, 2018) (internal quotation marks and citation omitted); *Fisher & Payk el Healthcare Ltd. v. Flexicare Inc.*, 2020 WL 7094077, at *1 (C.D. Cal. Oct. 29, 2020) ("A decision is contrary to law if it applies an incorrect legal standard or fails to consider an element of the applicable standard.").

## ARGUMENT

### I.  Defendants' Motion Was Untimely.

***Attorney Notes.*** Defendants concede that they needed relief from the scheduling order to bring their motion after the close of discovery. *See Uniloc Luxembourg, S.A.*

2

*v. eCinicalWorks, LLC*, 991 F. Supp. 2d 1097, 1101–02 (C.D. Cal. 2013) (Fitzgerald, J.); *accord Yardi Sys., Inc. v. Prop. Sols. Int'l, Inc.*, 2016 WL 6662732, at *2 (C.D. Cal. Feb. 11, 2016).  Defendants also do not dispute that their motion sought the production of documents listed on PBF's privilege log for over a year.  The relief from the scheduling order that Defendants sought and received did not encompass the wide-ranging request that Defendants filed after the close of discovery.  Because Defendants' motion was unauthorized, it was untimely.  The Magistrate Judge's timeliness conclusion was thus contrary to law.  *Bower*, 2018 WL 6330410, at *2.

Defendants erroneously claim they sought "to extend the discovery schedule for the exact purpose for which Defendants' motion to compel was filed." (Opp. at 9.)  But Defendants cannot run away from their numerous representations to this Court and the Magistrate Judge that they were seeking relief from the scheduling order only to litigate privilege disputes arising *during* Ms. Gray's deposition.  Defendants requested that the Court "modify the scheduling order for the limited purpose of allowing Briles Aerospace to file a motion ***to seek further responses to the deposition of Sara Gray after the close of fact discovery***." (Dkt. 516-1 at 1 (emphasis added).)  To support its request, Briles Aerospace argued that it "anticipate[d] encountering numerous improper privilege objections *during* Ms. Gray's deposition." (*Id.* at 2 (emphasis added); *see also id.* at 3 (requesting "a modification of the schedule for the limited purpose of allowing Briles Aerospace to bring a motion after Ms. Gray's deposition ***to address the privilege issues that are almost certain to arise***" (emphasis added)).)  Defendants even assured the Court that "if a dispute regarding privilege [did] not arise at Ms. Gray's deposition . . ., ***then any granted extension to the schedule [would] become moot***." (Dkt. 550-1 at 5 (emphasis added).)  Defendants then told the Magistrate Judge that the scope of any post-discovery briefing would be limited to objections based on rulings made during Ms. Gray's deposition:

> [W]e took the position in front of Judge Fitzgerald that the motion would not necessarily be mooted. And the reason for that is just because of the uncertainty as to what objections might be lodged and, you know, how the

3

arguments might turn out. **So, I think we told Judge Fitzgerald that we were asking for an extension to the extent that we needed to raise any objections to any rulings that were made in real time during the deposition.** I don't necessarily expect that that is going to be necessary. I think that if your Honor rules on the objections in real time that practically speaking it's most likely going to moot all of the disputes. But we did bring the motion just to protect ourselves in the event that it became necessary.

(Dkt. 597-10, Ex. K, at 10:15–11:3.) Tellingly, Defendants' Opposition selectively quotes this paragraph to omit their representation to the Magistrate Judge that the requested extension was only for this limited purpose. (Opp. at 9–10.) The Magistrate Judge later confirmed her reliance on Defendants' repeated representations, stating that she "was under the impression . . . that the Defendants were seeking modification of the scheduling order for the purpose of . . . litigating any improper privilege objections that were raised during the deposition of Ms. Gray and it appears that didn't happen and so there was really no expectation that there would be any motion filed such as this one." (625-1, Ex. A at 5:10–16; *see also* Dkt. 575 at 3 ("The Court trusts that the immediate and personal involvement of the Magistrate Judge will obviate this whole issue.").)

Consistent with Defendants' representations to this Court and the Magistrate Judge, the scope of the Court's September 23 Order granting relief from the scheduling order was limited to "further responses to the deposition of Sara Gray after the close of fact discovery."[1] (Dkt. 575 at 1.) The issue with Defendants' motion was not that it requested documents; *it was that the documents were not requested as "further responses to the deposition of Sara Gray."* As such, the requested documents were beyond the scope of the Court's limited authorization.

It is impossible to square Defendants' repeated representations to this Court and the Magistrate Judge with the motion they later filed. Defendants concede they did not

---

[1] Defendants claim that PBF's Motion "improperly" quoted the language of this Order. (Opp. at 9.) But PBF's Motion cites the first page of the September 23 Order, which states that the Court granted Defendants request to "modify the scheduling order for the limited purpose of allowing [Defendants] to file a motion to seek further responses to the deposition of Sara Gray after the close of fact discovery." (*See* Dkt. 627-1 at 14, *citing* Dkt. 575 at 1).

4

file a motion based on the Magistrate Judge's real-time rulings to privilege assertions made during Ms. Gray's deposition; there were no such assertions. Rather, Defendants sought an order compelling "SPS to produce documents—including communications, interview notes, and notes summarizing phone calls—prepared in the course of gathering information to present to or respond to the FTC in connection with Plaintiff's 2011 FTC Hart-Scott-Rodino filing." (Dkt. 599-1, at 2.) This November 2020 request essentially repeated Defendants' December 2019 request for an order "compelling Plaintiff SPS to produce certain documents that concern . . . dealings with the Federal Trade Commission," which was denied. (Dkt. 384-1 at 1.) Defendants even sought production of the same entries from Plaintiff's privilege log in November 2020 that they had demanded in their first privilege motion in December 2019. (*Compare* Dkt. 607 at 5 *with* Dkt. 391 at 14.) This is not the narrow relief the Court authorized. (Dkt. 575 at 3.) Rather, Defendants' motion sought to re-litigate broad claims of subject-matter waiver that did not arise in any form at Ms. Gray's deposition. These independent requests for documents were beyond the scope of this Court's September 23 Order and were therefore untimely.

The Magistrate Judge concluded that Defendants' motion fell "within the ambit" of the Court's Order because Ms. Gray's deposition "revealed – for the first time" ███

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████ (Dkt. 613 at 5.) This conclusion is clearly erroneous and contrary to law. *First*, neither Defendants nor the Magistrate Judge cite any evidence that ████████████████████

████████████████████████████████████ (*See*

Opp. at 3; Dkt. 613.) To the contrary, the only evidence in the record was that all of the attorney notes were maintained in private attorney files and were not shared with members of the joint defense group or the FTC. (Dkt. 597-11 ¶ 5.) Indeed, several of these attorney notes reflected confidential communications for the purpose of legal

5

advice, and thus could not have been incorporated in any of the documents cited by the Magistrate Judge. (*Id.* ¶ 4.)  *Second*, it is undisputed that all of the attorney notes were listed on Plaintiff's original privilege log in July 2019. (Dkt. 607-5 at 72.)  As a result, no attorney notes were "revealed" at the deposition of Ms. Gray such that Defendants' motion would fall within the scope of this Court's September 23 Order.

Defendants assert that PBF purportedly prevented them from learning of the existence of Ms. Gray's handwritten notes.  This assertion is untrue.  It is undisputed that Plaintiff disclosed the attorney notes on its privilege log in July 2019. (Dkt. 607-5 at 72.)  Defendants merely object that the privilege log did not specify that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  As to the form of the attorney notes, Defendants cite no authority for the proposition that a privilege log must specify whether attorney notes ▮▮▮▮▮▮▮▮▮▮▮▮.  (Opp. at 11.)  There is no such requirement in the Ninth Circuit. *In re Grand Jury Investigation*, 974 F.2d 1068, 1070–71 (9th Cir. 1992) (explaining that the asserting party need only demonstrate that the document adheres to the "essential elements" of the privilege and make only a "prima facie showing" of privilege).  As to the author of the attorney notes, Defendants concede that the privilege log ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  (Dkt. 607-5 at 72, Entry Nos. 1188, 1190.)  Defendants were aware ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as Defendants previously had requested that the Magistrate Judge compel their production. (*See* Dkt. 391 at 3.)  It is also undisputed that Defendants did not challenge the sufficiency of the disclosures on PBF's privilege log before the deposition of Ms. Gray, notwithstanding the fact that the parties spent months litigating Defendants' first privilege motion over the same privilege log entries.[2] (Dkt. 391.)

---

[2] Defendants claim that PBF concealed the existence of the handwritten notes because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1   In addition, Defendants assert that Ms. Gray's Declaration obscured the existence

2   of her handwritten notes.  This assertion is untrue as well.  In the Declaration, Ms. Gray

3   states that her notes, which had been produced in the litigation, confirmed her

4   recollection about what Robert Briles had said during the call with representatives of

5   the FTC on June 7, 2011.  (Dkt. 215-2 ¶ 7.)   Defendants have known for more than a

6   year that Ms. Gray's Declaration was referring specifically to the FTC Outline.  (Dkt.

7   391 at 8 n.2 ██████████████████████████████████████████████████████

8   ███████████████████████████████████████████████████████████████████████

9   ███████████████████████████████████████    ████████████████████████████

10  ███████████████████████████████████████████████████████████████████████

11  ████████████████████████████████████   Ms. Gray never stated or implied that the FTC

12  Outline ████████████████████████████████████████████████████████████████

13  ███████████████████████████████████████████████████████████████████████

14  ███████████████████████████████████████████████████████████████████████

15  ████████████████████████████████████████   (Dkt. 607-5 at 72.)

16  Contrary to the Magistrate Judge's conclusion and Defendants' argument, the

17  July 2019 privilege log satisfied PBF's obligation to disclose the "essential elements"

18  of the privilege and make a "*prima facie* showing" of protection.  *In re Grand Jury*

19  *Investigation*, 974 F.2d at 1070–71.  The Ninth Circuit has recognized that the asserting

20  party need only identify the "persons *or entities* shown on the document to have

21  received or sent the document" when making a *prima facie* showing of privilege.  *In re*

22  *Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992); *see also* Fed. R. Civ. P.

23  26(b)(3)(A)(ii); *Rockwell Automation, Inc. v. GGSI Liquidation, Inc.*, 2003 WL

24  22227968, at *3 (S.D.N.Y. Sept. 25, 2003) (finding privilege log entries sufficient

25  _____

26  ██████████████████████   (Opp. at 2; Dkt. 737-2, Ex. O, Nos. 32–37.)   This
    claim is also meritless. ████

27  ███████████████████████████████████████████████████████████████████████

28  ███████████████████████████████████████████████████   Defendants' suggestion that PBF
    attempted to conceal anything by applying the Federal Rules of Evidence is false.

where "they are simply notes, made by someone in Rockwell's legal department or Chadbourne & Parke, a law firm retained by Rockwell" and entries say "Rockwell Legal files" or "Chadbourne & Parke files").  Moreover, ███████████████

███████████ was proper under the circumstances.  As PBF's counsel explained to the Magistrate Judge, ███████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████.[3]  (Wood Decl., Ex. B, at 25:25–26:16.)

The Magistrate Judge's determination that Ms. Gray's deposition revealed the existence of the attorney notes is clearly erroneous and contrary to law because (1) all of the attorney notes were listed on Plaintiff's original privilege log in July 2019, (2) the descriptions on this privilege log complied with the requirements of Ninth Circuit law, (3) Defendants knew that ██████████████████████████████████

███████████████████████████████████████████, and (4) Defendants failed to raise the sufficiency of the descriptions on PBF's privilege log for more than a year before Ms. Gray's deposition.  In addition, the Magistrate Judge's conclusion that Defendants' motion was timely was clearly erroneous and contrary to law because the relief from the scheduling order that Defendants requested and received was limited to a motion seeking "further responses to the deposition of Sara Gray."  (Dkt. 575 at 1.) This narrow relief did not authorize Defendants to file a motion seeking the production

---

[3] Defendants assert that ███████████████████████████████
█████████████.  (Opp. at 11 n.6.)  This assertion is unfounded.  *Cf.* C.D. Cal. Civility and Professionalism Guidelines B.8 ("We will not, absent good cause, attribute bad motives or improper conduct to other counsel or bring the profession into disrepute by unfounded accusations of impropriety.").  ████████████████████████████████
Moreover, the privilege log satisfied PBF's obligations under Ninth Circuit law, particularly given the volume of document discovery in this case.  Defendants never claimed the privilege log was deficient before the deposition of Ms. Gray.

8

of the same attorney notes that were disclosed in July 2019 and were the subject of Defendants' first privilege motion.

*Jeff Caplan Emails*.  Defendants do not dispute that in July 2020 they served new requests for documents relating to Ms. Gray's involvement in the FTC inquiry, despite knowing about the relevance of such documents since at least July 2019.  Nor do Defendants dispute that PBF was required to collect and produce new documents responsive to these late requests or that PBF promptly amended its privilege log shortly thereafter.   Defendants further concede that they did not learn about these communications until *after* Ms. Gray's deposition.  (Opp. at 12.)   This Court's September 23 Order modified the scheduling order only "for the limited purpose of allowing Briles Aerospace to file a motion *to seek further responses to the deposition of Sara Gray* after the close of fact discovery."  (Dkt. 575 at 1 emphasis added).) Because PBF did not produce its Third Amended Privilege Log until *after* the deposition of Ms. Gray, there was no basis for the Magistrate Judge to conclude that the additional entries for emails involving Mr. Caplan were "further responses" to Ms. Gray's deposition.  The Magistrate Judge's conclusion that "email communications between [Sara] Gray and Jeff Caplan during the FTC proceedings" fall "within the scope of the Court's Order" because they were disclosed on Plaintiff's Third Revised Privilege Log *after* Ms. Gray's deposition was therefore contrary to law.

## II.   The Attorney Notes Are Work Product.

Under Rule 26(b)(3), documents (1) "prepared in anticipation of litigation" and (2) "prepared by or for another party or by or for that other party's representative" are protected as work product.  *In re Grand Jury Subpoena (Mark Torf/Torf Env. Mgmt.)*, 357 F.3d 900, 907 (9th Cir. 2004) (internal quotation marks and citations omitted).  If a document is "[o]pinion work product" revealing an "attorney's mental impressions, conclusions, opinions, or legal theories," then it "is virtually undiscoverable." *Republic of Ecuador v. Mackay*, 742 F.3d 860, 869 n.3 (9th Cir. 2014) (quotation omitted).  Even documents containing purely factual work product are undiscoverable unless a party

"cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii).

The Magistrate Judge's Order compelled Plaintiff to produce (1) ▮▮▮▮▮ ▮▮▮▮▮▮▮▮ of phone calls on June 7 and 8, 2011 and (2) attorney notes and other documents created by Stoel Rives' attorneys in connection with their representation of PCC and SPS during an FTC investigation. (Dkt. 613, at 7–9.) "Rule 26 accords special protection to work product revealing the attorney's mental processes." *Upjohn Co. v. United States*, 449 U.S. 383, 400 (1981). The record evidence before the Magistrate Judge was that these notes "contain attorneys' mental impressions and opinions, including reactions to statements made during meetings, understandings of the relationship between certain facts, and evaluations of the relative significance of the facts." (Dkt. 597-11 ¶ 3.) The notes are thus core opinion work product. *See Upjohn*, 449 U.S. at 400 n.8 (protecting as work product "notes of the interviews . . . containing "what [the attorney] considered to be the important questions, the substance of the responses to them, [his] beliefs as to the importance of these, [his] beliefs as to how they related to the inquiry, [his] thoughts as to how they related to other questions."). As such, the attorney notes at issue are "virtually undiscoverable." *Mackay*, 742 F.3d at 869 n.3. In compelling PBF to produce core opinion work product, the Magistrate Judge made numerous legal errors that Defendants cannot explain. Because the Magistrate Judge "applie[d] an incorrect legal standard" and "fail[ed] to consider an element of the applicable standard," the Order is contrary to law. *Fisher & Payk el Healthcare Ltd. v. Flexicare Inc.*, 2020 WL 7094077, at *1 (C.D. Cal. Oct. 29, 2020).

***Anticipation of Litigation***. The Magistrate Judge found that Ms. Gray's notes and documents were not prepared in anticipation of litigation. (Dkt. 613 at 8–9.) The Magistrate Judge's finding is contrary to law for two reasons. First, the Magistrate Judge used the wrong legal standard for "anticipation of litigation" in the Ninth Circuit. Second, even assuming the Magistrate Judge's cited standard were correct (it was not),

1    the Order's application of that legal standard was clearly erroneous and contrary to law.

2    *See Fisher & Payk*, 2020 WL 7094077, at *1–2.

3         It is undisputed that the Magistrate Judge applied the "primary purpose" test to

4    determine whether Ms. Gray's notes were created in anticipation of litigation.

5    Defendants argued to the Magistrate Judge that Ms. Gray's notes were not prepared in

6    anticipation of litigation because they "were not 'created principally or exclusively to

7    assist in contemplated or ongoing litigation.'"  (Dkt. 599-1, at 27 (internal quotation

8    marks and citation omitted); *see also* Opp. at 15.)  The Magistrate Judge agreed with

9    this analysis, finding "[a]s Defendant points out, Gray's ▮▮▮▮▮▮▮▮▮▮ for the

10   purpose of gathering information to present to the joint defense group and the FTC

11   cannot be withheld because . . . there was no . . . anticipation of litigation when they

12   occurred."  (Dkt. 613 at 8–9.)  But in evaluating whether a document is prepared in

13   anticipation of litigation, the Ninth Circuit has rejected the "primary purpose" test in

14   favor of the "because of" test.  *See In re Grand Jury Subpoena*, 357 F.3d 900, 908 (9th

15   Cir. 2004).  Under the "because of" test, where documents are created in part because

16   of the prospect of litigation, they are protected under the work product doctrine.  *See In*

17   *re Grand Jury Subpoena*, 357 F.3d at 907–910 (9th Cir. 2004) (documents prepared at

18   least in part to help attorney advise and defend company in anticipated litigation with

19   the EPA were entitled to work product protection); *see also Am. Civil Liberties Union*

20   *v. Dep't of Justice*, 880 F.3d 473, 485 (9th Cir. 2018).

21        The Magistrate Judge cited no authority for her conclusion that documents

22   created "for the purpose of gathering information" are not work product.  (Dkt. 613 at

23   8.)  Acknowledging this error, Defendants rely on *In re Kidder* for the proposition that

24   documents "not 'created principally or exclusively to assist in contemplated or ongoing

25   litigation" are not protected.  (Opp. at 15 (quoting *In re Kidder*, 168 F.R.D. 459, 462–

26   63 (S.D.N.Y. 1996).)  But *Kidder*'s analysis was later ***rejected*** by the Second Circuit.

27   *See United States v. Adlman*, 134 F.3d 1194, 1203 (2d Cir. 1998) ("There are indications

28   that the district court may have followed the 'primarily to assist in litigation' test, which

we here reject."). And the Ninth Circuit approvingly quoted the Second Circuit's *Adlman* decision at length when similarly rejecting the "primary purpose" test. *See In re Grand Jury Subpoena*, 357 F.3d at 908. In sum, the Magistrate Judge used the wrong legal standard for determining when a document is prepared in anticipation of litigation, and her Order is therefore contrary to law. *See Bower*, 2018 WL 6330410, at *2.

*Second*, even if the Magistrate Judge's standard were correct, the Magistrate Judge's application of the standard would be erroneous. (Dkt. 613 at 8.) Contrary to Defendants' claims (Opp. at 14), the facts in the record overwhelmingly establish that the attorney notes were prepared in anticipation of litigation. It is undisputed that ███

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████ Litigation with the FTC was thus far more than a theoretical possibility. Given these facts, it is indisputable that Ms. Gray's notes were created because of the prospect of litigation with the FTC. *See Mark Torf/Torf Envtl. Mgmt.*, 357 F.3d at 908 ("By cooperating with the EPA, Ponderosa sought to avoid litigation with the government.").

Defendants claim that only an investigation by a federal agency "because of potential wrongdoing" triggers the prospect of litigation. (Opp. at 17.) But that is not the standard. Cases from across the country confirm that the attorney notes at issue here were unambiguously prepared in anticipation of litigation:

- In *Upjohn*, the Supreme Court held that the work product doctrine protected attorney notes even though there was no allegation of wrongdoing by a government agency.

Indeed, the Court applied work-product protection to notes created during a voluntary internal investigation before any government entity had even contacted the company. *Upjohn*, 449 U.S. at 386–87, 401. The facts here show a greater prospect of litigation than in *Upjohn*, ███████████████████████████

████████████████████████████████████████████████████

(Dkt. 607-5 at 103.)

- In *Martin v. Monfort*, as here, a company was contacted by an agency (the Department of Labor) regarding an administrative matter. 150 F.R.D. 172, 173 (D. Colo. 1993). There, as here, the court was presented with an attorney declaration that averred she "believed that litigation might result" based on that contact. *Id.* Based on these facts, the *Martin* court found an anticipation of litigation because "[i]nvestigation by a federal agency presents more than a remote prospect of future litigation, and provides reasonable grounds for anticipating litigation sufficient to trigger application of the work product doctrine." *Id.* The same is true of the attorney notes relating to Stoel Rives' representation of PCC and SPS Technologies in the FTC proceedings.

- In *Hodges*, the Fifth Circuit considered a memorandum prepared with a lesser prospect of litigation than the notes at issue here. The memorandum was "drawn up primarily for preparing a tax return or for dealing with the IRS" and it was "intended by [Defendants' counsel] to be disclosed to the IRS." *Hodges, Grant & Kaufmann v. U.S. Gov't, Dep't of the Treasury, I.R.S.*, 768 F.2d 719, 722 (5th Cir. 1985). The Fifth Circuit found that such memoranda "prepared in anticipation of 'dealing with the IRS'" "may well have been prepared in anticipation of an administrative dispute." *Id.* Here the facts show conclusively that the attorney notes were prepared to "deal with" the FTC inquiry.

- In *LTV*, the court found that "the notes of discussions" and "materials prepared by [the company's] representative" tasked with aiding the attorneys in understanding the company's accounting after the SEC served a subpoena was protected work

13

product. *In re LTV Sec. Litig.*, 89 F.R.D. 595, 612, 614 (N.D. Tex. 1981). The attorney notes at issue here were likewise created ██████████████████

███████████████████████████████████████████████████████████

██████, and were therefore prepared in anticipation of litigation.

- In *Bituminous Cas. Corp. v. Tonka Corp.*, a state agency asked a company to conduct an ***initial*** investigation of pollution at a site managed by the company. *Bituminous*, 140 F.R.D. 381, 389–90 (D. Minn. 1992). The court concluded that this inquiry was sufficient to establish anticipation of litigation. *Id.* The court emphasized that just because the company "was able to avoid actual litigation with the [agency] in this case ***does not mean*** that the efforts undertaken by [the company's] counsel and its consultants were not done in anticipation of litigation." *Id.* at 390 (emphasis added). The same is true here.

In line with these cases, there can be no question that Stoel Rives and its clients had a particularized anticipation of litigation with the FTC when the attorney notes were prepared. ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████ That is more than enough to satisfy the test for work product under a long line of agency cases from around the country. Because the Magistrate Judge failed to apply this case law—including the Supreme Court's binding *Upjohn* decision—the Order is contrary to law.[4] *See Bower*, 2018 WL 6330410, at *2.

---

[4] Defendants' assertion that the FTC's inquiry was insufficiently legal or adversarial to establish "anticipation of litigation" cannot be squared with their lead summary judgment argument, which is that the FTC inquiry was itself "quasi-judicial," such that PBF's trade secret claims should be barred by the doctrine of judicial estoppel. (Dkt. 653-1 at 5.) It is disingenuous for Defendants to change their tune here to argue that the FTC inquiry did not even establish an "anticipation of litigation." Moreover, contrary to Defendants' spurious suggestion, PBF's position in summary judgment is entirely consistent with its arguments in this Motion. In summary judgment briefing, PBF argued that the FTC inquiry was not yet "judicial in nature" for purposes of judicial estoppel because it did not involve the application of law to facts. *See Eakin Enterprises, Inc. v. Specialty Sales LLC*, 2012 WL 2445151, at *7 n.4 (E.D. Cal. June 26, 2012). The standard for whether a proceeding is "judicial in nature" for purposes

    ***Extraordinary Circumstances and Substantial Need***.   Rule 26(b)(3) draws a distinction between ordinary and opinion work product.   Ordinary work product is not discoverable "unless the party seeking discovery has a substantial need for the materials and the party cannot obtain the substantial equivalent of the materials by other means." *Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000).   In contrast, opinion work product "enjoys nearly absolute protection and is discoverable only in 'rare and extraordinary circumstances.'"   *U.S. ex rel. Bagley v. TRW, Inc.*, 212 F.R.D. 554, 559 (C.D. Cal. 2003) (quoting *U.S. ex rel. Burroughs v. DeNardi Corp.*, 167 F.R.D. 680, 683 (S.D. Cal. 1996)).

    It is undisputed that the attorney notes at issue contain mental impressions.   The notes were prepared by attorneys at Stoel Rives, including Sara Gray, during their representation of PCC and SPS Technologies in the FTC proceedings, and the notes reflect the attorneys' mental impressions, opinions, and legal conclusions.   (Dkt. 597-11 ¶¶ 3–5.)   Courts routinely protect attorney notes like these as opinion work product. *See, e.g., Upjohn* 449 U.S. at 399 ("Forcing an attorney to disclose notes and memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the attorney's mental impressions."); *United States v. Paxson*, 861 F.2d 730, 735 (D.C. Cir. 1988); *United States v. Arias*, 373 F. Supp. 2d 311, 312–13 (S.D.N.Y. 2005). In addition, it is impossible in this situation to segregate and redact attorney mental impressions from "pure" facts in these notes. *See, e.g.*, *SEC v. Roberts*, 254 F.R.D. 371, 383 (N.D. Cal. 2008). The attorney notes—including how they are organized, what was selected to be included, and how the attorney committed her perceptions to paper— themselves inherently reflect the mental processes of the attorney. *See Baker*, 209 F.3d

---

of judicial estoppel is not the same as the standard for whether a document was prepared "***in anticipation of litigation***" under Rule 26(b)(3)(B).   *See Bituminous Cas. Corp.*, 140 F.R.D. at 389–90 ("[T]he fact that a company ultimately is able to avoid litigation "does not mean that the efforts undertaken by [its] counsel" in response to an agency's requests "were not done in anticipation of litigation."). Here, the FTC inquiry plainly created an anticipation of litigation, even if it did not ultimately result in the application of law to facts in a judicial proceeding.

at 1054 ("Attorney notes reveal an attorney's legal conclusions because, when taking notes, an attorney often focuses on those facts that she deems legally significant."); *SEC v. Berry*, 2011 WL 825742, at *3 (N.D. Cal. Mar. 7, 2011); *Hatamian v. Advanced Micro Devices, Inc.*, 2016 WL 2606830, at *3 (N.D. Cal. May 6, 2016) (collecting cases).[5]  As a result, they are "entitled to almost absolute immunity." *O'Connor v. Boeing N. Am., Inc.*, 216 F.R.D. 640, 643 (C.D. Cal. 2003) (internal quotation marks and citation omitted); *see also Adams v. United States*, 2009 WL 804718, at *1 (D. Idaho Mar. 27, 2009).   Defendants do not dispute that there are no "extraordinary circumstances" that could justify overcoming the protection of opinion work product here.   Defendants make no argument that extraordinary circumstances exist, and the Magistrate Judge made no such finding.  Accordingly, if the Court finds the notes were prepared in anticipation of litigation (they were), then the Magistrate Judge's order compelling their production is necessarily contrary to law.  *See Fisher & Payk*, 2020 WL 7094077, at *1.

Furthermore, even if the attorney notes were purely factual—and the only record evidence establishes that they are not—the Magistrate Judge's determination of substantial need is contrary to law.  As an initial matter, Defendants do not even argue that they have a substantial need for all of the attorney notes at issue.   Rather, Defendants' substantial need arguments relate only to the ███████████████████ ████████████ with representatives of the FTC.  As a result, any finding that Defendants have a substantial need for attorney notes that do not relate to the June 7 and 8, 2011 calls is contrary to law.  Even as to the subset of notes that relate to these calls, Defendants concede that the only basis for a finding of substantial need is that the "discovery of the original source documents are likely to provide clarity." (Dkt. 613 at

---

[5] Defendants only argument regarding mental impressions is that PBF had previously argued the FTC Outline and Outline of Facts were not work product because those documents did not contain mental impressions. Those are different documents and must be evaluated separately from the attorney notes. Defendants also cite no authority for their novel argument that because one document is not work product, a related document cannot be protected as work product. (Opp. at 20.)

16

6; Opp. at 21.)  Defendants fail to cite a single case to support the notion that a party's desire to "impugn the accuracy and credibility" of a witness constitutes a substantial need.  (Opp. at 21.)  To the contrary, a party's desire to find corroborating evidence is almost never a sufficient basis for establishing substantial need.  *See Dir., Office of Thrift Supervision v. Vinson & Elkins*, LLP, 124 F.3d 1304, 1308 (D.C. Cir. 1997) ("Appellant's need, as we understand its position, reduces to nothing more than its desire to find corroborating evidence.  It is the rare case where corroborative evidence can be thought "necessary."); 6 Moore's Federal Practice – Civil § 26.70 (2020) ("[A] party's desire to find corroborating evidence is insufficient to establish substantial need.")).  ███████████████████████████████████████ the factual information in the withheld documents is either contained in the documents that have been produced or is otherwise available, "it is impossible to conclude" that the moving party "ha[s] met their burden of demonstrating a substantial need for the withheld documents." *A.I.A. Holdings, S.A. v. Lehman Bros.*, 2002 WL 31385824, at *7 (S.D.N.Y. Oct. 21, 2002).[6]

Defendants also failed to meet their burden of proving they cannot obtain the substantial equivalent of the information by other means.  Defendants have access to factual information relating to Stoel Rives' involvement in the FTC proceedings through non-privileged documents that have been produced in this litigation, including the FTC Outline, the Outline of Facts, and the FTC Presentation.  Defendants also deposed Ms. Gray ███████████████████████████████.  In addition, Defendants were able to depose Robert Briles in this action and received a copy of the examination transcript for Jeff Caplan, who were both percipient witnesses to the FTC inquiry, including the calls with FTC representatives in June 2011.  Courts regularly find that there is no substantial need for work product where, as here, the party can

---

[6] Rather than demonstrate a substantial need, Defendants assert that production of Ms. Gray's ████████████ "may reveal the true facts."  This assertion is offensive.  It is also entirely without factual support.  As a result, this speculation cannot possibly satisfy Defendants' burden to prove the requisite "substantial need" to overcome work product protection.

17

simply depose a witness. *See, e.g., In re Grand Jury Proceedings*, 473 F.2d 840, 849 (8th Cir. 1973) ("Generally, if a witness is available to the party seeking discovery of his statement to opposing counsel, discovery should not be allowed."); *S.E.C. v. Schroeder*, 2009 WL 1125579, at *7 (N.D. Cal. Apr. 27, 2009), *objections overruled*, 2009 WL 1635202 (N.D. Cal. June 10, 2009). Defendants have no response to this well-established case law, which the Magistrate Judge did not apply in her Order.

**Magistrate Judge's February 2020 Order**. Accepting Defendants' argument, the Magistrate Judge found that the attorney notes and other "original source documents" were not privileged because her February 18, 2020 Order found that other documents produced by PBF—the FTC Outline and Outline of Facts—were not work product. (Dkt. 613 at 6.) This conclusion is contrary to law for three reasons.

*First*, the February 18 Order did not find that all documents and communications containing information related to the FTC proceedings were discoverable. Rather, the Court *denied* Defendants' request to compel production of other documents relating to that very subject matter. (Dkt. 416 at 10.) For this reason, Defendants have conceded that it is "undoubtedly true" that Ms. Gray had privileged communications with her clients on subjects relating to the FTC proceedings. (Dkt. 550-1 at 2.)

*Second*, the Magistrate Judge's ruling and Defendants' argument relies on the erroneous assumption that all of the attorney notes at issue were incorporated into the FTC Outline, Outline of Facts, or Presentation to representatives of the FTC. There is no evidence to support that assumption. (Dkt. 613 at 6, 8.) ████████████████

████████████████████████████████████████████████████

████████████████         ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████ In addition, the unrebutted evidence is that several of the attorney notes memorialize confidential communications for the purpose of legal advice. (Dkt. 597-11 ¶ 4.) Accordingly, there was no factual basis to support the erroneous finding that all of the attorney notes were incorporated

into the FTC Outline, Outline of Facts, or Presentation to representatives of the FTC, and the Magistrate Judge's conclusion was contrary to law.

*Third*, it is error to conclude that just because certain documents relating to a subject matter are not work product (the FTC Outline and Outline of Facts), work product protection cannot attach to *any* documents relating to the same subject matter (confidential attorney notes).  Unlike the attorney-client privilege, which protects communications, work product protection attaches individually to "documents and tangible things" and thus requires a document-by-document analysis. *Stern v. O'Quinn*, 253 F.R.D. 663, 686–87 (S.D. Fla. 2008); *Wichansky v. Zowine*, 2015 WL 5693521, at *3–*4 (D. Ariz. Sept. 29, 2015).  If the doctrine were as applied by the Magistrate Judge, no attorney notes underlying briefs, declarations, or other public filings would be entitled to work product protection. *But see, e.g.*, *Schroeder*, 2009 WL 1125579, at *7 (holding that disclosure of interview memoranda did not constitute waiver of work product protection for underlying attorney notes).  This would destroy the privacy that the Supreme Court has found "essential" for the attorney's "[p]roper preparation of a client's case." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947).  Because the work product doctrine requires a document-by-document analysis, it was contrary to law for the Magistrate Judge to conclude that the attorney notes cannot be work product because the FTC Outline and Outline of Facts are not work product.

### III.    Some of the Attorney Notes Are Privileged.

Defendants concede that attorney notes memorializing confidential communications for the purpose of providing legal advice are privileged. *See McCook Metals LLC v. Alcoa Inc.*, 192 F.R.D. 242, 254 (N.D. Ill. 2000); *id*. at 252; *see also TransWeb, LLC v. 3M Innovative Properties Co.*, 2012 WL 2878076, at *11 (D.N.J. July 13, 2012); *Baxter Healthcare Corp. v. Fresenius Med. Care Holding, Inc.*, 2009 WL 533124, at *1 (N.D. Cal. Mar. 2, 2009).  Defendants also do not dispute that factual information is necessary to formulate and provide legal advice, and therefore the conveyance of such information to counsel for that purpose is privileged. *See Upjohn*

19

*Co.*, 449 U.S. at 390 (the attorney-client privilege "exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice"); *Big Baboon Corp. v. Dell, Inc.*, 2010 WL 11459352, at *7 (C.D. Cal. July 22, 2010).

Defendants argue that there was no expectation of confidentiality in Ms. Gray's attorney notes because one part of her representation involved gathering information from her client to present to representatives of the FTC. (Mot. 21–22.) This argument is both incorrect and irrelevant. As Defendants concede, it is "undoubtedly true" that Ms. Gray had privileged communications with her clients relating to her 2011 representation. (Dkt. 550-1 at 2.) With the exception of attorney notes from the June 7 and 8, 2011 calls with representatives of the FTC, Defendants cannot cite any evidence that the attorney notes at issue reflect communications to provide information to the FTC. But more to the point, ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ and the Magistrate Judge's finding that they are discoverable is contrary to law.

Acknowledging the Magistrate Judge's determination that these attorney notes are discoverable was contrary to law, Defendants now propose that the Magistrate Judge review Entry Nos. 1194, 1196, and 1203 to determine whether they are privileged. (Opp. at 22.) But that is not what the Magistrate Judge ordered. Nor did Defendants seek review of the Order on that basis. The unrebutted evidence before the Magistrate Judge was that the attorney notes identified at Entry Nos. 1194, 1196, and 1203 contained confidential attorney-client communications for the purpose of providing

1  legal advice.  *See United State v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996).  Because

2  the  Magistrate  Judge  concluded  that  these  documents  were  discoverable

3  notwithstanding this unrebutted evidence, her Order was contrary to law.

### IV.    The Caplan's Emails Are Work Product.

5       The Magistrate Judge did not conduct a work product analysis of the Caplan

6  emails, and thus her Order is *per se* contrary to law.  (Dkt. 613.)  Recognizing the

7  necessity of such an analysis, Defendants assert that PBF's "assumption that the Judge

8  failed to conduct a work product analysis" is "faulty."  (Opp. at 23.)  Yet Defendants

9  cannot locate any such analysis in the Magistrate Judge's Order nor otherwise explain

10  how PBF's "assumption" is supposedly "faulty."  (Opp. at 23–25.)  A work product

11  analysis  requires  the  court  to  determine  whether  documents  were  prepared  in

12  anticipation of litigation by a party or that party's representative.  *In re Grand Jury*

13  *Subpoena*, 357 F.3d at 907.  If so, the court must determine whether the documents at

14  issue are "ordinary" fact work product or "opinion" work product.  *See id.*  If the

15  documents are "ordinary" work product, the protection may be overcome only if the

16  party seeking disclosure shows a "substantial need" for the documents.  *See id.* at 910;

17  *Schroeder*, 2009 WL 1125579, at *6, *12.  If the documents are "opinion" work

18  product, which is entitled to near-absolute protection from disclosure, the required

19  showing is elevated to "extraordinary circumstances."  *See, e.g.*, *Baker*, 209 F.3d at

20  1054.  The Magistrate Judge did not conduct any step of this analysis in her Order.

21  (Dkt. 613 at 10.)  Because the Magistrate Judge ignored the relevant case law and rules

22  of procedure, the Order is contrary to law.  *Bower*, 2018 WL 6330410, at *2.

23       Moreover, even assuming *arguendo* that the Magistrate Judge had conducted a

24  work-product analysis, her conclusion still would have been clearly erroneous and

25  contrary to law because the Caplan emails were prepared in anticipation of litigation

26  with the FTC, and Defendants failed to show the requisite "substantial need" or

27  "extraordinary circumstances" to overcome the protection.  The test for "anticipation of

28  litigation" is whether the document was prepared in part because of the prospect of

21

litigation. *See In re Grand Jury Subpoena*, 357 F.3d at 907–910. Where, as here, the document is prepared in connection with an investigation by a federal agency, the test for "anticipation of litigation" is satisfied. *In re LTV Sec. Litig.*, 89 F.R.D. at 612; *see also Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1261 (3d Cir. 1993); *Martin*, 150 F.R.D. at 173; *Bituminous Cas. Corp.*, 140 F.R.D. at 389–90. This is indisputably true here, where at the time the Caplan emails were sent, ███████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████ and (4)

Ms. Gray corresponded with Mr. Caplan "to assist [her] as outside counsel for the FTC proceedings," (Dkt. 597-11 ¶¶ 6–7).

Defendants' contrary arguments ignore these facts. First, Defendants argue that the emails were exchanged for the purposes of sharing the information with the joint defense group and FTC. (Opp. at 24.) Not so. The unrebutted, sworn declaration of Ms. Gray establishes that "[t]he[] emails *were confidential and sent for the purpose of obtaining and providing legal advice in the FTC proceedings*."[7] (Dkt. 597-11 ¶¶ 6–7 (emphasis added)). ███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████ In other words, the information that Defendants discuss—that intended to be shared with the joint defense group or FTC—*already has*

---

[7] Defendants' assertion that PBF's use of the phrase "for the FTC proceedings" in a footnote somehow suggests that the information was intended to be disclosed to the FTC is incorrect. Plaintiff stated only that the emails were sent "to assist [Ms. Gray] in her role as outside counsel *for the FTC* proceedings." (627-1 at 21 n.7 (emphasis added).) There is no indication that the information was intended to be disclosed. Clients routinely provide documents to "assist" an attorney with her representation, and when the documents are prepared in anticipation of litigation, they are work product.

1  **been produced**.  There is not a shred of evidence that the Caplan emails were intended
2  to be shared, or actually shared, with the joint defense group or FTC.  *Cf. U.S. v.*
3  *Deloitte*, 610 F.3d 129, 139 (D.C. Cir. 2010) ("While voluntary disclosure waives the
4  attorney-client privilege, it does not necessarily waive work-product protection.").

5       Second, Defendants argue that "based on Ms. Gray's testimony and the factual
6  record," Ms. Gray's assertion that the emails were made for the purpose of providing
7  legal advice is inaccurate.  Yet Defendants provide no citation to the portions of Ms.
8  Gray's testimony or the record that purportedly support this assertion.  The unrebutted,
9  sworn declaration of Ms. Gray makes it clear that the Caplan emails were confidential
10  and sent for the purpose of obtaining and providing legal advice. (Dkt. 597-11 ¶¶ 6–7.)
11  The factual record supports this assertion. ███████████████████████
12  ████████████████████████████████████████████████████████████
13  ████████████████████████████████████████████████████████████
14  ████████████████████████████████████

15       Third, in a footnote, Defendants assert that "'extraordinary circumstances' of
16  'substantial need' are indeed present." (Dkt. 737-1 at 24 n.14.)  As an initial matter,
17  this argument conflates two different standards—"extraordinary circumstances" for
18  opinion work product and "substantial need" for fact work product.  *Baker*, 209 F.3d at
19  1054.  The unrebutted evidence is that several of the Caplan emails contain attorney
20  mental impressions, including reactions to certain information, understanding of the
21  relationship between certain facts, and evaluations of the relative significance of certain
22  facts.  (Dkt. 597-11 ¶ 8.)  There is no plausible argument that "extraordinary
23  circumstances" justify disclosure of any of this opinion work product, which is entitled
24  to almost absolute protection.  *Baker*, 209 F.3d at 1054.  Nor have Defendants made a
25  showing of substantial need for fact work product.  Defendants have been able to depose
26  Ms. Gray and Robert Briles, both of whom were directly involved in the FTC inquiry.
27  They also have access to the deposition transcript of Jeff Caplan from the parallel
28  litigation in Canada.  In addition, Defendants do not dispute that they have received the

23

key documents relating to the FTC inquiry, including the FTC Outline, Outline of Facts, and FTC Presentation. There is no substantial need for ordinary work product when the sought-after information is available from another source. *See In re Grand Jury Proceedings*, 473 F.2d at 849; *Schroeder*, 2009 WL 1125579, at *12.

Because the Caplan Emails were prepared in anticipation of litigation and the Magistrate Judge did not conduct an extraordinary-circumstances or substantial-need analysis, the Magistrate Judge's Order was contrary to law. *Bower*, 2018 WL 6330410, at *2; *see also Fisher & Payk*, 2020 WL 7094077, at *1.

## V. The Caplan Emails Are Privileged.

In addition to being work product, the Caplan emails are privileged. Defendants do not dispute that a client can convey factual information about a matter to an attorney without waiving the attorney–client privilege. Nor do they dispute that, as the Magistrate Judge previously held, there are categories of communications relating to the FTC inquiry that are protected by the privilege. Yet Defendants assert, without factual support, that the communications are fair game because "it seems most likely that [Ms. Gray] requested technical information from Mr. Caplan rather than offering legal advice." (Opp. at 24.) Ms. Gray is not an aerospace engineer. She is an attorney who represented PCC and SPS Technologies in the FTC proceedings. Any request for "technical information" was therefore necessarily for the purpose of providing legal advice, which falls squarely within the ambit of the attorney-client privilege. *See Chen*, 99 F.3d at 1501; *C&F Packing Co., Inc. v. IBP, Inc.*, 1997 WL 619848, at *2 (N.D. Ill. 1997) ("A communication may be privileged, even though it contains technical information, if its primary purpose is to secure legal advice"). In fact, the unrebutted evidence in the record is that these emails were indeed confidential communications for that purpose. (Dkt. 597-11 ¶¶ 6–7.)

Defendants' final argument is that because ███████████████████████ ███████████████ that somehow means that the emails were intended to be shared with the joint defense group and/or the FTC, and thus the privilege is waived. There is no

24

justification for this leap.  In fact, there is substantial evidence that the emails were not intended to be disclosed.  First, as noted above, Ms. Gray's sworn declaration confirms that "[t]he[] emails *were confidential and sent for the purpose of obtaining and providing legal advice in the FTC proceedings*."  (Dkt. 597-11 ¶¶ 6–7 (emphasis added).)  Second, all but one of the emails post-date the phone calls with, and presentation to, FTC representatives on June 7 and 8 and 28.[8]  (*See* Dkt. 607-2 at 54-59, Entry Nos. 1183, 1212, 1241–1268, 1289–1292.)  The timing of the emails thus confirms that they could not have been incorporated into communications with the FTC on the dates in question.  (Dkt. 597-11 ¶ 9 (Gray Joint Stip. Decl.).)  Third, these emails also all pre-date ████████████████████████████████████████████████ ████████████████████████  (Dkt. 607-4.)  Accordingly, the unrebutted evidence demonstrates that the Caplan Emails were never intended to be shared with the joint defense group or FTC.  The Magistrate Judge's suggestion that these communications are not privileged is thus contrary to law.

## CONCLUSION

For these reasons, PBF respectfully requests that the Court grant its Motion.

---

[8] Only one of the emails between Ms. Gray and Mr. Caplan sought by Defendants occurred before the June 28 presentation to the FTC. (Dkt. 607-2 at 55, Entry No. 1215.) This email is a confidential communication from Ms. Gray to her clients' in-house counsel (Dennis Shea and Jason Dalton) and Mr. Caplan on June 28, 2011. (*Id.*) This email was not incorporated into the FTC Outline or the Outline of Facts. (Dkt. 597-11 ¶ 9.)  There is no reason to believe that this email was shared with the joint defense group or third parties. (*Id.*)

25

1    DATED: January 15, 2021

2                                                    */s/ Matthew Donald Umhofer*

3    WILLIAMS & CONNOLLY LLP                         SPERTUS, LANDES & UMHOFER, LLP
     Bruce R. Genderson (*pro hac vice*)             Matthew Donald Umhofer (SBN 206607)
4    Thomas H.L. Selby (*pro hac vice*)              Elizabeth A. Mitchell (SBN 251139)
     Daniel P. Shanahan (*pro hac vice*)             1990 S. Bundy Drive, Suite 705
5    Edward C. Reddington (*pro hac vice*)           Los Angeles, CA 90025
     Joseph Q. Wood (*pro hac vice*)                 Telephone:  (310) 826-4700
6    Michelle L. Hood (*pro hac vice*)               Facsimile:  (310) 826-4711
     William B. Snyderwine (*pro hac vice*)          matthew@spertuslaw.com
7    Miranda R. Petersen (*pro hac vice*)            emitchell@spertuslaw.com
     725 Twelfth Street, N.W.
8    Washington, DC  20005                           *Attorneys for SPS Technologies, LLC*
     Telephone:  (202) 434-5000
9    Facsimile:  (202) 434-5029
     bgenderson@wc.com
10   tselby@wc.com
     dshanahan@wc.com
11   ereddington@wc.com
     jwood@wc.com
12   mhood@wc.com
     wsnyderwine@wc.com
13   mpetersen@wc.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

26